**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
MITRE SPORTS INTERNATIONAL LIMITED,⠀⠀⠀:

⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀Plaintiff,⠀⠀⠀⠀:

⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀:

⠀⠀⠀⠀⠀⠀⠀v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀: ⠀**Case No. 08 CIV 9117 (GBD) (HBP)**

⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀:

HOME BOX OFFICE, INC.,⠀⠀⠀⠀⠀⠀⠀:

⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀Defendant.⠀⠀⠀⠀:

⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀:
-----------------------------------------------------------------x

## MITRE'S BRIEF IN SUPPORT OF PARTIAL SUMMARY JUDGMENT
## THAT MITRE IS NOT A PUBLIC FIGURE

*FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION UNDER
THE PROTECTIVE ORDER*

193074.3

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................... 1

FACTUAL STATEMENT ............................................................................................. 3

   I.   THE PARTIES ................................................................................................... 3

   II.   CHILDREN OF INDUSTRY ................................................................................. 3

   III.   MITRE DID NOT SIGN THE ATLANTA AGREEMENT AND AT MOST PRIVATELY
      SUPPORTED THE AGREEMENT'S PRINCIPLES. ................................................... 4

   IV.   MITRE DOES NOT PUBLICIZE ITS ETHICAL SOURCING POLICY ...................... 6

   V.   MITRE DOES NOT HAVE "GENERAL FAME OR NOTORIETY" OR "PERVASIVE
      INVOLVEMENT IN THE AFFAIRS OF SOCIETY" IN THE RELEVANT COMMUNITY ............. 7

ARGUMENT ................................................................................................................ 8

   I.   HBO BEARS THE BURDEN TO SHOW THAT MITRE IS A PUBLIC FIGURE ....................... 8

   II.   MITRE IS NOT A GENERAL PURPOSE PUBLIC FIGURE ...................................... 8

      A.   A General Purpose Public Figure Is One with Such "General Fame or
         Notoriety" in the Community That It Is a Household Name ................................... 8

      B.   There Must Be Clear Evidence of General Fame and Notoriety "in the
         Community" Where the Defamation Primarily Occurred, or from Where the
         Jury Will Be Drawn ................................................................................................ 9

      C.   There is No "Clear Evidence" of Mitre's "General Fame or Notoriety" in
         the U.S. or SDNY ................................................................................................. 10

      D.   Mitre's U.S. Marketing and Sales Efforts Do Not Make Mitre a Public Figure ... 12

   III.   MITRE IS NOT A LIMITED PURPOSE PUBLIC FIGURE ...................................... 13

      A.   Mitre Has Not Sought to "Attract Public Attention" or "Achieve a
         Measure of Public Acclaim" in an Attempt to Influence Issues Regarding
         Child Labor ............................................................................................................ 14

      B.   Mitre Has Not Maintained "Regular and Continuing Access to the Media"
         on the Child Labor Issue ....................................................................................... 17

      C.   The "Public Controversy" Surrounding the Atlanta Agreement Is Not
         the Same "Public Controversy" at Issue Here ..................................................... 18

CONCLUSION ............................................................................................................ 19

193074.3

## TABLE OF AUTHORITIES

### Federal Cases

*Arctic Co., Ltd. v. Loudoun Times Mirror*, 624 F.2d 518 (4th Cir. 1980) ...................................... 9

*Behr v. Weber*, No. 16047/89, 1990 WL 270993 (N.Y. Sup. Ct. Jan. 5, 1990)........................... 12

*Bruno & Stillman, Inc. v. Globe Newspaper Co.*, 633 F.2d 583 (1st Cir. 1980) .............. 12, 13, 14

*Celle v. Filipino Reporter Enterprises, Inc.*, 209 F.3d 163 (2d Cir. 2000)..................................... 8

*Computer Aid, Inc. v. Hewlett-Packard Co.*, 56 F. Supp. 526 (E.D. Pa. 1999)...................... 11, 12

*Contemporary Mission, Inc. v. New York Times Co.*, 842 F.2d 612 (2d Cir. 1988).............. 16, 17

*Cummins v. SunTrust Capital Mkts., Inc.*, 649 F. Supp. 2d 224 (S.D.N.Y. 2009) ...................... 17

*El Meson Espanol v. NYM Corp.*, 389 F. Supp. 357 (S.D.N.Y. 1974) .......................................... 13

*Franklin Prescriptions, Inc. v. New York Times Co.*, 267 F. Supp. 2d 425 (E.D. Pa. 2003)........ 16

*Gen. Prods. Co., Inc. v. Meredith Corp.*, 526 F. Supp. 546 (E.D. Va. 1981)............................... 14

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974) ................................................................. *passim*

*Harris v. Tomczak*, 94 F.R.D. 687 (E.D. Cal. 1982)..................................................................... 10

*Krauss v. Globe Intern. Inc.*,
        No. 18008/92, 1996 WL 780550 (N.Y. Sup. Ct. Sept. 16, 1996)......................................... 9, 11

*Kroll Assocs. v. City and County of Honolulu*, 833 F. Supp. 802 (D. Haw. 1993) ................. 9, 12

*Lake Havasu Estates, Inc. v. Reader's Digest Ass'n, Inc.*,
        441 F. Supp. 489 (S.D.N.Y. 1977) ...................................................................................... 12

*Lerman v. Flynt Distrib. Co.*, 745 F.2d 123 (2d Cir. 1984).............................................. 14, 17, 18

*Merritt v. Thompson*, 162 B.R. 748 (E.D. Mich. 1993)................................................................... 9

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) ............................................................. 1, 8

*Schultz v. Reader's Digest Ass'n*, 468 F. Supp. 551 (E.D. Mich 1979) ....................................... 15

*Snead v. Redland Aggregates Ltd.*, 998 F.2d 1325 (5th Cir. 1993) ............................. 9, 11, 12, 15

*Stack v. Jaffee*, 248 F. Supp. 2d 100 (D. Conn. 2003)................................................................... 8

193074.3

*Super Future Equities, Inc. v. Wells Fargo Bank Minn., N.A.,*
   553 F. Supp. 2d 680 (N.D. Tex. 2008) ...................................................... 15

*Time Inc. v. Firestone,* 424 U.S. 448 (1976)............................................................... 15

*U.S. Healthcare, Inc. v. Blue Cross of Greater Phila. et al.,*
   898 F.2d 914 (3d Cir. 1991) ............................................................. 11, 13

*Waldbaum v. Fairchild Publ'ns, Inc.,* 627 F.2d 1287 (D.C. Cir. 1980)............................ 9, 10, 11

*Wilkinson v. Schoenhorn,*
   No. X03960499266CLD, 2001 WL 420373 (Conn. Super. April 10, 2001) ........................... 8

## State Cases

*Fairley v. Peekskill Star Corp.,* 83 A.D. 2d 294 (N.Y. App. Div. 1981)....................................... 8

*Greenberg v. CBS Inc.,* 419 N.Y.S.2d 988 (N.Y. Sup. Ct. 1979)..................................... 15, 17, 18

*James v. Gannett Co.,* 40 N.Y.2d 415 (1976)............................................................*passim*

*Lee v. City of Rochester,* 663 N.Y.S.2d 738 (N.Y. Sup. Ct. 1997)........................................ 12, 17

*Maule v. NYM Corp.,* 54 N.Y.2d 880 (1981)............................................................... 18

## Other Authorities

David E. Elder, *Defamation: A Lawyer's Guide* (2010)............................................. 9, 11

193074.3

Mitre Sports International Limited ("Mitre") respectfully submits this memorandum of law in support of its renewed motion for summary judgment that HBO has failed to meet its burden of showing that Mitre is a public figure.

## PRELIMINARY STATEMENT

For HBO to avail itself of the "actual malice" standard of *New York Times v. Sullivan*, HBO must show that Mitre has become a "general purpose" public figure for all matters, or that Mitre has made itself a "limited purpose" public figure by actively seeking and attracting public acclaim for its efforts against child labor. HBO fails in both respects.

First, HBO fails to meet its burden of showing that Mitre is a general purpose public figure, *i.e.*, for all controversies. Under the Supreme Court's governing legal standard, HBO must offer "clear evidence" that Mitre has "general fame or notoriety" and "pervasive involvement" in the community where the defamation occurred or from where the jury will be drawn, *i.e.*, the Southern District of New York or the United States. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351-52 (1974). In a July 2009 survey of individuals in the Southern District and nationwide, less than one half of one percent (0.45%) of the individuals in the Southern District knew of Mitre generally and what it was (a sporting goods brand), some of them from watching the HBO show. Nationwide, only 1.52 percent had heard of Mitre and even generally knew what it did, some of them from watching the HBO show.[1]

---

[1] A total of 3 percent of in the Southern District and 4 percent nationwide had heard the name, "Mitre," but the vast majority did not know what Mitre was, *i.e.*, a sporting goods brand. A majority of the individuals surveyed who were familiar with "Mitre" misidentified it as, *inter alia*, a military contractor, telemarketing company, research and consulting firm, and law firm. *See* Declaration of Jean Kim, dated April 15, 2011, ("Kim Decl.") Ex. 1 at 7-8, 10-11, App. B at 2.

This *de minimis* public recognition is "clear evidence" that Mitre is *not* a public figure. *Gertz*, 418 U.S. at 352. Indeed, such household names as Hewlett-Packard, Blue Cross/Blue Shield, and U.S. Healthcare have been held *not* to be public figures *as a matter of law*. The standard of showing that an entity is a general purpose public figure is very high. HBO cannot meet this high burden with respect to Mitre - a virtually unknown company in the Southern District or the United States.

Second, Mitre is not a limited purpose public figure with respect to the controversy at issue, child labor. HBO must show that Mitre has made itself a public figure by "tak[ing] an affirmative step to attract public attention" and "striv[ing] to achieve a measure of public acclaim" for its efforts to stop child labor. *James v. Gannett Co.*, 40 N.Y.2d 415, 422-23 (1976). Despite HBO's casting a wide net, both inside and outside the U.S., for evidence of Mitre's striving for such public acclaim, HBO has found none. While Mitre has consistently and diligently attempted to combat child labor, that is not the relevant inquiry. To avail itself of the "actual malice" standard, HBO must prove that Mitre *affirmatively and actively sought* public attention and acclaim in the Southern District or the U.S. for its efforts to stop child labor.

The discovery record is devoid of any such evidence. The actions of other entities that HBO's "Children of Industry" falsely attributes to Mitre do not make Mitre a public figure. Nor are statements made in response to the British press over a decade ago relevant to the question of whether Mitre was a public figure *in the Southern District or the U.S.* at the time of the original telecast. None of these isolated, temporally remote and legally irrelevant events approach the high threshold of public activity required for public figure status.

2

## FACTUAL STATEMENT

### I.   THE PARTIES

Mitre is a privately held sporting goods brand headquartered in the United Kingdom. 56.1 Stmt. ¶ 1.[2] Mitre is one of 15 sporting, fashion, and lifestyle brands owned by Pentland Group plc ("Pentland Group"). *Id.* Among other sporting goods products, Mitre, through its licensees, sells Mitre-branded soccer balls, including in the United States. *Id.*

HBO operates premium cable television channels, which provide 24-hour pay television services. 56.1 Stmt. ¶ 2. HBO is a subsidiary of Time Warner Inc., one of the world's largest media and entertainment conglomerates. *Id.*

### II.   CHILDREN OF INDUSTRY

On September 16, 2008, HBO telecast, for the first of many times, on its "Real Sports with Bryant Gumbel" program a story titled "Children of Industry" (a/k/a "Soccer Slaves" or "Childhood Lost") (hereinafter "COI"). *Id.* ¶ 3. Through October 27, 2008, HBO repeatedly telecast and otherwise distributed COI on cable television; it also appeared on the Internet. *Id.*

COI is an approximately 21-minute program concerning "two major, but distinct, child labor issues in India." *Id.* ¶ 4. First, COI discusses the use of child labor in the manufacture of soccer balls in Jalandhar, India's primary city for soccer equipment manufacture where 95% of soccer balls exported from India are made. *Id.* ¶ 5. "As a separate and second issue," *id.* ¶ 6, COI discusses the distinct issue of child slave labor which COI also refers to as debt-bonded labor or indentured servitude, in India's second city for soccer manufacturing, Meerut. Kim Decl. Ex. 2 at 9:21-14:15. COI purportedly describes how enslaved children in Meerut work to repay debts to soccer ball companies incurred by the children's parents. *Id.* at 12:2-12:18. These

---

[2] References to "56.1 Stmt." are to Mitre's Rule 56.1 Statement in Support of Summary Judgment That Mitre Is Not a Public Figure, dated April 15, 2011, submitted herewith.

193074.3

children are not paid because of the exorbitant interest rates on these debts. *Id.* at 11:14-12:1. According to HBO, they are likely doomed to a life of slavery that will be passed on to their own children —"generations to generations." *Id.* at 12:12-21. While viewers of COI concluded, as HBO intended, that Mitre employs child slave labor in Meerut, no Mitre balls are made in Meerut. Anderson Decl. ¶ 4;[3] Kapoor Decl. Ex. 45 (HBO's Responses to RFA Nos. 56 and 57).[4]

### III. MITRE DID NOT SIGN THE ATLANTA AGREEMENT AND AT MOST PRIVATELY SUPPORTED THE AGREEMENT'S PRINCIPLES

COI also states that Mitre "called a summit of the world's biggest soccer ball makers" in Atlanta, where they "pledged to stop using child labor," and depicts purported representatives of Mitre commenting on child labor issues. Kim Decl. Ex. 2 at 7:23-8:11. Typical of the hoax perpetrated by HBO, the two individuals in COI falsely represented as Mitre employees speaking about child labor and what became known as the "Atlanta Agreement" were *not* Mitre employees or representatives, but Khurshid Soofi, the then-owner of Saga Sports, a sporting goods manufacturer in Sialkot, Pakistan, and John Riddle, then-president of the Sporting Goods Manufacturing Association ("SGMA"), a U.S. trade association of sports and fitness brands of all kinds. Anderson Decl. ¶ 11.

This "summit" was not called by Mitre. Anderson Decl. ¶¶ 6, 11, 12.[5] It was called by the SGMA and the World Federation of the Sporting Goods Industry ("WFSGI"), an

---

[3] References to "Anderson Decl." are to the Declaration of Duncan Anderson, submitted with Mitre's cross-motion for summary judgment that Mitre is not a public figure on October 6, 2009, and submitted again herewith.

[4] "Kapoor Decl." refers to the Declaration of Ankur Kapoor in Support of Mitre's Motion for Summary Judgment that HBO Defamed Mitre, dated April 15, 2011.

[5] HBO's Joseph Perskie, one of the two HBO producers responsible for checking the factual accuracy of COI, testified that "Pentland," not Mitre, had called the summit and further could not recall the basis for his belief. Kim Decl. Ex. 3 at 106:20-107:20. Zehra Mamdani, the other HBO producer responsible for checking the factual accuracy of COI, was also questioned regarding the factual accuracy of the statement and testified, "I don't remember checking the statement." Kim Decl. Ex. 4 at 282:12-283:7.

193074.3

international trade association.  Anderson Decl. ¶ 12.  Other participants were non-governmental

organizations:  the International Labor Organization (the "ILO"), UNICEF, and Save the

Children.  *Id.* ¶ 6.

The Atlanta Agreement, of which *neither* Mitre *nor* its parent, Pentland Group, is a

signatory, was signed on February 14, 1997, by the ILO, UNICEF, and the Sialkot, Pakistan,

Chamber of Commerce and Industry (the "SCCI").  56.1 Stmt. ¶ 13.  The SCCI agreed to

implement a monitoring system to prevent child labor in Sialkot, which at the time was known as

the soccer manufacturing capital of the world.  *Id.*  The membership of the SCCI included the

manufacturers of soccer balls in Sialkot, Pakistan; it did not include Mitre.  *Id.*

UNICEF, the ILO, the SGMA, and the WFSGI were the main drivers of the Atlanta

Agreement.  *Id.* ¶ 14.  Elliot Schrage, an SGMA attorney, drafted the Atlanta Agreement.

Anderson Decl. ¶ 6.  UNICEF, the ILO, the SGMA, the WFSGI, Pakistani manufacturers, and

Pakistani government officials held meetings between 1995 and 1997 that culminated in the

Atlanta Agreement's signing at the SGMA Super Show in February 1997.  *Id.*  There was a

meeting to discuss child labor in the sporting goods industry in Verbier, Switzerland, called "The

Way Forward," hosted by the WFSGI in 1995.  *Id.* ¶ 7.  Mitre was not present at the Verbier

meeting.  *Id.*  The Verbier meeting was followed by a conference in London in November 1996

organized by the WFSGI, and attended by the SGMA, officials of the Pakistani government,

manufacturers, several NGOs, and multiple brands, including Mitre.  *Id.* ¶ 8.

Mitre will only contract with manufacturers in Pakistan who have pledged to abide by the

terms of the Atlanta Agreement.  *Id.* ¶ 9.  However, Mitre did not seek media attention or other

publicity for its support of the Atlanta Agreement.  *Id.* ¶ 10.  It distributed no press releases on

the issue, held no press conferences on the subject, and gave none of its opinions on the Pakistani

193074.3

child labor issues surrounding the Agreement to the general public.  *Id.*  Nor does Mitre advertise

its efforts to eradicate child labor.  *Id.* ¶ 19.  The only significant media attention regarding

Mitre's connection to the Atlanta Agreement came over ten years later in one of the numerous

fabrications of HBO's COI.

## IV.     MITRE DOES NOT PUBLICIZE ITS ETHICAL SOURCING POLICY

Mitre contracts with two manufacturers to have its soccer balls hand-stitched in

Jalandhar, India.  Anderson Decl. ¶ 3.  The manufacturers that produce Mitre-branded soccer

balls in Jalandhar are members of the Sports Goods Foundation of India ("SGFI"), a non-

governmental organization that monitors the production of soccer balls in Jalandhar.  *Id.*  The

SGFI has implemented a monitoring system aimed at eliminating the use of child labor in the

manufacture of soccer balls and addressing the related issues of education, health, social security

and women's empowerment in Jalandhar.  *Id.*

Recognizing that child labor does occur, Mitre has an ethical sourcing policy prohibiting

the use of child labor in the manufacture of its products, including Mitre-branded soccer balls.

*Id.* ¶ 18.  However, Mitre has not sought media attention or otherwise sought to publicize this

policy.  *Id.* ¶ 19; 56.1 Stmt. ¶¶ 24, 27 (citing testimony that Mitre does not issue press releases

regarding child labor, but rather only *responds* to inquiries for information).  The extent of the

information Mitre makes available to the public regarding Mitre and child labor issues is on the

ethical code of conduct section of Mitre's website.  Anderson Decl. ¶ 18.  The website is limited

to a one-sentence statement that "child labor is not used," followed by a short description of the

procedure for disengaging from manufacturers discovered using child labor.  *Id.*

Mitre has never advertised nor promoted to the general public its policy against the use of

child labor.  *Id.* ¶ 19.  Mitre likewise has never advertised its policy on the face of its products, a

193074.3

practice adopted by other soccer ball brands. *Id.*[6] Mitre otherwise has not sought media

attention or press exposure regarding issues of child labor. *Id.* In response to press inquiries

regarding allegations of child labor, Mitre has provided information regarding its policy against

the use of child labor and has launched its own investigations into any such allegations. *Id.* ¶ 20.

Comments to the press have been purely in response to inquiries and not an attempt to seek out

publicity on issues relating to child labor. *Id.*

## V.   MITRE DOES NOT HAVE "GENERAL FAME OR NOTORIETY" OR "PERVASIVE INVOLVEMENT IN THE AFFAIRS OF SOCIETY" IN THE RELEVANT COMMUNITY

Mitre does not have "general fame or notoriety in the community" and "pervasive

involvement in the affairs of society" in the population eligible to serve as jurors in this case

from the Southern District of New York or the United States. *See Gertz*, 418 U.S. at 351-52. A

poll conducted by Global Strategy Group from July 7 to July 26, 2009 (the "GSG Poll"), found

that less than one half of one percent (0.45%) of the individuals in the Southern District of New

York eligible to serve as jurors for this case knew of Mitre and what it was (a sporting goods

brand). Nationwide, only 1.52 percent had heard of Mitre and knew what it did. Kim Decl. Ex.

1. HBO has not submitted a rebuttal report to the expert report accompanying this poll.

Mitre does not currently sponsor any teams or leagues in the United States. Hibbert Decl.

¶ 2.[7] Mitre has not been a sponsor of any teams or leagues in the U.S. since 1999. *Id.* Mitre's

---

[6] For example, raw footage of COI, produced by HBO in this litigation, shows children in Jalandhar, India stitching, among others, Dunlop-branded soccer balls which bear the stamp "GUARANTEED HAND STITCHED WITHOUT CHILD LABOR" and a Pepsi-branded soccer ball bearing the signature of Ronaldinho, one of the world's most famous soccer players, and the stamp "CHILD LABOUR FREE." HBO DVD034 at 6:20-8:16, 8:23-10:42 (stillshots attached as Kim Decl. Ex. 8). We do not know if this footage of girls stitching a Dunlop-branded soccer ball and a Pepsi-branded ball is falsified as is COI's footage of children stitching *MITRE*-branded soccer balls.

[7] References to "Hibbert Decl." are to the Declaration of Gary Hibbert, submitted with Mitre's cross-motion for summary judgment that Mitre is not a public figure on October 6, 2009, and submitted again herewith.

193074.3

licensees engage in *de minimis* advertising in the United States (approximately $250,000 per year). *Id.*

## ARGUMENT

### I.  HBO BEARS THE BURDEN TO SHOW THAT MITRE IS A PUBLIC FIGURE

The defendant in a defamation case bears the burden of proving that the plaintiff is a public figure in order to obtain the benefit of the "actual malice" standard, first established in *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964). *Fairley v. Peekskill Star Corp.*, 83 A.D. 2d 294, 298 (N.Y. App. Div. 1981) ("The burden of proof with respect to the [public figure] status of the plaintiff is on the media defendant."). Subsequent to *New York Times v. Sullivan*, the Supreme Court identified two types of public figures: "general purpose" (or "all-purpose") public figures and "limited purpose" public figures. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345, 351-52 (1974). Mitre's motion that it is *not* a public figure should be granted, because HBO cannot meet its burden of proving that Mitre is either type of public figure.[8]

### II.  MITRE IS NOT A GENERAL PURPOSE PUBLIC FIGURE

#### A.  A General Purpose Public Figure Is One with Such "General Fame or Notoriety" in the Community That It Is a Household Name

A general purpose public figure is a public figure for "all aspects of his life." *Gertz*, 418 U.S. at 352. The Supreme Court holds that "[a]bsent clear evidence of general fame or notoriety

---

[8] Should this motion be denied, the Court alternatively may send this issue to the jury. Even though whether a party is a public figure is usually an issue of law that is decided by the trial court, *Celle v. Filipino Reporter Enterprises, Inc.*, 209 F.3d 163, 176-77 (2d Cir. 2000), courts in the Second Circuit and elsewhere have in cases like this allowed a jury to decide the issue. *See, e.g., Stack v. Jaffee*, 248 F. Supp. 2d 100, 106 (D. Conn. 2003) ("Where, as here, the parties have presented conflicting evidence as to the nature of the extent of the plaintiff's participation in the controversy giving rise to the defamation, it is an issue of fact for the jury and summary judgment cannot be granted."); *Wilkinson v. Schoenhorn*, No. X03960499266CLD, 2001 WL 420373, at *4 (Conn. Super. April 10, 2001) ("Where the parties have presented conflicting evidence as to the nature and extent of the plaintiff's participation in the controversy giving rise to the defamation, as in this case, the plaintiff's public figure status is an issue of fact for the jury. Therefore, summary judgment cannot be granted on the basis of that status.").

193074.3

in the community, and pervasive involvement in the affairs of society, an individual should not

be deemed a public personality for all aspects of his life." *Id.* Thus, they are an "'exceedingly

rare' class." David A. Elder, *Defamation: A Lawyer's Guide* § 5:18 at 1 (2010) (internal

citations omitted). A person can be a "general [purpose] public figure *only if* he is a

*'celebrity[,]'* his name a *'household word'* whose ideas and actions the *public in fact follows*

*with great interest.*" *Waldbaum v. Fairchild Publ'ns, Inc.*, 627 F.2d 1287, 1292 (D.C. Cir. 1980)

(emphasis added); *accord Krauss v. Globe Intern. Inc.*, No. 18008/92, 1996 WL 780550, at *3

(N.Y. Sup. Ct. Sept. 16, 1996) (general purpose public figures have names that "are *tantamount*

*to household words*") (emphasis added).

**B.**   **There Must Be Clear Evidence of General Fame and Notoriety "in the Community" Where the Defamation Primarily Occurred, or from Where the Jury Will Be Drawn**

The Supreme Court requires clear evidence of general fame or notoriety in the

community where the defamation is primarily distributed, or where the jury will be drawn.

*Gertz*, 418 U.S. at 352; *see also Snead v. Redland Aggregates Ltd.*, 998 F.2d 1325, 1329 (5th Cir.

1993) (court looked to "the notoriety of the corporation to the average individual in the relevant

geographical area"); *Waldbaum*, 627 F.2d at 1295 n.22 ("the question is whether the individual

had achieved the necessary degree of notoriety where he was defamed"); *Arctic Co., Ltd. v.*

*Loudoun Times Mirror*, 624 F.2d 518, 521 (4th Cir. 1980) (corporate plaintiff ruled not a public

figure in part because "[i]t was not generally known in the community"); *Kroll Assocs. v. City*

*and County of Honolulu*, 833 F. Supp. 802, 805-06 (D. Haw. 1993) (finding "no evidence that

plaintiff was known to the community in which it allegedly was defamed[:] that is, the general

population of the City and County of Honolulu"); *Merritt v. Thompson*, 162 B.R. 748, 766 (E.D.

Mich. 1993) (interpreting Supreme Court precedent to mean that "the relevant population in

determining the defamed party's notoriety is the population in the area where the defamatory

9

statement is primarily distributed"); *Harris v. Tomczak*, 94 F.R.D. 687, 702 (E.D. Cal. 1982) (quoting *Waldbaum*).

The Supreme Court in *Gertz* held that a defamation plaintiff was not a general purpose public figure because, "[a]lthough" the plaintiff "was consequently well known in some circles, he had achieved no general fame or notoriety in the community." *Gertz*, 418 U.S. at 351-52. Elmer Gertz was a Chicago lawyer who claimed he had been defamed by a John Birch Society publication that appeared in newsstands across the country and was reprinted and distributed in Chicago. *Id.* at 325-27. The Supreme Court concluded that Gertz was not a public figure because "[n]one of the prospective jurors called at the trial had ever heard of [the plaintiff] prior to this litigation, and [the defendant] offered no proof that this response was atypical of the *local population*." *Id.* at 352 (emphasis added). In *Gertz*, the Supreme Court looked at the opinions of the "local population," Chicagoans, from which the jury was drawn and the primary area in which the defendant distributed the defamatory publication. *Id.*

Here, the jury will be drawn from the Southern District of New York and the primary area of distribution is the United States.[9]

**C.   There is No "Clear Evidence" of Mitre's "General Fame or Notoriety" in the U.S. or SDNY**

HBO must offer "clear evidence" that Mitre has the "general fame" and pervasive influence of a "celebrity" or "household word" in the community of the Southern District of New York or the United States. *Gertz*, 418 U.S. at 352; *Waldbaum*, 627 F.2d at 1292, 1294. Mitre does not approach being a household name or celebrity in the Southern District or the U.S., and does not have "pervasive involvement" in society, as required by *Gertz*.

---

[9]   HBO testified in its 30(b)(6) deposition that the intended audience for COI was the "lay viewer" or the "American public," and not a more specific soccer or sports community. Kim Decl. Ex. 9 at 105:6-106:5.

193074.3

Mitre's lack of public recognition in the Southern District and the U.S., as demonstrated, *inter alia*, by the GSG survey, is "clear evidence" that Mitre is not among that "'exceedingly rare' class" of household names that exercise "persuasive power and influence" in society. *Gertz*, 418 U.S. at 345; *Waldbaum*, 627 F.2d at 1292, 1294; *Krauss*, 1996 WL 780550, at *3; Elder, *Defamation: A Lawyer's Guide* § 5:18 at 1. Indeed, well-known corporations such as Hewlett-Packard, one of the world's leading publicly traded computer manufacturers, and Blue Cross/Blue Shield and U.S. Healthcare, two of the nation's largest health care companies, have been deemed *not* to be public figures *as a matter of law*. *Computer Aid, Inc. v. Hewlett-Packard Co.*, 56 F. Supp. 526, 535-36 (E.D. Pa. 1999) ("we do not believe that Hewlett-Packard has such pervasive fame or notoriety to be deemed a general purpose public figure," despite its status as "one of the largest and most influential corporations in the world with one of the most actively traded stocks on the New York Stock Exchange"); *U.S. Healthcare, Inc. v. Blue Cross of Greater Phila. et al.*, 898 F.2d 914, 938-39 (3d Cir. 1991) (stating that neither claimant classified the other as a "full purpose" public figure, and then holding neither company was a limited purpose public figure).

In *Snead v. Redland Aggregates Ltd.*, 998 F.2d 1325 (5th Cir. 1993), the Fifth Circuit held two British corporations without U.S. subsidiaries were private figures in the U.S. The *Snead* Court considered, among other factors: (1) the "notoriety of the corporation to the average individual in the relevant geographic are," which was in part determined by whether "a *majority* of Americans" had ever "heard of" the plaintiffs; (2) the size and nationality of the corporations; (3) whether the corporations had U.S. subsidiaries; and (4) whether the corporations had received "significant past publicity" in publications oriented toward the "public at large," as opposed to "industry publications." *Snead*, 998 F.2d at 1329-30 & n.7 (emphasis

11

193074.3

added).  The Court concluded that "we safely can assume that the majority of Americans has

never heard of" the British corporations suing for defamation.  "Although they are not small

corporations, *they are alien corporations that apparently have no U.S. subsidiaries*."  *Id.* at 1329

(emphasis added).

Mitre, like the British corporations in *Snead*, is a foreign corporation with no U.S.

subsidiaries and is virtually unknown to the American public.  Mitre's status as a privately held

corporation further supports the conclusion that it is a private figure.  *Lake Havasu Estates, Inc.*

*v. Reader's Digest Ass'n, Inc.*, 441 F. Supp. 489, 492 (S.D.N.Y. 1977) (plaintiff land sales

company not a public figure in part because it was not a "publicly held company about to offer

stock"); *Kroll*, 833 F. Supp. at 805-06 (closely-held corporation not a public figure of any kind).

### D.    Mitre's U.S. Marketing and Sales Efforts Do Not Make Mitre a Public Figure

Contrary to HBO's repeated assertions in this case, the minimal Mitre marketing and

sales efforts in the U.S. are legally irrelevant to the public figure inquiry.  Case law clearly and

consistently states that the marketing and selling of consumer goods, products, or services, in

which a company's name is displayed to the public, do *not* make that company a public figure.

*Bruno & Stillman, Inc. v. Globe Newspaper Co.*, 633 F.2d 583, 589-90 (1st Cir. 1980) ("a person

in the business world advertising his wares does not necessarily become part of an existing

public controversy") (citation and internal quotations omitted); *Hewlett-Packard*, 56 F. Supp. 2d

at 535 (Hewlett-Packard, the maker and seller of a widely distributed consumer good, found not

to be a public figure of any kind); *Lee v. City of Rochester*, 663 N.Y.S.2d 738, 745-46 (N.Y. Sup.

Ct. 1997) (rejecting the "proposition" that "any business that advertise[s] . . ., merely by the fact

of advertising, becomes a public figure," noting that this idea has been rejected by courts many

times); *Behr v. Weber*, No. 16047/89, 1990 WL 270993, at *2 (N.Y. Sup. Ct. Jan. 5, 1990) ("a

business does not 'thrust itself' into a public controversy by merely advertising its services")

12

(citation and internal quotations omitted); *El Meson Espanol v. NYM Corp.*, 389 F. Supp. 357, 359 (S.D.N.Y. 1974) ("a corporation . . . holding itself out to the public as operating a safe and proper place to go, is not a public figure").

As the First Circuit reasoned in deciding that a commercial boat manufacturer was not a public figure,

> While the company is recognized in its field and in its area, if such activity and success were alone sufficient to make it a public figure, virtually every entrepreneur, however parochial, . . . might also qualify . . . . If the plaintiff were to be deemed a public figure on the basis of the record before us, so might be, equally successful individuals, and so might be, we suggest, sellers of services as well as goods.  *At this point the law of defamation would largely be obliterated.*

*Bruno & Stillman*, 633 F.2d at 592 (emphasis added).  And in denying public figure status for commercial insurers Blue Cross/Blue Shield and U.S. Healthcare, Inc., the Third Circuit in *Blue Cross* cautioned that courts should be leery of considering advertising as a basis for creating a limited purpose public figure.  898 F.2d at 937, 939.

Even if the Court were to consider Mitre's licensees' minimal advertising efforts, that would have no impact on the Court's public figure analysis.  Mitre's licensees do virtually no advertising in the U.S.— about $250,000 per year—nor does Mitre currently promote any teams or leagues in this country; nor has it promoted any such teams or leagues since 1999. 56.1 Stmt. ¶ 3.  It sponsors one soccer player in the United States, Ian Joyce of the Colorado Rapids.  Kim Decl. Ex. 10 at 245:20-247:14.  It does not promote other soccer players endorsed by Mitre elsewhere in the world to sell its goods in the U.S. "because," as Mitre's U.S. licensee, Regent, puts it, "nobody in the United States would know who the heck they are."  *Id.* at 232:25-233:10.

### III.   MITRE IS NOT A LIMITED PURPOSE PUBLIC FIGURE

To carry its burden of showing that Mitre is a limited purpose public figure, HBO must demonstrate that Mitre has affirmatively taken steps to "attract public attention" and "strive[] to

13

193074.3

achieve a measure of public acclaim" "in an attempt to influence [the] outcome" of the debate. *James v. Gannett Co.*, 40 N.Y.2d 415, 422-23 (1976) (the "essential element" in the public figure analysis is whether a person has taken "affirmative steps to attract public attention"); *Gertz*, 418 U.S. at 345, 352; *accord Lerman v. Flynt Distrib. Co.*, 745 F.2d 123, 136-37 (2d Cir. 1984) (requiring defamation defendant to show that plaintiff: "(1) successfully invited public attention to his views in an effort to influence others prior to the incident that is the subject of the litigation; (2) voluntarily injected himself into a public controversy related to the subject of the litigation; (3) assumed a position of prominence in the public controversy; and (4) maintained continuing and regular access to the media.").

Courts employ a demanding test because "'[a] fairly high threshold of public activity is evidently necessary for a finding that a person has voluntarily plunged into a public controversy.'" *Bruno & Stillman*, 633 F.2d at 589 (quoting L. Tribe, *American Constitutional Law* 645 (1978)); *Gen. Prods. Co., Inc. v. Meredith Corp.*, 526 F. Supp. 546, 551-52 (E.D. Va. 1981) (quoting same).

### A.    Mitre Has Not Sought to "Attract Public Attention" or "Achieve a Measure of Public Acclaim" in an Attempt to Influence Issues Regarding Child Labor

After scouring the Lexis/Nexis and Westlaw databases for evidence that Mitre affirmatively sought and received public acclaim concerning Mitre's efforts to stop child labor, HBO found none.  The record contains three terse statements by Mitre, all more than twelve years old, in response to British newspaper inquiries that are legally irrelevant to the public figure inquiry.  Dkt. No. 47 Exs. I-12, I-13, and I-36.[10]  Two of these statements are from 1995, a

---

[10] A defamation plaintiff must be a public figure "in the community" where the defamation primarily occurred or where the jury will be drawn, *see supra* pp. 9-10.  Therefore, press coverage or knowledge of Mitre outside the U.S. is legally irrelevant for purposes of determining whether Mitre is a public figure.

193074.3

time period that the Court has ruled "too temporarily remote to be relevant . . . to public figure." Hr'g Tr., Apr. 1, 2010, at 54:16-23, 52:17-20, 50:9-23; *see* Dkt. No. 47 Exs. I-12 (*Sunday Times (UK)* article dated May 14, 1995), I-13 (*Sunday Times (UK)* letter from May 21, 1995). The only Mitre comments in the U.S. appeared in a 1998 issue of *Rubber & Plastics News,* Dkt. No. 47 Ex. I-45, an industry publication, legally irrelevant to the public figure inquiry. *See Snead*, 998 F. 2d at 1330 n.7 (discounting articles reprinted in "industry publications" reasoning that "a public figure must be known to the public at large, not merely to a select group of individuals"); *Greenberg v. CBS Inc.*, 419 N.Y.S.2d 988, 994 (N.Y. Sup. Ct. 1979) (articles in medical journals "intended for a scholarly audience and not for a mass market" did not confer public figure status); *Super Future Equities, Inc. v. Wells Fargo Bank Minn., N.A.*, 553 F. Supp. 2d 680, 690-91 (N.D. Tex. 2008) (stating that 14 articles cited by defendants from "business industry" publications not aimed at the public at large did not demonstrate public figure status).

The Supreme Court has held that even holding press conferences in response to media inquiries did not constitute voluntary injection into a public controversy for purposes of defamation law. *Time Inc. v. Firestone*, 424 U.S. 448, 454 n.3 (1976) ("Nor do we think the fact that respondent may have held a few press conferences . . . in an attempt to satisfy inquiring reporters converts her into a 'public figure.'").[11] *A fortiori*, one comment in a British publication and one comment in *Rubber & Plastics News*— the most recent of these made more than ten years prior to the original telecast—do not support public figure status of any kind for Mitre. The other two isolated comments were outside the relevant time period so ordered by this Court (and also in British publications).

---

[11] *See also Schultz v. Reader's Digest Ass'n*, 468 F. Supp. 551, 559 (E.D. Mich 1979), ("If one through no purposeful action of his own becomes involved in a public controversy, *his response to charges by way of denial or whatever should not, absent other factors, be taken as an indication of voluntary involvement*.") (emphasis added).

The brief informational statements on Mitre's web site concerning its corporate standards do not constitute injection into the public debate over child labor. *See Franklin Prescriptions, Inc. v. New York Times Co.*, 267 F. Supp. 2d 425, 440 (E.D. Pa. 2003) (the plaintiff "merely provided an information only Website on the Internet and did not invite public attention," and was therefore not a limited purpose public figure); *see also id.* at 437 (further stating that plaintiff was not a public figure because it "did not engage in any advertising blitz," and "only posted a Website for information").

Similarly inapposite to the public figure analysis are statements made and actions undertaken by entities other than Mitre. COI contends that Mitre organized a "summit" that resulted in the Atlanta Agreement. Kim Decl. Ex. 2 at 7:23-8:4. This statement is false.[12] The World Federation of the Sporting Goods Industry ("WFSGI"), a sporting goods trade organization, not Mitre, organized the "summit" referred to in COI. Anderson Decl. ¶ 6. The Atlanta Agreement itself was a product of collaboration among non-governmental organizations—UNICEF, the ILO, and the Sialkot Chamber of Commerce and Industry, who actually signed the Agreement—and trade associations—the Sporting Goods Manufacturers Association and the WFSGI. Anderson Decl. ¶¶ 6-7. Mitre, a non-signatory, privately supported these efforts but sought no press or public acclaim regarding its support. Anderson Decl. ¶ 10.

The Second Circuit's analysis in *Contemporary Mission, Inc. v. New York Times Co.*, 842 F.2d 612 (2d Cir. 1988), illustrates the magnitude of public injection required to be a public figure. The group of Catholic priests in *Contemporary Mission*, who were deemed public figures, had "invited media attention" by forming a "folk-rock group" and "produc[ing] 18 record albums, g[iving] more than 200 concerts in over 38 states and appear[ing] on numerous

---

[12] HBO has failed to provided any factual basis for its statement. *See supra* note 5.

193074.3

television and radio shows, including . . . the Ed Sullivan Show, the Mike Douglas Show and the Joey Bishop Show." *Id.* at 618. Plaintiffs addressed "open letters" to religious authorities stating, "we have now become celebrities, almost *household words*." *Id.* (emphasis added). The plaintiffs also published a "syndicated column in over 50 newspapers for two years and published numerous books and articles." *Id.* They "continued to thrust themselves into the public eye" through the conduct of a mail-order business—one of the subject controversies in the litigation—and involved themselves in "at least 35" lawsuits relating to this business. *Id.* at 619. The Second Circuit held that such pervasive, nationwide, and self-promoting activities constituted injection into the relevant controversy. *See id.* at 618-20; *see also Cummins v. SunTrust Capital Mkts., Inc.*, 649 F. Supp. 2d 224, 241 (S.D.N.Y. 2009) (finding that a mere three articles cited by defendants involving the plaintiff prior to the defamation "pale[d] in comparison to the press coverage found to establish a public controversy in other cases[,]" citing *Contemporary Mission*). None of Mitre's purely reactive statements rises to the level of public injection required by the Second Circuit for public figure status.

### B. Mitre Has Not Maintained "Regular and Continuing Access to the Media" on the Child Labor Issue

The Second Circuit has held, in order to show that a plaintiff is a limited purpose public figure, "a defendant must show the plaintiff has . . . maintained *regular and continuing* access to the media." *Lerman*, 745 F.2d 123, 136-37 (emphasis added). The passage of time extinguishes public figure status. *Lee v. Rochester*, 663 N.Y.S. 2d 738, 746 (N.Y. Sup. Ct.1997); *Greenberg*, 419 N.Y.S. 2d at 993-94. In *Lee*, the court stated that there is "no *per se* rule" that, once a public figure, one will remain a public figure for all time. *Id.* The *Lee* court found that the plaintiff had "slipped into obscurity" nine years before his involvement with the controversy at issue and therefore lost any public figure status he may have had almost a decade before the publication.

193074.3

*Id. Lee* explained the importance of "maintaining 'continuou[s]' contact with the press or media" to keep one's public figure status. *Id.* (citing *Lerman*, 745 F.2d at 137; *Maule v. NYM Corp.*, 54 N.Y.2d 880, 882 (1981)). Similarly, in *Greenberg*, the court denied public figure status reasoning, *inter alia*, that the purported injection into a controversy "terminated more than 10 years prior to the telecast." *Greenberg*, 419 N.Y.S. 2d at 993-94.

Nothing in the record shows that Mitre maintained "regular and continuing access to the media" on issues of child labor in the over ten years between the events surrounding the Atlanta Agreement and the first telecast of COI on September 16, 2008. Mitre made no statements to the media about the Atlanta Agreement when it was announced, and it has not made any to the media since. As in *Lee* and *Greenberg*, the over 10-year dormant period between the execution of the Atlanta Agreement and the telecast of COI defeats any possibility of public figure status for Mitre.

**C.     The "Public Controversy" Surrounding the Atlanta Agreement Is Not the Same "Public Controversy" at Issue Here**

In *Gertz*, the Supreme Court held that limited purpose public figures must have "thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved." 418 U.S. at 345. *Gertz* further elaborated that courts must look to "the nature and extent of an individual's participation in the *particular controversy giving rise to the defamation.*" *Id.* at 352 (emphasis added). *See also Lerman*, 745 F.2d at 136-37 (the "public controversy" must "relate[] to the subject of the litigation").

The "controversy" related to the alleged defamation in this case is distinct in time, place and the entities involved from the discovery and remediation of child labor in Sialkot, Pakistan, in the early to mid-1990's. There is no evidence in the record that the Sialkot controversy was ongoing and continued after reforms were implemented in the Pakistan soccer industry pursuant

18

to the 1997 Atlanta Agreement.  Nor was there an ongoing controversy regarding child labor and Mitre-branded products in India.  COI was distributed over ten years after the events of Sialkot and falsely contends that Mitre uses child and child slave labor in the manufacture of Mitre-branded soccer balls in Jalandhar and Meerut, India.  There was no existing debate or controversy relating to the subject of this litigation at the time of HBO's initial telecast.

## **CONCLUSION**

For all of the foregoing reasons, defendant HBO cannot meet its burden of proving that Mitre is a public figure.  Therefore, Mitre respectfully requests that the Court grant Mitre's renewed motion for summary judgment and hold that Mitre is not a general or limited purpose public figure.

Dated: April 15, 2011

Respectfully submitted,

**CONSTANTINE CANNON LLP**

By: _____
Jean Kim
Lloyd Constantine
Ankur Kapoor
Sam Rikkers
450 Lexington Avenue
New York, N.Y. 10017
(212) 350-2700
(212) 350-2701 (fax)

Jason Enzler
Ross Fisher
1627 Eye Street, N.W.
Washington, D.C. 20006
(202) 204-3500
(202) 204-3501 (fax)

193074.3