**FILED UNDER SEAL**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

MITRE SPORTS INTERNATIONAL LIMITED,

    Plaintiff,

    -against-

HOME BOX OFFICE, INC.,

    Defendant.

------------------------------------------------------------X

Case No.: 08 CIV 9117 (GBD)(HBP)


# MEMORANDUM OF LAW OF DEFENDANT HOME BOX OFFICE, INC. IN SUPPORT OF ITS MOTION TO STRIKE THE EXPERT REPORT OF SCOTT ELDER

HOGAN LOVELLS US LLP
Slade R. Metcalf
R. Brian Black
Collin J. Peng-Sue
875 Third Avenue
New York, NY 10022
Telephone: (212) 918-3000
Facsimile: (212) 918-3100

Of Counsel:
Stephanie S. Abrutyn
Home Box Office, Inc.
1100 Avenue of the Americas
New York, NY 10036

*Attorneys for Defendant Home Box Office, Inc.*

Defendant Home Box Office, Inc. ("HBO") submits this memorandum of law in support of its Motion to Strike the Expert Report of Scott Elder, the expert designated by plaintiff Mitre Sports International Limited ("Mitre") for survey evidence submitted in conjunction with its motion for partial summary judgment that Mitre is not a public figure, Dkt. No. 193 ("Public Figure Mem."). HBO respectfully requests that Elder's survey evidence be excluded from consideration on summary judgment.

## PRELIMINARY STATEMENT

Mitre has introduced surveys of potential jurors to argue that Mitre is not a general purpose public figure under the *Gertz* standard. Mitre's surveys, however, are inadmissible. As an initial matter, the surveys are not legally relevant to the general purpose public figure analysis because Mitre restricted the universe of the participants to a subset of potential jurors—not the relevant community under the *Gertz* standard—and excluded many individuals who may have seen the segment at issue in this litigation (the "Segment"). Also, Mitre's survey expert made several methodological errors that inherently skewed the results by concealing Mitre's distinctive logo from survey participants and underrepresenting populations more likely to recognize Mitre as a soccer brand. The surveys should be stricken.

## FACTUAL BACKGROUND

On January 18, 2011, Mitre produced the Expert Report of Scott Elder, which discussed two surveys conducted "to gauge the level of awareness of Mitre among the adult population in the jury pool in the Southern District and nationwide" (the "Surveys"). (Decl. of R. Brian Black, dated April 21, 2011 ("Black Decl."), Ex. 1 (the "Elder Rpt.") at 4.) Elder concludes that "a very small percentage of survey respondents (1/2 of 1 percent) in the Southern District are familiar with Mitre" and that "the Southern District's knowledge and attitudes on these matters are not unique or specific to the area." (*Id.* at 8, 11.) Mitre thus claims that it is not a general purpose

public figure under *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974). (Public Figure Mem. at 1, 7, 11.)

## ARGUMENT

A district court has a special "gatekeeping" responsibility to ensure that all expert testimony is both relevant and reliable. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). "The district court's 'gatekeeping' function in evaluating expert testimony requires that it look to Federal Rule of Evidence 401 to determine whether the testimony is relevant; *i.e.*, whether it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 60 (2d Cir. 2002) (internal marks omitted). "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993) (internal marks omitted).

In addition, to demonstrate that an expert opinion is reliable, the offering party must show that: (1) the testimony "is based upon sufficient facts or data"; (2) the testimony "is the product of reliable principles and methods"; and (3) "the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702; *Daubert*, 509 U.S. at 592-93 (the district court must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue").

**I.   THE COURT SHOULD STRIKE THE SURVEYS AS LEGALLY IRRELEVANT**

Elder's Surveys are irrelevant to whether Mitre is a general purpose public figure and therefore must be stricken. Mitre claims that it is not a general purpose public figure, *see, e.g.*, *Gertz v Robert Welch, Inc.*, 418 U.S. 323, 344-45 (1974), because the Surveys show that "Mitre

does not have the 'general fame or notoriety in the community' and 'pervasive involvement in the affairs of society' in the *population eligible to serve as jurors* in this case from the Southern District of New York or the United States." Public Figure Mem. at 7 (citing *Gertz*, 418 U.S. at 351-52) (emphasis added). Survey experts, however, must establish that "the proper universe was examined and the representative sample was drawn from that universe." *THOIP v. Walt Disney Co.*, 690 F. Supp. 2d 218, 230 (S.D.N.Y. 2010); *accord Troublé v. The Wet Seal, Inc.*, 179 F. Supp. 2d 291, 307-08 (S.D.N.Y. 2001) (excluding a consumer confusion survey, including for "the lack of a proper universe and sample"). "[I]f the universe is skewed, then the conclusion will be similarly skewed. If an expert, a person with special knowledge and expertise, testifies as to the skewed results, a jury is likely to give special weight to the skewed conclusion." *Citizens Fin. Grp., Inc. v. Citizens Nat'l Bank*, 383 F.3d 110, 120 (3d Cir. 2004) (internal marks omitted).

Here, Elder improperly defined the universe as the "jury pool" (Black Decl. Ex. 2 at 31), and then went on to exclude whole groups of individuals whom logic suggests may be more likely to have heard of Mitre, resulting in a sample far too narrowly defined to be relevant to the general purpose public figure analysis. The relevant inquiry for the Court in deciding this question of law is the perception of the plaintiff in the *community*, not the jury pool. *See Gertz*, 418 U.S. at 351-52; *Celle v. Filipino Reporter Enters.*, 209 F.3d 163, 176 (2d Cir. 2000); *Church of Scientology Int'l v. Eli Lilly & Co.*, 778 F. Supp. 661, 666 n.3 (S.D.N.Y. 1991). The Second Circuit follows the general rule that a plaintiff need only be a public figure in the community to which the publisher distributes the allegedly defamatory statement. *Celle v. Filipino Reporter Enters., Inc.*, 209 F.3d 163, 177 (2d Cir. 2000); *see also Chapman v. Journal Concepts, Inc.*, 528 F. Supp. 2d 1081, 1091-92 (D. Haw. 2007).

One example of how the "jury pool" limitation unduly restricted the universe of participants is Elder's exclusion of non-English speakers. It is undisputed that HBO distributed the Segment at issue here to a Spanish-speaking community. (Black Decl. Ex. 11 ¶ 5.) Nonetheless, Elder erroneously excluded individuals whose knowledge of Mitre would certainly be relevant to determining whether Mitre is a public figure. In limiting the universe for his sample of the "jury pool," Elder and his team excluded non-English speakers, noting that "it is our understanding that if people generally don't speak English, they don't sit on a jury, so they would not have qualified for this survey, they would not be in the pool we were trying to reach."[1] (Black Decl. Ex. 2 at 51.) By excluding non-English speakers, Elder undoubtedly excluded Spanish-speaking individuals who are part of the relevant community for the general purpose public figure determination.[2] Similarly, Elder excluded all individuals in the New York area who work in the media or the legal community, as well as family members. (*Id.* at 88, 91-92.)

By limiting the universe to the jury pool, rather than the relevant community, Elder focused the Surveys on a far narrower universe that is not legally relevant to this case. Accordingly, the Surveys should be stricken as "insufficiently probative, unfairly prejudicial, misleading, confusing," and "a waste of time." *THOIP*, 690 F. Supp. 2d at 231.

---

[1] Notably, even though the Southern District survey purported to be of "the adult population in the jury pool in the Southern District" (Elder Rpt. at 4), Elder admitted that he did not know the "specific qualifications" for jurors in the Southern District and that the Surveys excluded individuals who either did not have a driver's license or were not registered to vote (Black Decl. Ex. 2 at 82-83, 87-88).

[2] Elder's limitation undoubtedly skewed the results because, as Elder conceded, many Spanish-speaking individuals in the United States play and watch soccer. (Black Decl. Ex. 2 at 53-54; *see also* John Branch, *Among Hispanics, N.F.L. Mania Hits Cultural Wall*, N.Y. Times, Feb. 3, 2007, *available at* http://www.nytimes.com/2007/02/03/sports/football/03hispanics.html ("Soccer's advantage [over professional football], of course, is its ingrained popularity across Latin American culture.").)

## II. THE COURT SHOULD STRIKE THE SURVEYS AS UNRELIABLE

The Surveys also should be stricken as unreliable under Fed R. Evid. 702 and *Daubert*. Elder's methodology was inherently flawed because it prevented participants from considering Mitre's distinctive logo, thus excluding a large swath of individuals likely familiar with Mitre from participating in the Surveys. This intrinsic bias renders the results inherently unreliable.

Elder coordinated only telephone surveys. As a result, participants had no opportunity to see and possibly recognize Mitre's logo. Elder conceded that the type of survey he conducted "does not lend itself to showing logos." (Black Decl. Ex. 2 at 115-16.) Courts have criticized telephone surveys for this very failing. *See Thompson Med. Co. v. Pfizer, Inc.*, 753 F.2d 208, 212, n.2 (2d Cir. 1985) (recognizing that respondents in a phone survey were unable to examine the "essential features" on certain packaging); *Charles Schwab & Co. v. Hibernia Bank*, 665 F. Supp. 800, 807 (N.D. Cal. 1987) ("[T]he wisdom of conducting such a survey by telephone is questioned as it allows no visual inspection of the trademarks at issue."). Particularly egregious here, the Mitre logo is a widely recognized, distinctive mark. Duncan Anderson, Mitre's Development Director, explained to one of Mitre's manufacturers, "the delta is Mitre branding and is widely recognised as such. So the balls you show below are clearly recognisable as Mitre." (Black Decl. Ex. 3.) Elder biased the results by depriving respondents of the opportunity to observe the "clearly recognisable" Mitre brand.

Furthermore, a closer inspection of the Surveys reveals other significant methodological errors. For the nationwide survey, Mr. Elder's quota for Hispanics or Latinos was 9%. (Elder Rpt. at 12). Elder claims that he used a 9% quota from census information supposedly available

"on-line."[3] (Black Decl. Ex. 2 at 66-67.) According to the 2010 Census, however, Hispanics or Latinos represent 16.3% of the total population in the United States. (*See* U.S. Census Bureau, Overview of Race and Hispanic Origin: 2010, at 4 (Table 1) (March 2011), *available at* http://www.census.gov/prod/cen2010/briefs/c2010br-02.pdf (a copy is attached to the Black Decl. as Ex. 4).) Even if Elder had intended to rely on data from the 2000 Census, he should have used a 12.5% quota. (*Id.*)

The Southern District survey has similar errors. In conducting the Southern District survey, the quota for Hispanics or Latinos was 17%, which Mr. Elder claimed was based on aggregate census information on Bronx, New York, Putnam, Rockland, and Westchester counties. (Elder Rpt. at 9, Black Decl. Ex. 2 at 67-68.) According to population estimates from the U.S. Census Bureau for 2009—the year the survey was taken—the Hispanic or Latino population for those five counties was 30.9% of the overall population, not 17%. (Black Decl. Ex. 10.) The Surveys thus lack any reliable basis and should be stricken.

Finally, Elder's approach pre-supposes that the legal test is whether Mitre is a household name or known to the general public. That is not the case. *See* Dkt. 192 at Mem. 35-36.

---

[3] Notably, the information available "on-line" concerning the demographics upon which the Surveys are based has not been provided, as required by Fed. R. Civ. P. 26(a)(2)(B)(ii). An expert's failure to make disclosures required by Fed. R. Civ. P. 26(a)(2) is grounds for precluding the expert's report. *Giladi v. Strauch*, No. 94 Civ. 3976 (RMB)(HBP), 2001 WL 388052, at *6-7 (S.D.N.Y. Apr. 16, 2001) (Pitman, J.)

## **CONCLUSION**

For the foregoing reasons, HBO respectfully requests that the Court strike the survey evidence of Scott Elder.

Dated: April 22, 2011

Of Counsel:
Stephanie S. Abrutyn
Home Box Office, Inc.
1100 Avenue of the Americas
New York, NY 10036

Respectfully submitted,

By: _/s/ Slade R. Metcalf_
  Slade R. Metcalf
  R. Brian Black
  Collin J. Peng-Sue
  HOGAN LOVELLS US LLP
  875 Third Avenue
  New York, NY 10022
  Tel: (212) 918-3000

*Attorneys for Defendant Home Box Office, Inc.*