**Filed Under Seal**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

MITRE SPORTS INTERNATIONAL LIMITED,   :

                                  :

        Plaintiff,                 :   Case No.: 08 CIV 9117(GBD)(HBP)

                                  :

      -against-                  :

                                  :

HOME BOX OFFICE, INC.,          :

                                  :

        Defendant.           :

                                  :

-----------------------------------------------------------------X

## MEMORANDUM OF LAW OF DEFENDANT HOME BOX OFFICE, INC. IN OPPOSITION TO MITRE'S MOTION FOR PARTIAL SUMMARY JUDGMENT THAT MITRE IS NOT A PUBLIC FIGURE

Slade R. Metcalf
Katherine M. Bolger
Collin J. Peng-Sue
HOGAN LOVELLS US LLP
875 Third Avenue
New York, NY  10022
Telephone: (212) 918-3000
Facsimile: (212) 918-3100

Of Counsel:
Stephanie S. Abrutyn
Home Box Office, Inc.
1100 Avenue of the Americas
New York, NY 10036

*Attorneys for Defendant Home Box Office, Inc.*

**Filed Under Seal**

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ............................................................................................1

BACKGROUND ...............................................................................................................2

ARGUMENT ...................................................................................................................3

MITRE IS A PUBLIC FIGURE ...........................................................................................3

    A.    Mitre Pled Facts Sufficient to Establish Its Public Figure Status ...........................3

    B.    Mitre Is A Public Figure .........................................................................................4

    C.    Mitre Is A Public Figure Under The Standard Articulated by the New York Court of Appeals in *James v. Gannett Co.* .......................................................5

    D.    Mitre Is A Limited Purpose Public Figure Under *Gertz* ...........................................10

    E.    Mitre Is A General Purpose Public Figure Under *Gertz* ...........................................17

CONCLUSION ................................................................................................................21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Arias-Zeballos v. Tan,*
No. 06 Civ. 1268(GEL), 2008 WL 833225 (S.D.N.Y. Mar. 28, 2008) ................................... 12

*Bruno & Stillman, Inc. v. Globe Newspaper Co.,*
633 F.2d 583 (1st Cir. 1980) ..................................................................................... 19

*Buttry v. General Signal Corp.,*
68 F.3d 1488 (2d Cir. 1995) ...................................................................................... 14

*Celle v. Filipino Reporter Enters.,*
209 F.3d 163 (2d Cir. 2000) ......................................................................... 4, 5, 18, 19

*Chapman v. Journal Concepts, Inc.,*
528 F. Supp. 2d 1081 (D. Haw. 2007) ................................................................. 11, 18

*Church of Scientology Int'l v. Eli Lilly & Co.,*
778 F. Supp. 661 (S.D.N.Y. 1991) .................................................................................. 4

*Contemporary Mission, Inc. v. New York Times Co.,*
842 F.2d 612 (2d Cir. 1988) ................................................................................. 10, 11

*DiBella v. Hopkins,*
403 F.3d 102 (2d Cir. 2005) ...................................................................................... 19

*Dixon v. Int'l Broth. of Police Officers,*
504 F.3d 73 (1st Cir. 2007) .......................................................................................... 5

*Gertz v. Robert Welch, Inc.,*
418 U.S. 323 (1974) ............................................................................................ *passim*

*Hoodho v. Holder,*
558 F.3d 184 (2d Cir. 2009) ........................................................................................ 4

*Hotchner v. Castillo-Puche,*
404 F. Supp. 1041 (S.D.N.Y. 1975) .............................................................................. 5

*Lerman v. Flynt Distrib. Co.,*
745 F.2d 123 (2d Cir. 1984) ................................................................................. 16, 17

*Lluberes v. Uncommon Prods., LLC,*
740 F. Supp. 2d 207 (D. Mass. 2010) ............................................................. 12, 13, 16

*Lundell Mfg. Co. v. Am. Broad. Cos.,*
98 F.3d 351 (8th Cir. 1996) .......................................................................................... 5

*McManus v. Doubleday & Co.*,
  513 F. Supp 1383 (S.D.N.Y. 1981) ............................................................12

*Meeropol v. Nizer*,
  560 F.2d 1061 (2d Cir. 1977)....................................................................18

*Milsap v. Journal/Sentinel, Inc.*,
  100 F.3d 1265 (7th Cir. 1996) ..................................................................11

*Nat'l Found. for Cancer Research, Inc. v. Council of Better Business Bureaus Inc.*,
  705 F.2d 98 (4th Cir. 1983) ......................................................................16

*OAO Alfa Bank. v. Center for Public Integrity*,
  387 F. Supp. 2d 20 (D.D.C. 2005)............................................................12

*Partington v. Bugliosi*,
  56 F.3d 1147 (9th Cir. 1995) ....................................................................11

*Quantum Elec. Corp. v. Consumers Union of United States, Inc.*,
  881 F. Supp. 753 (D.R.I. 1995)................................................................16

*Reliance Ins. Co. v. Barron's*,
  442 F. Supp. 1341 (S.D.N.Y. 1977)..........................................................18

*Schwartz v. Am. Coll. of Emergency Physicians*,
  215 F.3d 1140 (10th Cir. 2000) ..................................................................5

*Snead v. Redland Aggregates Ltd.*,
  998 F.2d 1325 (5th Cir. 1993) .............................................................19, 20

*Street v. Nat'l Broad. Co.*,
  645 F.2d 1227 (6th Cir.),
  *cert. granted*, 454 U.S. 815,
  *cert. dismissed*, 454 U.S. 1095 (1981) ....................................................11

*Trotter v. Jack Anderson Enters., Inc.*,
  818 F.2d 431 (5th Cir. 1987) ...........................................................5, 12, 13

*U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia*,
  898 F.2d 914 (3d Cir. 1990)......................................................................19

*Waldbaum v. Fairchild Publ'ns, Inc.*,
  627 F.2d 1287 (D.C. Cir. 1980).........................................................12, 17

*Yiamouyiannis v. Consumers Union of the United States, Inc.*,
  619 F.2d 932 (2d Cir. 1980)...............................................................4, 16

## STATE CASES

*Biskupic v. Cicero*,
   313 Wis.2d 225, 756 N.W.2d 649 (Wisc. App. 2008)..........................................................18

*Curry v. Roman*,
   217 A.D.2d 314, 635 N.Y.S.2d 391 (4th Dep't 1995)..........................................................10

*Greenberg v. CBS Inc.*,
   69 A.D.2d 693, 419 N.Y.S.2d 988 (2d Dep't 1979)............................................................11

*Howard v. Buffalo Evening News, Inc.*,
   89 A.D.2d 793, 453 N.Y.S.2d 516 (4th Dep't 1982)........................................................8, 10

*James v. Gannett Co.*,
   40 N.Y.2d 415, 386 N.Y.S.2d 871 (1976) ..............................................................5, 6, 8, 10

*Kipper v. NYP Holdings, Inc.*,
   12 N.Y.3d 348, 884 N.Y.S.2d 194 (2009) ...........................................................................10

*Lee v. Rochester*,
   174 Misc. 2d 763, 663 N.Y.S. 2d 738 (Sup. Ct. Monroe Cnty. 1997) ..................................11

*Maule v. NYM Corp.*,
   54 N.Y.2d 880, 444 N.Y.S.2d 909 (1981) ..........................................................................6, 7

*Maule v. NYM Corp.*,
   76 A.D.2d 58, 429 N.Y.S.2d 891 (1st Dep't 1980),
   *rev'd*, 54 N.Y.2d 880, 444 N.Y.S.2d 909 (1981)...................................................................6

*Steere v. Cupp*,
   226 Kan. 566, 602 P.2d 1267 (1979) ..................................................................................18

*Wilsey v. Saratoga Harness Racing, Inc.*,
   140 A.D.2d 857, 528 N.Y.S.2d 688 (3d Dep't 1988)...........................................................10

## OTHER AUTHORITIES

Robert D. Sack, Sack on Defamation, Libel, Slander and Related Problems, (4th ed.
   2010) ...............................................................................................................................15, 16

**Filed Under Seal**

Defendant Home Box Office, Inc. ("HBO") submits this memorandum of law in opposition to the Motion of Mitre Sports International Limited ("Mitre") for Partial Summary Judgment that Mitre is Not a Public Figure (the "Motion").[1]

## PRELIMINARY STATEMENT

Mitre—the "leading maker of soccer shoes and balls in the U.S. and the U.K."—brought this libel claim based on a segment contained in the September 16, 2008, episode of the HBO news magazine program *Real Sports with Bryant Gumbel*, which reported that children in India are involved in the manufacture of soccer balls, including Mitre branded soccer balls (the "Segment").  *See generally* Memorandum of Law of Defendant Home Box Office, Inc. In Support of Its Motion for Summary Judgment, submitted to the Court on April 15, 2011 with HBO's Motion for Summary Judgment.

Beginning as early as 1996 and up to and including in the Complaint in this case, Mitre has repeatedly and publicly touted its "leading role in the international effort to eliminate child labor."  More generally, it has continually taken steps, directly and through licensees in the United States, to promote the brand and awareness of the brand among the public, including by paying over $1 million to become one of the first sponsors of Major League Soccer ("MLS"), the United States professional soccer league.

Despite these efforts, Mitre now asks this Court to declare it to be a private figure.  In its brief, however, Mitre completely ignores the allegations of its own Complaint, the binding case-

---

[1] The material facts in opposition to Mitre's Motion are set forth in HBO's Response to Mitre's Rule 56.1 Statement and the declaration of Katherine M. Bolger ("Bolger Dec.") dated May 27, 2011 and the exhibits annexed thereto, submitted herewith; HBO's Rule 56.1 Statement, and the declarations of Gul-e-Zehra Mamdani ("Mamdani Dec."), Slade R. Metcalf ("Metcalf Dec."), and Joseph Perskie ("Perskie Dec."), submitted on April 15, 2011 with HBO's Motion for Summary Judgment; and the declaration of Jean Kim ("Kim Dec.") submitted with Mitre's Motion, and the exhibits annexed thereto.

**Filed Under Seal**

law and *all* of the undisputed facts revealed in discovery since October 2009.  Mitre is not, as its brief suggests, a small, private company based in the United Kingdom which does no more than offer products for sale in the United States.  Rather, the undisputed evidence shows that Mitre is one of the world's leading brands in the world's most popular sport, with offices and licensees throughout the world including in the United States, and that it affirmatively markets and promotes its brand to consumers in a variety of ways.  Under well-established New York and federal law, Mitre is a public figure and its Motion therefore must be denied.

## BACKGROUND

On August 28, 2009, with the Court's permission, HBO filed a motion for partial summary judgment seeking a ruling that Mitre is a public figure as a matter of law.  Dkt. No. 45. On October 7, 2009, Mitre filed a motion for partial summary judgment asking the court to rule that Mitre is *not* a public figure.  Dkt. No. 54.  On March 15, 2010, both motions were denied "without prejudice to renew after the close of discovery."  Metcalf Dec. Ex. 8.

Since filing that initial motion in August 2009, and in particular since this Court's decision in March 2010, HBO has gathered extensive material that establishes beyond cavil that Mitre, the self-described "number one manufacturer of [soccer balls] in the world," is a public figure.  *See* HBO's Rule 56.1 Statement at ¶¶ 118-281, which was submitted to the Court on April 15, 2011 with HBO's Motion for Summary Judgment.  In Mitre's Brief in Support of Partial Summary Judgment that Mitre is Not a Public Figure (Mitre's "Memo"), however, Mitre ignores nearly all of the undisputed evidence collected subsequent to its October 2009 motion, relying instead almost exclusively on the declarations submitted with the 2009 motions and a nearly identical memorandum of law.[2]

---

[2] The only additional evidence that Mitre submitted with the instant motion is a few pages from the transcripts of 5 depositions taken in this matter.

**Filed Under Seal**

HBO's Memorandum of Law and Rule 56.1 Statement, on the other hand, set forth in detail the additional and undisputed facts gathered subsequent to the earlier motions, which conclusively establish that Mitre is a public figure.

<u>**ARGUMENT**</u>

<u>**MITRE IS A PUBLIC FIGURE**</u>

A.      <u>**Mitre Pled Facts Sufficient to Establish Its Public Figure Status**</u>

As an initial matter, Mitre's efforts in the Memo to cast itself as a small English company with limited media exposure directly contradict the allegations in the Complaint.

In the Complaint, Mitre describes itself as playing "a leading role in the international effort to eliminate child labor in the manufacture of soccer balls" and notes its "leadership in preventing child labor." Metcalf Dec. Ex. 1 at Introduction, ¶ 27. Similarly, Mitre claims in a letter from Mitre's counsel to HBO, attached as Exhibit E to the Complaint, that, "Mitre and the World Federation of the Sporting Goods Industry convened the first international conference on this effort on November 3, 1995, which resulted in the elimination of child labor in the soccer ball industry in Sialkot, Pakistan." *Id.*, Ex. E. Mitre also alleges in its Complaint that HBO named Mitre in the Segment precisely because of Mitre's "size . . . *worldwide name recognition*, [and] former association with premier leagues." Metcalf Dec. Ex. 1 ¶ 27 (emphasis added). In addition, at a court conference in this action, counsel for Mitre claimed that the Segment was damaging to Mitre specifically because Mitre "led this international conference in 1997" and "came up with" the Atlanta Agreement. Metcalf Dec. Ex. 3 at 69-70. Mitre's counsel emphasized Mitre's expansive role as a leader in the marketplace when he claimed at that conference: "Mitre became an international hero by pulling together manufacturers from all around the world in an attempt to eliminate child labor." *Id.* at 70.

These allegations—which are nowhere mentioned in the Memo—alone are sufficient to

establish as a matter of law that Mitre is a public figure.   *See Yiamouyiannis v. Consumers Union of the United States, Inc.*, 619 F.2d 932, 938 (2d Cir. 1980) (plaintiff is a limited purpose public figure based on allegations in complaint and affidavits); *Celle v. Filipino Reporter Enters.,* 209 F.3d 163, 177 (2d Cir. 2000) (plaintiff is a general purpose public figure based on allegation in complaint); *Church of Scientology Int'l v. Eli Lilly & Co.*, 778 F. Supp. 661, 666 n.3 (S.D.N.Y. 1991) (public figure based on allegations in complaint); *Hoodho v. Holder*, 558 F.3d 184, 186-87 (2d Cir. 2009) ("a litigant is bound by the representations of his attorney." ).  In fact, Mitre's description of itself in the Complaint is far more grandiose than the description that the Second Circuit found sufficient to establish the plaintiff's public figure status in *Celle*.  There, the Court held that, "Given Celle's own characterization of himself as a 'well known radio commentator' within the Metropolitan Filipino-American community, the district court correctly held that he is a public figure."  *Celle*, 209 F.3d at 177.  If a "well-known" radio personality in the New York Filipino Community is a public figure, then a company that alleges it has "worldwide name recognition" and played a "leading role in the effort to eliminate child labor in the manufacture of soccer balls" is undoubtedly a public figure.

In its Complaint, Mitre has pled facts sufficient to establish its public figure status and for this reason alone, its Motion must be denied.

**B.**   **Mitre Is A Public Figure**

Mitre's Motion also must be denied because Mitre relies on a flatly incorrect reading of the law of defamation and completely ignores the factual record.  Once the law is correctly applied to the undisputed facts, however, Mitre's fiction is replaced with the reality that Mitre is indeed a public figure.

Preliminarily, contrary to Mitre's claim that the question of its public figure status may go to a jury, it is an indisputable principle of libel law that "[w]hether a plaintiff is a public figure

is a question of law for the court." *Celle*, 209 F.3d at 176; *see also Hotchner v. Castillo-Puche*, 404 F. Supp. 1041, 1045 (S.D.N.Y. 1975) (public figure issue is "one for the Court, not the jury, to determine"); *Dixon v. Int'l Broth. of Police Officers*, 504 F.3d 73, 87-88 (1st Cir. 2007) ("Whether [plaintiff] is a public official or public figure is a question of law that we review de novo."); *Schwartz v. Am. Coll. of Emergency Physicians*, 215 F.3d 1140, 1145 (10th Cir. 2000) ("Whether or not a person is a public figure is a question of law for the court."); *Lundell Mfg. Co. v. Am. Broad. Cos.*, 98 F.3d 351, 362 (8th Cir. 1996) ("The determination of a plaintiff's status as a private or public figure is an issue of law."); *Trotter v. Jack Anderson Enters., Inc.*, 818 F.2d 431, 433 (5th Cir. 1987) ("Whether an individual is a public figure is a matter of law for the court to decide."). Thus, the issue can and should be resolved at the summary judgment stage.

**C.     Mitre Is A Public Figure Under The Standard Articulated by the New York Court of Appeals in *James v. Gannett Co.***

        Aside from the conclusive admissions in its own Complaint, Mitre's Motion must be denied for the additional reason that it is a public figure pursuant to the standard articulated by the New York State Court of Appeals in *James v. Gannett Co.*, 40 N.Y.2d 415, 386 N.Y.S.2d 871 (1976).

        In its discussion of the *James* standard, Mitre makes two significant misstatements of law that render its entire argument meaningless. First, Mitre makes the fundamental error of treating the *James* standard as if it were merely a subset of the standards described by the United States Supreme Court in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974). It is not. In *Gertz*, the Court outlined two classes of public figures, federal general purpose and limited purpose public figures. *Id.* Two years later, the New York Court of Appeals, cognizant of New York's more expansive protection for freedom of speech, extended the definition of public figures further,

**Filed Under Seal**

creating a *third category* of public figure where, "The essential element underlying the category of public figures is that the publicized person has taken an affirmative step to attract public attention." *James*, 40 N.Y.2d at 422, 386 N.Y.S.2d at 876 (holding that a belly dancer in a bar in Rochester is a public figure).

There is no doubt that the *James* test defines public figures more broadly than does *Gertz*. *See Maule v. NYM Corp.*, 76 A.D.2d 58, 61, 429 N.Y.S.2d 891, 893 (1st Dep't 1980) (Sandler, J. dissenting), *rev'd,* 54 N.Y.2d 880, 444 N.Y.S.2d 909 (1981) (affirming the *James* test).   As Justice Sandler observed before the *James* test was affirmed by the Court of Appeals, a plaintiff can "fail" the *Gertz* test and still be a public figure under New York Law.  *Maule*, 76 A.D.2d at 61, 429 N.Y.S.2d at 895 ("I doubt that the plaintiff was a public figure within the definition set forth in *Gertz* with regard to the article at issue here . . . However, the concept was given what seems to me a somewhat more expansive interpretation by the Court of Appeals in *James v. Gannett Co.*").  This category of public figure "is of necessity quite broad." *James*, 40 N.Y.2d at 422, 387 N.Y.S.2d at 876.  Mitre's attempt to characterize the *James* test as a subset of *Gertz* is inconsistent with New York law and therefore its analysis based on that mischaracterization cannot form the basis for granting its Motion.

Next, Mitre misstates the *James* test itself, claiming that the "affirmative steps" must be intended to influence the outcome of a public controversy.  Memo at 2, 13-14.  In fact, the affirmative steps that the *James* and *Maule* courts have called the "essential element" and "critical consideration" of the public figure determination do not have to be related to a "debate" or a "public controversy" at all—they can be as straightforward as a belly dancer giving an interview to a newspaper (*James*, 40 N.Y.2d at 423, 386 N.Y.S.2d at 876) or a sportswriter's "books, articles and personal appearances" (*Maule*, 54 N.Y.2d at 882, 444 N.Y.S.2d at 911).

The proper test for whether a libel plaintiff is a public figure under New York's *James* standard is "whether the evidence demonstrates that plaintiff had taken affirmative steps to attract personal attention or had strived to achieve a measure of public acclaim." *Maule,* 54 N.Y.2d at 882, 444 N.Y.S.2d at 910 (citing *James*).   There can be no question that the undisputed record in this case—largely ignored by Mitre in its Memo—shows that Mitre has taken affirmative steps to attract attention for its brand.

First, Mitre has voluntarily chosen to sponsor several of the most prominent soccer leagues throughout the world.   Mitre paid over $1 million dollars to be one of two initial sponsors of Major League Soccer ("MLS") in the United States.  Metcalf Dec. Ex. 65 ¶ 11 and its Ex. 1 at MLS 1346.[3]   As a result of this sponsorship, the official Mitre-branded MLS ball was used at every one of the over 100 MLS games played each year from 1996 through 1999, and seen by every fan in the stadium and watching the national telecast.  Metcalf Dec. Ex. 65 ¶¶ 10-13, and its Exs. 1 at MLS1346, 12 at MLS0144 and 83; Ex. 74; Ex. 76 at its Exs. 1-28.  Mitre's logo and goods (including the ubiquitous MLS Mitre Official Ball) also were visible to millions of MLS fans on sideline on-field advertising boards, on on-site kiosks and banners, and in page advertising in MLS Official Programs and Media Guides for each regular season, playoff, and all-star game, as well as on trading cards and other memorabilia.  Metcalf Dec. Ex. 65 at its Exs. 1, 11-78, 80, 82; Exs. 66-68, Ex. 69 ¶ 10 and its Exs. 1 and 2.  Mitre's sponsorship of MLS was reported in major newspapers across the United States (*id.* Exs. 88-2 – 88-4, 88-57 – 88-63), and promoted through advertisements that read "It's The Quality Of The Ball That Makes A Great

---

[3] While the fact of Mitre's sponsorship of the MLS was mentioned in HBO's 2009 motion, HBO subsequently obtained additional, admissible evidence relating to the sponsorship.  *See* Metcalf Dec. Exs. 65-69, 74, 76.   That evidence, including videotapes of MLS games, copies of advertisements and samples of MLS merchandise, all of which have been authenticated, demonstrates the tremendous public exposure sought and achieved by Mitre in the United States as a result of its deal with MLS.

League" (*id.* Ex. 65 at Ex. 23 at HBOMLS 005458; *see also* Ex. 65 at Ex. 22 at HBOMLS 005261).

Mitre paid additional money to sponsor the "Mitre Power Shot," a televised on-air promotion displaying the Mitre logo and showing the speed of the Mitre soccer ball for key shots during the games. Metcalf Dec. Ex. 65 at its Exs. 2 and 3; Metcalf Dec. Ex. 68. Dec. Ex. 76 at its Exs. 19-22; Metcalf Dec. Ex. 65 at its Ex. 91. The distinctive MLS Mitre Official Balls were a feature in fan collectors' items such as on MLS Upper Deck trading cards and in MLS team promotional shots. Metcalf Dec. Ex. 65 ¶ 35 and its Ex. 81 and its Ex. 20 at HBOMLS005388 and HBOMLS005402; Metcalf Dec. Ex. 69 at its Exs. 1 and 2. Mitre also sponsors other soccer leagues and individuals. From 1992-2000, Mitre was the official ball of the Premier League, which is reportedly the world's most popular league. Metcalf Dec. Exs. 36 at 173-74; 88-35; 93. To this day, Mitre sponsors the Football League, the original professional soccer league in the world, and it is the official ball supplier to all 72 teams in the Football League, to the Carling Cup, and to the Scottish Premier League. Metcalf Dec. Ex. 58 at 119-23; Metcalf Dec. Ex. 62 at 10, 16-18 and its Exs. 1, 2. *see also* Metcalf Dec. Ex. 63 at 12; Ex. 36 at 35-38, 161. This undisputed evidence is, by itself, sufficient to establish that Mitre is a public figure under *James.*[4]

It is not, however, the only evidence in the record. In the Memo, Mitre also ignores the undisputed evidence of its more recent efforts to market the Mitre brand. For example, in 2006,

---

[4] To the extent Mitre seeks to dismiss these facts as mere marketing efforts that are "legally irrelevant" (Memo at 12), Mitre's argument is misplaced. First, *all* of the cases cited by Mitre expressly provide that marketing and sales efforts *can* establish a party's public figure status. Memo at 12. In addition, a sustained marketing and sponsorship program of this kind—that costs more than $1 million and provides for television advertisements and merchandising—is not "merely advertising." These kinds of efforts are exactly those that a court looks to in determining the public figure status of a corporation under *James.* *See Howard v. Buffalo Evening News, inc.*, 89 A.D.2d 793, 793, 453 N.Y.S.2d 516, 517 (4th Dep't 1982) ("[t]he plaintiff corporation, through its owner, Howard, sought favorable publicity for its newly acquired radio stations . . . ").

**Filed Under Seal**

Mitre, through its licensee, engaged in an elaborate marketing campaign in the United States involving a large, double-decker bus wrapped in billboard-sized Mitre logos seen by hundreds of thousands of attendees at three music festivals and featured in print media and on television. Metcalf Dec. Ex. 60 at its Exs. 4, 6, 7 and 9.  Videos of the bus were posted on YouTube by the advertising agency that planned the campaign.  Bolger Dec. Ex. A at 134-37, 152-53.

Mitre has an internal marketing department and, for many years, hired a press relations company to increase the visibility of the brand.  Metcalf Dec. Exs. 36 at 21-27; 63 at 1-9. Through the marketing department, PR company and Mitre's licensees, Mitre has been able to advertise or cultivate mention of the Mitre brand in numerous print publications available worldwide and in the United States.  Metcalf Dec. Ex. 36 at 29-30; Ex. 63 at 14-20 and its Exs. 1-4, 6; Ex. 71 at its Exs. 1, 3 and 6; Exs. 108-112.  Mitre maintains a consistent presence on-line, through its routine posting of videos on "YouTube" and issuing of "tweets" and status updates on social networking sites about its new products and new developments in the soccer community.  Metcalf Dec. Ex. 107; Ex. 36 at 148-49, 168-69 and its Ex. 23; Ex. 63 at 22-25, 32-33 and its Ex. 5; Ex. 61 at 269.

Mitre's affirmative steps to attract public attention have, by its own admission, succeeded.  In the Memo, Mitre avoids mention of its own statements regarding its prominence in the international soccer community just as it avoids mention of the similar statements in its own pleadings.  *See* Metcalf Dec. Ex. 1 at Introduction, ¶ 27.  The undisputed facts, however, include that Mitre has described itself in advertisements as  "America's Number 1 soccer shoe." Metcalf Dec. Ex. 107; *available at* http://www.youtube.com/watch?v=LbmRN7OvPac.   In an interview, Mitre's marketing manager proclaimed that Mitre has "become synonymous with football [soccer] and [is] the number one manufacturer of footballs [soccer balls] in the world .

. . ." Metcalf Dec. Ex. 36 at 167-68 and its Ex. 24. Mitre also has gone to great lengths to promote its efforts to eliminate child labor to its customers, to the trade and even to the United States government. *See infra* Part D; Metcalf Dec. Ex 34 at its Exs. 17 and 18; Ex. 72 ¶ 3(e)-(f) and at its Exs. E, F; Ex. 101.

Mitre has taken many steps to ensure that it is featured on television, on the Internet, and in print media. Its efforts have succeed and it has achieved a measure of public acclaim, which makes it a public figure under the standard set forth in *James*. *See Kipper v. NYP Holdings, Inc.*, 12 N.Y.3d 348, 353 n.3, 884 N.Y.S.2d 194, 196 n.3 (2009) (doctor who had a medical practice that was written about in the media and who appeared as a doctor in movies and as a medical expert on television is "unquestionably a public figure"); *Wilsey v. Saratoga Harness Racing, Inc.*, 140 A.D.2d 857, 858, 528 N.Y.S.2d 688, 690 (3d Dep't 1988) (licensed harness track driver is a public figure due to his decision to cultivate press coverage); *Curry v. Roman*, 217 A.D.2d 314, 635 N.Y.S.2d 391 (4th Dep't 1995) (auctioneer who made television appearances on three local stations and gave interviews to print media is a public figure); *Howard*, 89 A.D.2d at 793, 453 N.Y.S.2d at 517. For this reason, Mitre's Motion must be denied.

**D.    Mitre Is A Limited Purpose Public Figure Under *Gertz***

Mitre's Motion must be denied for the separate and independent reason that it is a limited purpose public figure under *Gertz*. As with the *James* test, Mitre's discussion of *Gertz* depends on a flatly incorrect statement of the law. In particular, Mitre claims that "the passage of time extinguishes [limited purpose] public figure status." Memo at 17. Mitre's assertion, however, directly contradicts binding Second Circuit precedent. *See Contemporary Mission, Inc. v. New York Times Co.*, 842 F.2d 612, 619-20 (2d Cir. 1988) (plaintiffs' public figure status "has not dissolved with the passage of time" even though, in the intervening decade, the plaintiffs had not sought *any* publicity "with respect to this or any other matter"). The Second Circuit is not an

outlier on this issue. "[I]t appears that every court of appeals that has specifically decided this question has concluded that the passage of time does not alter an individual's status as a limited purpose public figure." *Partington v. Bugliosi*, 56 F.3d 1147, 1152 n.8 (9th Cir. 1995).[5] *See also Milsap v. Journal/Sentinel, Inc.*, 100 F.3d 1265, 1269-70 (7th Cir. 1996) (plaintiff is a public figure even though "his involvement in public controversy ended about twenty-five years prior to the column at issue"); *Street v. Nat'l Broad. Co.*, 645 F.2d 1227, 1235-36 (6th Cir.), *cert. granted*, 454 U.S. 815, *cert. dismissed*, 454 U.S. 1095 (1981) ("The mere passage of time does not automatically diminish the significance of events or the public's need for information . . . . A contrary rule would tend to restrain efforts to shed new light on historical events and reconsideration of past errors"); *Chapman v. Journal Concepts, Inc.*, 528 F. Supp. 2d 1081, 1094-95 (D. Haw. 2007) ("This majority view [that the passage of time does not affect plaintiff's public figure status] appears to be analytically sound.") (internal marks omitted).[6] Thus, Mitre's public figure status cannot have disappeared by virtue of the passage of time.[7]

---

[5] Mitre's incorrect statement of the law also is not supported by the cases it cites. *Lee v. Rochester*, 174 Misc. 2d 763, 773, 663 N.Y.S. 2d 738, 746 (Sup. Ct. Monroe Cnty. 1997) does not state that public figure status is "extinguished" over time. It simply says that there is no *per se* rule that public figure status is indefinite, while admitting that "cases pretty much uniformly have held, in the circumstances confronting the court in those cases, that the plaintiff in question did not lose his or her public figure status over time." *Id.* at 773, 663 N.Y.S.2d at 746. Similarly, *Greenberg v. CBS Inc.*, 69 A.D.2d 693, 703-04, 419 N.Y.S.2d 988, 993-94 (2d Dep't 1979)—decided in 1979, well before *Contemporary Mission* and the other federal Court of Appeals cases—contains no statement that a plaintiff who at one time was a public figure was no longer one.

[6] Similarly, Mitre's argument that its statements to the press before 1997 are irrelevant because Judge Pitman ruled that time period is "too temporarily remote" for purposes of discovery selectively omits the fact that Judge Pitman specifically contemplated that HBO would cite publications from before 1997, which he assured HBO would be "self-authenticating." Bolger Dec. Ex. B at 51-53.

[7] Mitre's assertion that the relevant community for the purpose of establishing Mitre's status as a limited purpose public figure is the jury pool in the Southern District of New York (*see* Memo at 2, 9) also contradicts established case law. A limited purpose public figure is defined not by the

Next, Mitre makes a logical leap not supported by any precedent that a plaintiff can only be considered a limited purpose public figure if it publicizes its voluntary injection into a public controversy. Memo at 15-16. In fact, no such requirement exists. The "publication of one's involvement is not necessary for a court to find that a plaintiff thrust himself into the resolution of an issue." *Lluberes v. Uncommon Prods., LLC,* 740 F. Supp. 2d 207, 219 (D. Mass. 2010) (citing *Trotter*, 818 F.2d at 435-36).

Similarly, Mitre is incorrect that its participation must be voluntary. As the law has developed, plaintiff need not have taken steps to "voluntarily" inject itself into the public controversy. It is enough that the public controversy exists and that plaintiff's involvement is more than tangential. *See Gertz*, 418 U.S. at 351 ("an individual [who] voluntarily injects himself *or is drawn* into a particular public controversy . . . thereby becomes a public figure for a limited range of issues") (emphasis added); *Trotter* 818 F.2d at 433.

Mitre's misstatement of the law aside, under any formulation, Mitre is a public figure because the undisputed testimony, much of it from Mitre's own representatives, establishes that Mitre is a limited purpose public figure in relation to its involvement in the effort to end child labor in the manufacture of soccer balls. To avoid the obvious conclusion that it is a public figure, Mitre simply ignores the facts related to its voluntary participation in the soccer ball

_____

geographic location of the jury, but by the scope of the relevant controversy. *See, e.g., Lluberes v. Uncommon Prods., LLC,* 740 F. Supp. 2d 207, 217-18 (D. Mass. 2010) (rejecting plaintiffs' argument that "because the controversy exists in the Dominican Republic—not in the United States, where the film was released—[plaintiffs] cannot be public figures for purposes of the defamation"); *OAO Alfa Bank. v. Center for Public Integrity*, 387 F. Supp. 2d 20, 42-43 (D.D.C. 2005) (involving two Russian businessmen, who lived and worked in Russia); *Waldbaum v. Fairchild Publ'ns, Inc.*, 627 F.2d 1287, 1297 (D.C. Cir. 1980); *Arias-Zeballos v. Tan*, No. 06 Civ. 1268(GEL), 2008 WL 833225, at *13 (S.D.N.Y. Mar. 28, 2008) (Singapore citizen is a public figure "with respect to issues relating to women's rights"); *McManus v. Doubleday & Co.*, 513 F. Supp 1383, 1387 (S.D.N.Y. 1981) (plaintiff is a public figure based on recognition of his views in "England, Ireland and Irish circles in the United States" on the "public controversy over Northern Ireland").

stitching controversy by not addressing either the allegations in its Complaint or almost all discovery taken in this action since October 2009.

First, at the time the Segment premiered, there had been an ongoing international controversy over the use of child labor in the soccer ball industry. In this respect, this case is very much like *Trotter*. *See also Lluberes*, 740 F. Supp. 2d at 216 (controversy over labor conditions at plantations). Here, the controversy surrounding child labor in the soccer ball industry captured the attention of a broad audience including the media, human rights organizations, the United States government and the United Nations. *See, e.g.*, Metcalf Dec. Exs. 64 at its Ex. 1, Ex. 77 and at its Ex. 1, Exs. 88-8 – 88-26, 100-102.

Next, far from having a trivial role in this existing public controversy, by its own admission, in the Complaint and in statements by its counsel to this Court, Mitre assumed a position of prominence. Metcalf Dec. Ex. 1 at Introduction, ¶ 27; Ex. 3 at 69-70. In addition, The corporate responsibility director for Mitre's parent company testified that Mitre was a "*major player in establishing the Atlanta Agreement*" and was "*instrumental* in bringing" the major parties to the Atlanta Agreement "to the table." Metcalf Dec. Ex. 34 at 93-94, 40-41 (emphases added). Mitre subsequently designated this testimony as its 30(b)(6) testimony. *Id.* Ex. 82 at 20, 3-4. Similarly, the Development Director of Mitre testified that Mitre "*used our influence*, wherever possible, to try and, I suppose encourage that reaching of [the Atlanta] [A]greement." Metcalf Dec. Ex. 35 at 17-18, 172-74 (emphasis added). *See also* Metcalf Dec. Ex. 34 at its Ex. 5 (Mitre press release noting that "[s]ince its acquisition by the Pentland Group in 1995 [Mitre] has worked with the World Federation of the Sporting Goods Industry, whose President is the Chairman of Pentland. Pentland sponsored an international conference on child labour in the football industry in November 1996"). In short, Mitre's representatives have

testified and Mitre's documents show that it voluntarily thrust itself into—and in fact took the lead publicly in—the controversy surrounding the use of child labor in the manufacture of soccer balls. In so doing, Mitre cemented its status as a public figure for purposes of a libel claim.[8]

In the Memo, instead of addressing these facts, Mitre relies on declarations submitted before discovery (and contradicting the Complaint) to claim that it was simply a passive spectator to the creation of the Atlanta Agreement and merely "privately" supported efforts to combat child labor. Memo at 15-16. It is well established that Mitre cannot create a disputed issue of fact by submitting declarations that contradict its own Complaint, testimony and documents. *See, e.g., Buttry v. General Signal Corp.*, 68 F.3d 1488, 1493 (2d Cir. 1995). Setting aside the self-serving declarations, the evidence is entirely consistent and uncontradicted. In fact, Mitre's companion motion for summary judgment that HBO "defamed" Mitre asserts that Mitre is known to be "'one of the leading' organizations in the field of corporate responsibility.'" Mitre's Brief in Support of Partial Summary Judgment that HBO Defamed Mitre at 9. Video footage of the announcement of the Atlanta Agreement shows Stephen Rubin, the president of Mitre's parent corporation (and who is referred to by Mitre as "our chairman"), being introduced as a representative of Mitre, in a room with a large sign where Mitre's name was displayed with other manufacturers who had pledged to support the agreement. Metcalf Dec. Ex. 57 at 73-76, 78-83 and its Ex. 6; Ex. 10; Ex. 11 at 10-11; Ex. 36 at its Ex. 4. Rubin also

---

[8] Mitre also attempts to sidestep its public figure status by claiming that the controversy it injected itself into was over the use of child labor in the soccer ball industry in Pakistan. Mitre's efforts to narrow the issue to suit its litigation strategy should be rejected. The undisputed evidence links child labor in India and Pakistan, including in a Mitre press release. Metcalf Dec. Ex. 34 at its Ex. 5. Further, as Mitre notes, all that is necessary is for the controversy to *relate* to the subject of the litigation. Memo at 18 (emphasis added). Thus, even if the controversy were limited only to the use of child labor in soccer balls manufactured in Pakistan, the Segment, which discusses the use of child in the soccer ball industry in India *and* in Pakistan, is related to the controversy.

testified that he was at the event, that he was carrying a Mitre-branded ball at the event, and that he was "very proud of the Mitre ball, as a matter of fact." Metcalf Dec. Ex. 57 at 78-83 and its Ex. 6.

Mitre also disregards its own documents that show Mitre holding itself out to the public as a leader in the fight against child labor. *See* Metcalf Dec. Ex. 36 at its Ex. 4; Metcalf Dec. Ex. 34 at 91-94 and its Ex. 6. Mitre similarly ignores its public pledge, sponsored by the SGMA, not to use child labor in the manufacture of soccer balls and that postcards and advertisements were sent throughout the United States by the SGMA on Mitre's behalf celebrating that pledge. Metcalf Dec. Ex. 72 ¶ 3(e)-(f) and its Exs. E and F. Finally, Mitre boasts extensively on its website and through press releases and magazines (as recently as 2008) and to the U.S. government and United Nations about its involvement in the fight to end child labor. *See, e.g.,* Metcalf Dec. Ex 34 at its Exs. 5, 17, 18, 26 and 29; Ex. 36 at 76-86 and its Exs. 12, 13; Ex. 57 at 83-83 and its Ex. 6; Ex. 72 ¶ 3(e)-(f) at E, F; Ex. 101 at 115 n. 118-23, 212; Ex. 104, Ex. 105.[9]

Mitre's actions since at least 1995—by publicly and proudly stepping forward in an attempt to eradicate child labor—meet the very definition of a limited purpose public figure. As the case law makes plain, individuals and corporations who become involved in a certain cause are as a matter of law limited purpose public figures in relation to that issue. *See* Robert D. Sack, Sack on Defamation, Libel, Slander and Related Problems § 5:3.3 (4th ed. 2010) ("An otherwise

---

[9] Mitre's selective rendition of the facts and its efforts to downplay its public statements about its involvement in the child labor dispute are nowhere more obvious than in its discussion of its web site, which it claims contains only one sentence "child labor is not used." Memo at 6. While it is true that that sentence appears on Mitre's website, it is also true that it appears on a section of Mitre's website called "Ethical Sourcing" in a flashy pdf called "Ethical Sourcing The Mitre Way." A visitor to the site can also download a brochure called "Mitre Making A Difference" that touts Mitre's involvement with efforts to end child labor in Pakistan and India. *See* "Mitre Making a Difference," *available at* http://www.mitre.com/static/html/documents/Mitre%20 Making%20a%20Difference.pdf.

unknown advocate of a political cause . . . becomes a public figure with respect to the controversy with which he or she is connected") (citing cases); *id.* at § 5:3.5 (examples of limited purpose public figures). An otherwise unknown doctor, for example, is a public figure for purposes of his libel claim because he is an expert in the biological effects of fluoride and because he gave testimony on that subject before Congress. *Yiamouyiannis*, 619 F.2d at 932. *See also Quantum Elec. Corp. v. Consumers Union of United States, Inc.*, 881 F. Supp. 753, 765 (D.R.I. 1995) (plaintiff corporation is a public figure because it "actively participated in a public controversy about the safety and efficacy of ozone generating air purifiers"); *Nat'l Found. for Cancer Research, Inc. v. Council of Better Business Bureaus Inc.*, 705 F.2d 98, 101 (4th Cir. 1983) (foundation is a public figure because of the "claims and comments it made in many of [its] solicitations where it extolled its judicious use of donated funds in finding a cure for cancer, where it declared its objective to make '[itself] a household word,' and where it asserted the need 'to present [its] case to the jury of the American people'"); *Lluberes*, 740 F. Supp. 2d. at 218-20. Similarly, even if Mitre's claims in the Memo that it is a little known company were true (and they are not), Mitre is still a public figure because of its involvement in efforts to end child labor. Mitre's Motion must be denied. [10]

---

[10] Even if this Court were to apply the test as it was articulated by one Second Circuit panel in *Lerman v. Flynt Distrib. Co.*, 745 F.2d 123 (2d Cir. 1984), and which was relied on in Mitre's papers (although this formulation is not consistent with other Second Circuit decisions or always used by district courts), Mitre is still a limited purpose public figure. Here, Mitre (1) successfully invited attention to its views in an effort to influence the public debate and (2) voluntarily injected itself into the controversy surrounding the use of child labor in the soccer ball industry by, among other things, making statements to the media (Metcalf Dec. Ex. 88-8, 88-10, 88-11, 88-27, 88-32); appearing at press conferences regarding the Atlanta Agreement (Metcalf Dec. Ex. 57 at 78-83 and its Ex. 6); and making submissions to the United States government and the United Nations (Metcalf Dec. Exs. 101, 102). As a consequence of these actions, Mitre assumed a position of prominence in the controversy. In addition, Mitre maintains continued access to the media—Mitre has publicly responded to allegations about the use of child labor consistently from 1995 to the present. Metcalf Dec. Exs. 88-10, 88-11, 88-27, 88-32,

**Filed Under Seal**

**E.**     **Mitre Is A General Purpose Public Figure Under _Gertz_**

Finally, Mitre's Motion must be denied because Mitre also is a general purpose public figure under _Gertz_. To begin, Mitre also misstates the law as it must be applied to determine if Mitre is a general purpose public figure under _Gertz_. Mitre's primary argument in the Memo relies on a survey conducted in July 2009 to argue that Mitre is not a household name in a portion of the jury pool in the United States District Court for the Southern District of New York. Even if the survey were methodologically sound, which it is not,[11] the survey is wholly irrelevant because the relevant community for the purpose of establishing Mitre's status as a public figure is not the jury pool in the United States District Court for the Southern District of New York.[12] Not surprisingly, none of the cases Mitre cites for that proposition reach such a conclusion. It is true, for example, that in _Gertz_ the Supreme Court comments that Elmer Gertz was not known to members of the jury pool (418 U.S. at 352), but the Supreme Court did not hold that recognition by the "jury pool" is the relevant standard for determining a libel plaintiff's status. The other cases cited by Mitre similarly hold that the relevant community for determining public figure status is where the plaintiff "was defamed"—not the jury pool for the court in which the plaintiff chooses to sue. _See, e.g._, Memo at 9 (citing _Waldbaum v. Fairchild Publ'ns, Inc._, 627 F.2d 1287, 1295 n.22 (D.C. Cir. 1980) ("the question is whether the individual had achieved the necessary degree of notoriety where he was defamed")).

Contrary to Mitre's argument, the law is clear that the focus of the public figure analysis

---

Ex. 34 at 306-08 and its Ex. 29. Thus, under the _Lerman_ formulation, Mitre is a limited purpose public figure. _Lerman_, 745 F.2d at 136-37.

[11] _See_ HBO's Motion to Strike the Expert Report of Scott Elder, submitted April 22, 2011.

[12] Mitre's argument that this Court should give no weight to its many comments to British newspapers about child labor in assessing its public figure status has no basis in law and in this era of online newspaper archives and sources such as LEXIS/NEXIS, such an argument is specious.

is not on the jury pool for a lawsuit, but on the community to which the allegedly defamatory publication is intended to be distributed. *See, e.g., Celle*, 209 F.3d at 177. *See also Chapman*, 528 F. Supp. 2d at 1095 ("Plaintiff is a general public figure in the limited context of the surfing community."). In *Celle*, for example, the Second Circuit concluded that the plaintiff was a public figure in the community to which the broadcast was distributed—listeners, "mainly from the Filipino-American community of the New York City area and northern New Jersey" who required "a special radio" to listen to the plaintiff's station. *Celle*, 209 F.3d at 172. Thus, in this case, the relevant community for the public figure analysis is people who watch sports and sports programming such as *Real Sports*.[13]

Next, Mitre claims that to be a general public figure in the Second Circuit, Mitre must be a "household name." Once again, Mitre is simply wrong. *See Reliance Ins. Co. v. Barron's*, 442 F. Supp. 1341, 1349 (S.D.N.Y. 1977) (plaintiff "argues that it is not a 'household word' and that a majority of jurors would not recognize its name. The 'household word' standard is not determinative in any event"); *see also, e.g., Celle*, 209 F.3d at 176-77 (Lino Celle is a general purpose public figure); *Meeropol v. Nizer*, 560 F.2d 1061, 1063-64, 1066 (2d Cir. 1977) (Michael and Robert Meeropol are general purpose public figures); *Biskupic v. Cicero*, 313 Wis.2d 225, 232-40, 756 N.W.2d 649, 652-56 (Wisc. App. 2008) (Vincent Biskupic is a general purpose public figure); *Steere v. Cupp*, 226 Kan. 566, 602 P.2d 1267 (1979) (Myron S. Steere is a general purpose public figure). The Second Circuit has never applied the "household name" standard in any published opinion. Rather, a plaintiff is considered a general purpose public

---

[13] In the Memo, Mitre selectively quotes from the testimony of Joseph Perskie, the producer of the Segment. Memo at 10. As the undisputed testimony to which Mitre cites makes clear in context, Mr. Perskie stated that the audience for the Segment is average American sports fans. Kim Dec. Exhibit 9 at 106. For this reason, Mitre's reliance on the survey of the "nationwide" jury pool is also misplaced.

figure when it seeks and obtains the public's attention, as Mitre has done. *See, e.g.*, *DiBella v. Hopkins*, 403 F.3d 102, 110 (2d Cir. 2005) (plaintiff is a public figure based on the "success with which he sought and obtained the public's attention by organizing and promoting boxing bouts"); *Celle*, 209 F.3d at 176-77.[14]

Once the *Gertz* standard is correctly applied to the facts of this case, this Court must find Mitre to be a general purpose public figure, and Mitre's Motion must be denied.

Mitre, simply by virtue of being one of the largest sporting goods companies in the world and one of the leading soccer ball brands in the United States is a public figure.[15]   In addition,

---

[14] Mitre also is incorrect that its marketing efforts are "legally irrelevant" under *Gertz*. In fact, the two primary cases on which Mitre relies for this proposition reach the opposite conclusion. First, Mitre claims (without quotation) that the Third Circuit in *U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia* 898 F.2d 914 (3d Cir. 1990), "cautioned that courts should be leery of considering advertising as a basis for creating a limited purpose public figure." Memo at 13 (emphasis original).  In that case, the Third Circuit emphasized that the speech at issue was *commercial speech* and declined to apply a "traditional defamation analysis." *Blue Cross*, 898 F.2d at 937.  The court, however, went on to state that "[u]nder traditional defamation analysis, the parties' considerable access to the media and their voluntary entry into a controversy are strong indicia that they are limited purpose public figures." *Id.* at 938-39.  Mitre also miscites *Bruno & Stillman, Inc. v. Globe Newspaper Co.*, 633 F.2d 583 (1st Cir. 1980), claiming that it stands for the proposition that "a person in the business world advertising his wares does not necessarily become part of an existing public controversy." Memo at 12.  A review of the case reveals that the First Circuit was not actually adopting this phrase, but was instead quoting the California Supreme Court, and distinguishing it by holding "[t]o the extent that this language can be read as insulating all advertising and pro-business promotional efforts from public controversies, it is probably overbroad.  Even though the need for 'breathing space' to safeguard and ensure lively discussion of public issues originated in matters relating to governance, we can contemplate public controversies arising from commercial conduct." *Id.* at 590-91.

[15] To the extent Mitre is relying on *Snead v. Redland Aggregates Ltd.*, 998 F.2d 1325 (5th Cir. 1993), to claim that it is not a public figure, Mitre's reliance is misplaced.  First, unlike Snead, which was an alien corporation with no U.S. subsidiaries, Mitre has widespread contacts with the U.S., including a number of U.S-based licensees that sell and distribute Mitre-branded goods throughout the U.S.  Metcalf Dec. Ex 38 at 58, 68-70 and its Ex. 4; Black Dec. Ex. 42.  Second, Mitre is a prominent consumer goods maker and brand and while the *Snead* court found that a company like Snead that mined stone and built railroad cars was not a public figure, the court specifically emphasized that "[p]rominent consumer goods makers or merchants, as well as consumer service corporations, are much more likely to attain public figure status." *Snead*, 998 F.2d at 1329.  Finally, Mitre has received widespread attention in several publications with

**Filed Under Seal**

Mitre has at various times proclaimed that it has become "synonymous with [soccer] and [is] the number one manufacturer of [soccer balls] in the world" and that Mitre is "America's Number 1 Soccer Shoe."  Metcalf Dec. Ex. 36 at 168 and its Ex. 24; Ex. 107.  One of Mitre's licensees boasts on its website that Mitre's contract with MLS gave "the brand massive exposure in the fast expanding US market."  Metcalf Dec. Ex. 88-87.  Mitre also was described by *Forbes* as "the leading maker of soccer shoes and balls in the U.S." (*id.* Ex. 88-6), by *USA Today* as a "top supplier[] of soccer equipment" (*id.* Ex. 88-9), by *The Seattle Times* as one of "two giants in the soccer industry" (*id.* Ex. 88-37) and by the *Orlando Sentinel* as one of the "must-have brands" (*id.* Ex. 88-45).  Mitre is well known as the supplier of the first official ball for MLS.  Metcalf Dec. Ex. 65 ¶¶ 13, 19(a), 35-40 and its Ex. 6; Metcalf Dec. Exs. 66-68.  At the consumer level, Mitre-branded goods are available at major retail outlets across the United States, including at Walmart.  Metcalf Dec. Ex. 52 at 11-13, 141.  Mitre is, therefore, a general purpose public figure.

Rather than address this undisputed evidence, Mitre relies solely on the July 2009 survey to argue that it is not a household name.  The survey, however, is inadmissible.  *See* HBO's Motion to Strike the Expert Report of Scott Elder, submitted April 22, 2011.  Moreover, even if the survey were admissible, it by no means suggests that Mitre is unknown.  For example, according to the survey, four percent of respondents nationwide "were familiar with a consumer products company called Mitre."  Kim Dec. Ex. 1 at 10.  Extrapolating using the population of the United States according to the 2010 Census (*see* http://2010.census.gov/news/releases/operations/cb10-cn93.html), that means that well over 12 million people are familiar with Mitre.

---

nationwide readership, including the *New York Times*, the *L.A. Times*, and *USA Today* both for its products and its involvement in the fight against child labor, unlike the British corporations in *Snead* that had not received "significant past publicity." *Id.* at 1330.  As such, even under *Snead*, Mitre is a public figure.

**Filed Under Seal**

If anything, therefore, the survey indicates that Mitre is a general purpose public figure.

## <u>CONCLUSION</u>

Under any standard, Mitre is a public figure.  HBO, therefore, respectfully requests that this Court deny Mitre's motion for partial summary judgment.

Dated: May 27, 2011

Respectfully submitted,

By: _Slade R. Metcalf_

Slade R. Metcalf
Katherine M. Bolger
Collin Peng-Sue
HOGAN LOVELLS US LLP
875 Third Avenue
New York, NY 10022
Tel: (212) 918-3000

Of Counsel:
Stephanie S. Abrutyn
Home Box Office, Inc.
1100 Avenue of the Americas
New York, NY 10036

*Attorneys for Defendant Home Box Office, Inc.*

\\NY - 033845/000001 - 2321065 v10