**Filed Under Seal**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
MITRE SPORTS INTERNATIONAL LIMITED,              :

       Plaintiff,                                    :   Case No.: 08 CIV 9117(GBD)(HBP)

                               :

    -against-                                      :

                               :

HOME BOX OFFICE, INC.,                           :

       Defendant.                                   :

                               :
-------------------------------------------------------------------X

## MEMORANDUM OF LAW OF DEFENDANT HOME BOX OFFICE, INC. IN OPPOSITION TO MITRE'S MOTION FOR PARTIAL SUMMARY JUDGMENT THAT HBO DEFAMED MITRE

Slade R. Metcalf
Katherine M. Bolger
Collin J. Peng-Sue
HOGAN LOVELLS US LLP
875 Third Avenue
New York, NY  10022
Telephone: (212) 918-3000
Facsimile: (212) 918-3000

Of Counsel:
Stephanie S. Abrutyn
Home Box Office, Inc.
1100 Avenue of the Americas
New York, NY 10036

*Attorneys for Defendant Home Box Office, Inc.*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................1

BACKGROUND ....................................................................................2

ARGUMENT .........................................................................................2

    A.    Mitre Has Not Identified a Defamatory Statement of Fact Made in the Segment.................................................................3

    B.    Mitre Did Not Prove The Segment Is False.............................9

    C.    Mitre Did Not Prove That HBO Acted With The Requisite Degree of Fault.................................................................11

        1.    Mitre Did Not Prove By Clear and Convincing Evidence That HBO Acted With Constitutional Malice ............................11

        2.    Mitre Has Also Failed To Demonstrate That HBO Was Grossly Irresponsible ...............................................17

CONCLUSION.....................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Celle v. Filipino Reporter Enters.*,
    209 F.3d 163 (2d Cir. 2000)......................................................................................3

*Chaiken v. VV Pub. Corp.*,
    119 F.3d 1018 (2d Cir. 1997),
    *cert. denied*, 522 U.S. 1149 (1998).........................................................................17

*Chandok v. Klessig*,
    632 F.3d 803 (2d Cir. 2011)......................................................................................3

*Chapin v. Knight-Ridder, Inc.*,
    993 F.2d 1087 (4th Cir. 1993) ...............................................................................4, 5

*Church of Scientology Int'l v. Behar*,
    238 F.3d 168 (2d Cir. 2001).....................................................................................13

*Compuware Corp. v. Moody's Investors Servs., Inc.*,
    499 F.3d 520 (6th Cir 2007) .....................................................................................5

*Croton Watch Co., Inc. v. Nat'l Jeweler Magazine, Inc.*,
    No. 06 CV 662 (GBD), 2006 WL 2254818 (S.D.N.Y. Aug. 7, 2006) ......................9

*D.A.R.E. Am. v. Rolling Stone Magazine*,
    101 F. Supp. 2d 1270 (C.D. Ca. 2000),
    *aff'd*, 270 F.3d 793 (9th Cir. 2001).........................................................................15

*Dodds v. Am. Broad. Co.*,
    145 F.3d 1053 (9th Cir. 1998),
    *cert. denied*, 523 U.S. 1152 (1999)......................................................................4, 5

*El Meson Espanol v. NYM Corporation*,
    521 F.2d 737 (2d Cir. 1975).....................................................................................7

*Feldman v. Edwab*,
    No. 1:10-CV-0261 (LEK/RFT), 2011 WL 1298717 (N.D.N.Y. March 31, 2011)....7

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974)................................................................................................17

*Guccione v. Hustler Magazine, Inc.*,
    800 F.2d 298 (2d Cir. 1986).....................................................................................9

*Howard v. Antilla,*
        294 F.3d 244 (1st Cir. 2002) ............................................................................13, 14

*Levesque v. Doocy,*
        560 F.3d 82 (1st Cir. 2009) ...................................................................................16

*Machleder v. Diaz,*
        801 F.2d 46 (2d Cir. 1986),
        *cert. denied* 479 U.S. 1088 (1987) ..................................................................12, 13

*McFarlane v. Esquire Magazine,*
        74 F.3d 1296 (D.C. Cir. 1996) ..............................................................................15

*McNally v. Yarnall,*
        764 F. Supp. 838 (S.D.N.Y. 1991) .......................................................................15

*Miami Herald Publ'g Co. v. Tornillo,*
        418 U.S. 241 (1974) ..............................................................................................13

*Naantaanbuu v. Abernathy,*
        816 F. Supp. 218 (S.D.N.Y. 1993) .......................................................................18

*Nelson v. Globe Int'l, Inc.,*
        626 F. Supp. 969 (S.D.N.Y. 1986) .................................................................17, 18

*Newton v. Nat'l Broad. Co.,*
        930 F.2d 662 (9th Cir.),
        *cert. denied,* 502 U.S. 866 (1991) .........................................................................5

*Peter Scalamandre & Sons, Inc. v. Kaufman,*
        113 F.3d 556 (5th Cir. 1997) ...........................................................................14, 18

*Philadelphia Newspapers, Inc. v. Hepps,*
        475 U.S. 767 (1986) ............................................................................................9, 11

*Price v. Viking Penguin, Inc.,*
        881 F.2d 1426 (8th Cir. 1989),
        *cert. denied,* 494 U.S. 1013 (1990) ......................................................................15

*Seacord v. Cockburn,*
        747 F. Supp. 779 (D.C. Cir. 1990) ........................................................................15

*Seymour v. Lakeville Journal Co., LLC,*
        No. 04 CV 4532(GBD), 2004 WL 2848537 (S.D.N.Y. Dec. 9, 2004),
        *aff'd,* 150 Fed. Appx. 103 (2d Cir. 2005) ...............................................................7

*Vinas v. Chubb Corp.,*
        499 F. Supp. 2d 427 (S.D.N.Y. 2007) .....................................................................4

*White v. Fraternal Order of Police,*
    909 F.2d 512 (D.C. Cir. 1990) .................................................................................................5


**STATE CASES**

*Aronson v. Wiersma,*
    65 N.Y.2d 592, 493 N.Y.S.2d 1006 (1985) .............................................................................6

*Chapadeau v. Utica Observer-Dispatch, Inc.,*
    38 N.Y. 196, 379 N.Y.S.2d 61 (1975) ............................................................................3, 17, 19

*Dolcefino v. Turner,*
    987 S.W.2d 100 (Tex. App. 1998),
    *aff'd,* 38 S.W.3d 103 (Tex. 2000) ........................................................................................13

*Gaeta v. New York News, Inc.,*
    62 N.Y.2d 340, 477 N.Y.S.2d 82 (1984) ...............................................................................13

*Gotbetter v. Dow Jones & Co., Inc.,*
    259 A.D.2d 335, 687 N.Y.S.2d 43 (1st Dep't 1999) ............................................................12

*Karaduman v. Newsday, Inc.,*
    51 N.Y.2d 531, 435 N.Y.S.2d 556 (1980) ............................................................................17

*Mahoney v. Adirondack Publ'g Co.,*
    71 NY2d 31, 523 N.Y.S.2d 480 (1987) .................................................................................12

*Ortiz v. Valdescastilla,*
    102 A.D.2d 513, 478 N.Y.S.2d 895 (1st Dep't 1984) ..........................................................18

*Student v. Denver Post Corp.,*
    No. 95CA0724, 1996 WL 756965 (Colo. App. Aug. 29 1996) .............................................14

*Tellier-Wolfe v. Viacom Broad. Inc.,*
    134 A.D.2d 860, 521 N.Y.S.2d 597 (4th Dep't 1987) ...........................................................6

*Tracy v. Newsday, Inc.,*
    5 N.Y.2d 134, 182 N.Y.S.2d 1 (1959) ....................................................................................7

WNY - 033845/000001 - 2321690 v9

Defendant Home Box Office, Inc. ("HBO") submits this memorandum of law in opposition to the Motion of Mitre Sports International Limited ("Mitre") for Partial Summary Judgment that HBO Defamed Mitre (the "Motion").[1]

## PRELIMINARY STATEMENT

Based on less than six pages of argument and citation to only five cases in its memorandum of law in support of its Motion (the "Memo"), Mitre asks this Court to take the unprecedented step of granting summary judgment to a libel plaintiff—despite the fact that no court in the Second Circuit has ever done so in a reported decision.

Mitre's Motion must be denied, not because there are issues of material fact in dispute. Rather, the Motion must be denied, first and foremost, because based on the undisputed evidence, HBO is entitled to summary judgment in this case. *See* HBO's Memorandum of Law in Support of Its Motion for Summary Judgment ("HBO's Memo"), submitted on April 15, 2011.

Second, Mitre's Motion must be denied because it presents a distorted and incomplete record in the case, relying heavily on inadmissible evidence and leaving out key, undisputed facts in the rendition of its story. In fact, despite spending 25 pages of its 31-page Memo purporting to lay out the facts of the case, Mitre does not identify a single false statement of fact in the segment at issue in this litigation (the "Segment"). Instead, Mitre cherry-picks and twists "facts" in an attempt to confuse the record and ignores the undisputed facts showing that HBO is

---

[1] The material facts in opposition to Mitre's Motion are set forth in HBO's Response to Mitre's Rule 56.1 Statement and the declaration of Katherine M. Bolger ("Bolger Dec.") and the exhibits annexed thereto, submitted herewith; HBO's Rule 56.1 Statement, and the declarations of Richard Bernstein ("Bernstein Dec."), R. Brian Black ("Black Dec."), Kirby Bradley ("Bradley Dec."), Ezra Edelman ("Edelman Dec."), Bernard Goldberg ("Goldberg Dec."), Ross Greenburg ("Greenburg Dec."), Bryant Gumbel ("Gumbel Dec."), Gul-e-Zehra Mamdani ("Mamdani Dec."), Slade R. Metcalf ("Metcalf Dec."), and Joseph Perskie ("Perskie Dec."), submitted on April 15, 2011 with HBO's Motion for Summary Judgment; and the Declaration of Ankur Kapoor ("Kapoor Dec.") submitted with Mitre's Motion, and the exhibits annexed thereto.

entitled to summary judgment.

Third, Mitre's Motion must be denied because it does not consider or apply the relevant federal and New York case law. Part A of Mitre's Memo claims defamation by implication, but fails to cite a single case setting forth the legal standards the court must apply before allowing a libel plaintiff to proceed with a defamation by implication claim. Parts B and C of Mitre's Memo use the buzz words of a defamation claim—"false" and "HBO Knew It" and "HBO Acted Grossly Irresponsibly"—but do not mention the test for proving falsity, actual malice, or gross irresponsibility in a defamation by implication claim, while focusing primarily on HBO's constitutionally-protected editorial decision as to what to include in the Segment. Finally, Part D suffers from all of the problems of the Memo as a whole: it neglects to mention or account for *any* of the undisputed evidence produced in discovery, which conclusively demonstrates that Mitre has not been damaged. HBO's Memo at 45-48. It also fails to mention or apply the precedent applicable to proving damages by a corporate entity. For all of these reasons, Mitre's Motion must be denied.

## BACKGROUND

HBO set forth a full and complete history of the undisputed facts of this case in HBO's Memo and HBO respectfully refers the Court thereto for reference. *See* HBO's Memo at 3-21. In particular, a DVD that contains the Segment has been submitted as Perskie Dec. Exhibit 1.

## ARGUMENT

In its Memo, Mitre asks this Court to do something no court in this Circuit has done before (in a reported decision)—grant summary judgment to a libel plaintiff. In fact, Mitre's disjointed Memo does not even set forth the legal basis for the relief it seeks. Nowhere does Mitre do anything other than passingly refer to the elements of a libel claim, nor does it make any effort to demonstrate that it has met them. Instead, Mitre has cobbled together a slew of

**Filed Under Seal**

irrelevant and misleading facts, bolstered by overblown rhetoric, perhaps hoping to muddy the waters for HBO's motion for summary judgment. The only thing that seems clear in the Memo is that Mitre seeks summary judgment on liability. Even a passing review of the applicable law, however, reveals that Mitre is not entitled to such an outcome.

Under New York law, to prevail on its defamation claim, Mitre must prove that there was (1) a materially false and (2) defamatory statement of fact (3) published about it without privilege or authorization to a third party, (4) with the requisite level of fault that (5) caused damage. *See, e.g.*, *Chapadeau v. Utica Observer-Dispatch, Inc.*, 38 N.Y.2d 196, 198-99, 379 N.Y.S.2d 61, 63-64 (1975); *Chandok v. Klessig*, 632 F.3d 803, 814 (2d Cir. 2011). Mitre bears the burden of proving each and every one of these elements (*see Celle v. Filipino Reporter Enters.*, 209 F.3d 163, 176 (2d Cir. 2000)), which it has not done and cannot possibly do on the record of this case.

Instead of applying these principles to the undisputed facts, Mitre's Motion depends almost entirely on its reinterpretation of the record. Most significantly, the Segment was carefully crafted to accurately state what the experienced, professional journalists who produced it had learned in their research and believed to be true. In its Memo, however, Mitre devotes page after page to rewriting and reinterpreting the Segment, twisting it into something else and then claiming that this, reinterpreted Segment is not supported by HBO's research or beliefs. Yet, the contents of the Segment are undisputed. For purposes of this Motion and this case, this Court need not and should not look any further. The tortured interpretations advanced by Mitre are simply beside the point.

A.    **Mitre Has Not Identified a Defamatory Statement of Fact Made in the Segment**

Mitre's Motion must be denied because it fails on the most basic level in that it does not identify any statement of fact *made in the Segment* on which it bases its Motion, let alone set

forth undisputed facts proving that statement to be false and defamatory.   Mitre brought this action and alleged in the Complaint that the Segment is false and defamatory because child labor supposedly is not used in the manufacture of Mitre-branded balls in India.   Metcalf Dec. Ex. 1 ¶¶ 32, 44, 45, Ex. E.   Similarly, Mitre's 30(b)(6) witness testified that "the images of the children" stitching Mitre-branded soccer balls are the part of the Segment that "cause[d] the greatest damage."   Black Dec. Ex. 6 at 228-29.   These statements are entirely consistent with HBO's position that the "gist" of the Segment is that children in India stitch soccer balls, including Mitre-branded soccer balls.   Mitre, however, is not seeking summary judgment based on this statement.   In fact, in the Memo Mitre concedes that it is true.   Memo at 2, 16.

Instead, Mitre argues that the Segment is defamatory because it supposedly says that Mitre *employs* children directly to stitch soccer balls.   This language, however, is nowhere in the Segment.   As a result, Mitre's Motion seeks summary judgment for an *implication*, not an expressed statement of fact.   Yet, Mitre's Memo does not even identify, much less discuss, the relevant standard for libel by implication, nor does it point to evidence satisfying that standard. Even if Mitre's unreasonable interpretation of the Segment were accepted, therefore, Mitre's Motion still should be denied.

Courts have adopted a heightened standard when a libel plaintiff seeks to base its claim on the theory of libel by implication.   "[B]ecause the Constitution provides a sanctuary for truth, a libel-by-implication plaintiff must make an especially rigorous showing where the expressed facts are literally true."   *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092-93 (4th Cir. 1993). To prevail, "[p]laintiffs typically have to show that Defendants affirmatively intended such implication."   *Vinas v. Chubb Corp.*, 499 F. Supp. 2d 427, 437 (S.D.N.Y. 2007).   "[A]ll the courts of appeal that have considered cases involving defamation by implication have imposed a

similar actual intent requirement." *Dodds v. Am. Broad. Co.*, 145 F.3d 1053, 1063-64 (9th Cir. 1998), *cert. denied*, 523 U.S. 1152 (1999). *See also Newton v. Nat'l Broad. Co.*, 930 F.2d 662, 681 (9th Cir.), *cert. denied*, 502 U.S. 866 (1991); *Compuware Corp. v. Moody's Investors Servs., Inc.*, 499 F.3d 520, 528-29 (6th Cir 2007); *Chapin*, 993 F.2d at 1092-93; *White v. Fraternal Order of Police*, 909 F.2d 512, 520 (D.C. Cir. 1990). Here, Mitre has not even attempted to meet its burden of proving that HBO intended to imply the distorted implications on which Mitre is now basing its claim. Nor could it—there is no evidence in the record that HBO intended to imply anything in the Segment about Mitre other than what it showed—that children in India are stitching Mitre-branded balls. For this reason, Mitre is not entitled to summary judgment (and HBO is).

The second problem with Mitre's defamation by implication claim is that the purported implication that Mitre itself hires children to stitch balls is nowhere in—and is directly contradicted by—the Segment itself. Specifically, during the cross-talk between correspondent Bernard Goldberg and host Bryant Gumbel at the end of the Segment, Mr. Goldberg makes plain that Mitre is not employing the children shown in the Segment, and that Mitre may not even know that child labor is being used:

> Goldberg: . . . . Are we supposed to believe that Mitre, for instance, which is just one of many companies that, that are involved in this—are we supposed to believe that Mitre, an international company that is based in London is going to know what's happening on a side street in Jalandhar, India? It's hard. It's very hard.

> Gumbel: I understand that, but when they say they investigated it, are they just lousy investigators, or are they lying?

> Goldberg: Well, let, let me answer it this way. I, I don't believe they're lying. I honestly believe—and I don't think I'm naive—I honestly believe that Mitre and all other companies would like this to be wiped out once and for all. Having said that, we're a television program. We don't have subpoena powers. We don't have guns. We don't have badges. We can't walk in and tell everybody to get their hands up on a wall. But we found it. We found it.

> Gumbel:  That's what I said.  How, how good can their investigators be?  How hard can they be trying?
>
> Goldberg:  I don't believe Mitre wants it to happen, but the subcontractors are a different story altogether . . . .

Perskie Dec. Ex. 1 at 22:09-23:07.[2]  This colloquy was not included in Mitre's Memo.  Instead, when citing the exchange, Mitre removed the statements "I honestly believe that Mitre and all the other companies would like this to be wiped out once and for all" and "I don't believe Mitre wants it to happen, but the subcontractors are a different story altogether."  Memo at 10.  This selective "editing" of the wording of the Segment cannot support a claim based on Mitre's wholly unreasonable interpretation of what the Segment says.

Mitre attempts to overcome this obstacle by arguing that "viewers' understanding controls the issue" of defamatory meaning.  Memo at 25.  Mitre cites no case for this extraordinary proposition, which contradicts New York law.  In point of fact, "[w]hether particular words are defamatory presents a legal question to be resolved by the court in the first instance."  *Aronson v. Wiersma*, 65 N.Y.2d 592, 594, 493 N.Y.S.2d 1006, 1007 (1985); *see also Tellier-Wolfe v. Viacom Broad. Inc.*, 134 A.D.2d 860, 860, 521 N.Y.S.2d 597, 598 (4th Dep't 1987) ("it is for the court in the first instance to determine whether the [spoken] words are susceptible to the particular defamatory meaning ascribed to them by plaintiff.").[3]  In doing so, "[t]he language is to be afforded its natural meaning reasonably attributable to the intended reader as opposed to a strained, unreasonable or unjustifiable interpretation.  An innuendo cannot

---

[2] All timestamps taken from Windows Media Player.

[3] Mitre's approach also suffers from the fatal flaw that it relies solely on unreliable, unauthenticated hearsay contained in e-mails that this Court cannot consider.  *See* Memorandum of Law of HBO in Support of its Motion to Strike Viewer E-mails Relied Upon by Mitre in Support of its Motion for Partial Summary Judgment That HBO Defamed Mitre, submitted on April 22, 2011.

alter or enlarge the plain and obvious meaning of the words so as to convey a meaning that is not otherwise expressed.  Simply stated, if an article is not susceptible of a libelous meaning then innuendo cannot make it libelous."  *Seymour v. Lakeville Journal Co., LLC*, No. 04 CV 4532(GBD), 2004 WL 2848537, at *4 (S.D.N.Y. Dec. 9, 2004) (Daniels, J.) (internal marks and citations omitted) (citing *Tracy v. Newsday, Inc.*, 5 N.Y.2d 134, 136, 182 N.Y.S.2d 1, 3 (1959)), *aff'd*, 150 Fed. Appx. 103 (2d Cir. 2005); *see also El Meson Espanol v. NYM Corporation*, 521 F.2d 737, 740 (2d Cir. 1975) (rejecting plaintiff's proposed interpretation of an allegedly defamatory passage because "the interpretation plaintiff attempts to establish by innuendo distorts the logical meaning of the text beyond the limits of its language").  "A plaintiff may not take statements out of context in an attempt to build a defamatory meaning behind them . . ." (*Feldman v. Edwab*, No. 1:10-CV-0261 (LEK/RFT), 2011 WL 1298717, at *7 n.4 (N.D.N.Y. March 31, 2011)), which is exactly what Mitre has attempted to do here.

The third way in which Mitre seeks to get around its inability to identify an allegedly false and defamatory statement *in the Segment* is through its remarkable claim that this Court already ruled that there is "a triable issue" over whether the Segment states that Mitre is "employing child slave labor in the manufacture of Mitre soccer balls in the city of Meerut, India."  Memo at 1.  Mitre is simply wrong in this regard.  This Court did not make a definitive ruling as to the meaning of the Segment with respect to children stitching soccer balls in Meerut. *See* April 20, 2011 letter to this Court from Slade R. Metcalf, counsel for HBO (annexed to the Bolger Dec. as Ex A).  Moreover, in this instance, too, the interpretation of the Segment (or innuendo) ascribed by Mitre is unreasonable as a matter of law, in the context of the Segment as a whole.  It also is substantially true as there is no material difference between children paid "pennies a day" and children who receive no money because they are working off a family debt.

**Filed Under Seal**

The Segment makes it absolutely clear that the children stitching Mitre-branded soccer balls do so in Jalandhar, not Meerut, and that they earn pennies a day for their work. The Segment states:

> **_Jalandhar, India_**, a city built on the soccer trade, where a handful of local suppliers make balls for some of the biggest brands in the world. On paper, there are no children stitching those balls. That would be against the law. And the world's big soccer brands have policies against using child labor. But law or no law, policy or no policy, the children are here, hidden in plain sight. Manjeet is an orphan who lives with her grandparents. She's also a full time soccer ball stitcher and she's only twelve. . . . And **_how much does she earn for her work?_** **_About a nickel an hour_**.

Perskie Dec. Ex. 1 at 4:44-5:31 (emphasis added). Shortly after, the Segment states, "Manjeet is making a ball for Mitre, one of the biggest soccer brands in the world, the preferred brands of the pros." *Id.* at 6:52-6:58. Thus, it is clear that Manjeet, a child in Jalandhar (not Meerut), makes pennies a day for her work and is not "slave labor." Later, the Segment states:

> . . . Real Sports was able to walk right into a stitching center in **_Jalandhar_**, where 4 kids not much older than 10 were **_working for pennies a day._** They were stitching Mitre Cobra model balls, size 4, in blue and white, each printed with the same UPC code, the first 5 digits 29807, the unique number we learned, for all Mitre balls bound for the United States.

*Id.* at 14:40-15:07 (emphasis added). If the children and Manjeet are making pennies a day or a nickel an hour, they cannot be working in slave labor. And, if the children are in Jalandhar, they cannot be in Meerut, where children in debt bondage work.

When the Segment does talk about children stitching soccer balls in Meerut, it makes a clear transition from the children found stitching in Jalandhar. The Segment states:

> On this day, Real Sports went along with [Kailash Satyarthi] on a trip to Meerut, the **_second city_** of India's soccer ball industry. **_Meerut is even poorer than Jalandhar and hides an even darker secret. Because most of the children who stitch soccer balls here don't make pennies an hour—they make nothing at all_**, and they have no choice in the matter.

Perskie Dec. Ex. 1 at 9:07-9:29. Thus, despite Mitre's best efforts to manipulate the plain

meaning of the Segment, the Segment *never* states or implies that Mitre products are being manufactured by children in debt bondage in Meerut.

At bottom, Mitre's Motion—and its case—appear to rest on a  claim that HBO libeled it by implication.  Its Memo, however, does not identify any implication reasonably attributable to the Segment, let alone demonstrate that HBO intended or endorsed such implication, and therefore it must be denied.

## B.    Mitre Did Not Prove The Segment Is False

Next, Mitre is not entitled to summary judgment on liability because it has not and cannot demonstrate that the Segment is materially false.  A defamation plaintiff in the United States bears the burden of proving that an allegedly defamatory publication is false.  *See, e.g.,* *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986).  Because of this constitutionally mandated burden of proof, "[i]t's not necessary of course that a statement be literally true."  *Guccione v. Hustler Magazine, Inc.*, 800 F.2d 298, 301 (2d Cir. 1986).  Rather, "[i]t is only necessary that the gist or substance of the challenged statements be true," which is determined by ascertaining "if the published statement could have produced no worse an effect on the mind of a reader than the truth pertinent to the allegation."  *Croton Watch Co., Inc. v. Nat'l Jeweler Magazine, Inc.*, No. 06 CV 662 (GBD), 2006 WL 2254818, at *5 (S.D.N.Y. Aug. 7, 2006) (Daniels, J.) (internal marks and citations omitted).

Here, the defamatory  "gist" of the Segment as it relates to Mitre is that children in India are involved in the manufacture of soccer balls, including Mitre-branded soccer balls.   The undisputed evidence shows that fact to be true—Mitre's documents and Mitre's witnesses have admitted that children stitch Mitre balls and that Mitre knew they did when the Segment premiered.   HBO's Memo at 17-19.  An HBO employee also saw children stitching Mitre-branded balls.  Mamdani Dec. ¶ 110.  It does not matter whether the Mitre balls are handed to the

children by their parents, as Mitre claims in its Memo, or by subcontractors, as it says in the Segment.  What supposedly damaged Mitre in the Segment and what matters under the law is that children are involved in the manufacture of Mitre soccer balls.

Mitre's emphasis in its Memo on the testimony of some of the children shown in the Segment is another red herring.  *See* Memo at 21-23.  Even if it were true that HBO's independent contractors in India paid the children money or otherwise induced them to stitch for the cameras—and it is not—Mitre still cannot prevail on its Motion.  Mitre has admitted that children stitch Mitre balls in India.  For the purpose of assessing Mitre's Motion, it does not matter whether those children were named Manjeet, Deepu, and Aman, as it says in the Segment, or Rohit, Anju, and Dimple, as it says in Mitre's documents (*see* Metcalf Dec. Ex. 44 at 314 and its Ex. 17A).  Mitre cannot prove that the Segment is materially false and its Motion must be denied.

Similarly, Mitre cannot prove that the supposed innuendo that Mitre employs children is false because, in fact, it is substantially true.  The SGFI has found numerous instances of children stitching Mitre-branded soccer balls in 2007 and 2008 (the only two years Mitre produced any information about the monitoring of child labor in the manufacture or Mitre-branded products).  The defamatory sting—that children stitch Mitre-branded soccer balls—is the same, regardless of whether Mitre gives money directly to the families or to the contractors whose actions and production methods Mitre can control by virtue of its contracts.

Further, even if Mitre's strained interpretation of the Segment as implying that Mitre-branded balls are made in Meerut were credited, Mitre has not and cannot prove, by clear and convincing evidence, that it is false.  During one visit to India, the Segment producer and associate producer met a contractor and a soccer ball stitcher who both stated that Mitre branded

balls are stitched in Meerut.  Mamdani Dec. ¶¶ 38-39; Perskie Dec. ¶ 32.  Specifically, they met a man in Meerut who showed them panels from a Mitre "Ultimatch Fluo" soccer ball that the producers understood he had been contracted to stitch.  Mamdani Dec. ¶ 38; Perskie Dec. ¶ 32, Ex. 63.  The man told the HBO producers that he used to stitch soccer balls in Jalandhar and that he thought he might receive another order to stitch Mitre-branded balls after the harvest season was over.  *Id.*  The HBO employees also spoke with a contractor in Meerut who said that he orders raw materials for Mitre-branded balls from Jalandhar and has the balls stitched in Meerut. Mamdani Dec. ¶ 39.   Thus, there is at least some evidence that Mitre-branded soccer balls are stitched in Meerut.  And there is no evidence one way or another showing whether children are involved in such stitching.  With this factual background, Mitre has not proven that no child in Meerut has ever stitched Mitre-branded soccer balls.  The Motion therefore must be denied.  *See Hepps*, 475 U.S. at 776.

**C.**     **Mitre Did Not Prove That HBO Acted With The Requisite Degree of Fault**

Next, Mitre's Motion must be denied because it has not and cannot prove that HBO acted with the requisite degree of fault.

1.     Mitre Did Not Prove By Clear and Convincing Evidence That HBO Acted With Constitutional Malice

In the Memo, Mitre recognizes that a public figure is required to demonstrate that HBO acted with constitutional malice in distributing the Segment.  Yet, Mitre fails to present any evidence on which this Court can find the existence of constitutional malice by clear and convincing evidence.   Instead, the Memo simply asserts in the most conclusory manner that HBO "knew" or must have known that the Segment was false.  This blanket statement is not

factual evidence that HBO acted with subjective knowledge of falsity.[4] *See, e.g.*, Memo at 11.

Mitre makes three arguments to attempt to demonstrate the existence of constitutional malice: (1) HBO "knew" that parents in India give their children soccer balls to stitch and that information was never "conveyed" in the Segment;[5] (2) HBO did not include information about the SGFI or portions of HBO's interview with Charlotte Pontceilli of the Department of Labor in the Segment; and (3) the scenes of children stitching Mitre-branded balls that were used in the Segment supposedly were fabricated and *those* children had *never* stitched soccer balls before in their lives.[6] Even taken at face value, *none* of these arguments are supported by the record, much

---

[4] Mitre also appears to conflate falsity and knowledge of falsity. The law is clear, however, that falsity and constitutional malice are distinct concepts, both of which must be pleaded and proved independently. *Mahoney v. Adirondack Publ'g Co.*, 71 NY.2d 31, 39, 523 N.Y.S.2d 480, 483 (1987) ("[f]alsity and actual malice are distinct concepts. It is one thing to publish a false statement and quite another to do so knowingly and recklessly").

[5] To support its claim that HBO knew that parents give Mitre balls to children to stitch, Mitre cites to three documents: (1) "A November 10, 2006 document from the files of Associate Producer Zehra Mamdani", (2) "a response to Mamdani's April 9, 2008 email" from Manpreet Kaur and (3) a September 17, 2008 email from Kaur. Memo at 11-12. These documents do not, however, convey the information Mitre claims they do. The November 10, 2006 document does not even reference Mitre (*see* Kapoor Dec. Ex. 11), and thus has no bearing on HBO's "knowledge" about Mitre. Moreover, both this document and Ms. Kaur's April 2008 email (Kapoor Dec. Ex. 15) predate the May 2008 trip to India, during which HBO employees gathered the information in part supports their belief in the truth of the statements in the Segment concerning Mitre. *See* HBO's Memo at 8-9. Finally, the September 17 email (Kapoor Dec. Ex. 14), sent after the Segment premiered, appears only to refer to these earlier emails.

[6] Mitre also claims that "HBO internally questioned the accuracy of the show," claiming that the Segment's correspondent, Bernard Goldberg, "said the show was 'unfair' to Wal-Mart and Mitre." Memo at 14. This argument misrepresents the record. As Mitre admits, the comments were not about "the show," they were in a "draft script." *Id.* Further, Mitre fails to mention that at his deposition, Mr. Goldberg testified that the material he was referencing in his written comment *was not reflected* in the document he was shown, thus not providing any context for his comment. Bolger Dec. Ex. H at 124-28. Moreover, Mr. Goldberg also testified that "[b]y the time the script was finalized, all of my questions had been addressed." Goldberg Dec. ¶ 25. Accordingly, any questions Mr. Goldberg might have had during the script-drafting process were resolved to his satisfaction before the Segment premiered. Finally, unfairness is not evidence of knowledge of falsity, in any event. *See Machleder v. Diaz*, 801 F.2d 46, 53 (2d Cir. 1986), *cert. denied* 479 U.S. 1088 (1987); *Gotbetter v. Dow Jones & Co., Inc.*, 259 A.D.2d 335, 336, 687 N.Y.S.2d 43, 44 (1st Dep't 1999).

less clear and convincing evidence, that HBO subjectively doubted any statement about Mitre in the Segment.

Mitre's first two arguments boil down to the fact that Mitre believes that HBO should have included certain information in the Segment that HBO chose not to include.  However, the "exercise of editorial judgment to omit information favorable to the plaintiff is no evidence of actual malice." *Dolcefino v. Turner*, 987 S.W.2d 100, 121 (Tex. App. 1998), *aff'd*, 38 S.W.3d 103 (Tex. 2000).  As the United States Supreme Court has held, "[t]he choice of material to go into a newspaper, and the decisions made as to limitations on the size and content of the paper, and treatment of public issues and public officials—whether fair or unfair—constitute the exercise of editorial control and judgment." *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974).  "A court cannot substitute its judgment for that of the press by requiring the press to present an article or broadcast in what the court believes is a balanced manner. It may only assess liability when the press so oversteps its editorial freedom that it contains falsity and does so with the requisite degree of fault." *Machleder v. Diaz*, 801 F.2d 46, 55 (2d Cir. 1986), *cert. denied* 479 U.S. 1088 (1987).  *See also Gaeta v. New York News, Inc.*, 62 N.Y.2d 340, 349, 477 N.Y.S.2d 82, 85 (1984) ("[t]he press, acting responsibly, and not the courts must make the *ad hoc* decisions as to what matters are of genuine public concern, and while subject to review, editorial judgments as to news content will not be second-guessed so long as they are sustainable.").

For this reason, the decision not to include certain information cannot create liability for an otherwise accurate news report. *See, e.g., Church of Scientology Int'l v. Behar*, 238 F.3d 168, 175 (2d Cir. 2001) (no actual malice because "[a]ny such omissions are insignificant when viewed against the backdrop of Behar's investigation as a whole"); *Howard v. Antilla*, 294 F.3d

244, 254 (1st Cir. 2002) ("Antilla's omissions cannot carry the heavy freight of establishing actual malice by the measure of convincing clarity"); *Peter Scalamandre & Sons, Inc. v. Kaufman*, 113 F.3d 556, 563 (5th Cir. 1997) ("TV Nation was entitled to edit the tape it shot to fit into the short time frame allotted to the sludge segment"); *Student v. Denver Post Corp.*, No. 95CA0724, 1996 WL 756965, at *5 (Colo. App. Aug. 29 1996) ("Nor do plaintiffs' contention that the Post omitted material facts, which would have changed the tone of the article, amount to proof of malice, clear and convincing or otherwise.").

The producer of the Segment stated under oath that he "had heard of the SGFI during [his] research for the Segment," but "[r]egardless of what the SGFI was doing and the efforts it may have been making to combat child labor, there were in fact children stitching soccer balls in India, including, as Zehra had seen and which we had on tape, Mitre-branded balls."  Perskie Dec. ¶ 78.  The exercise of his editorial discretion not to include information about the SGFI and its undeniably unsuccessful efforts to eliminate child labor is not only constitutionally protected, but eminently reasonable.  It certainly does not in any way transform the true statements in the Segment into actionable falsehoods.  *See* HBO's Memo at 37-42.

As to Mitre's last argument, even if it were the case that the scenes of children stitching Mitre-branded balls that appeared in the Segment were fabricated, it does not mean that *HBO employees* had any doubts about the truth of the Segment.[7]  The footage Mitre questions was indisputably obtained and supplied by independent contractors.  HBO's Memo at 39-40.  No

---

[7] In its Memo, Mitre points to Veena Sharma's testimony that "she found 'no children [under the age of 14] who could stitch soccer balls'" and appears to argue that Ms. Sharma's testimony provides evidence that HBO subjectively doubted the truth of the Segment. Memo at 12.  HBO producers' belief in the truth of the Segment, however, is not reliant on Ms. Sharma.  Ms. Mamdani personally witnessed children stitching Mitre-branded balls long after she last spoke to Ms. Sharma.  *See* Perskie Dec. ¶ 90; Mamdani Dec. ¶ 110.  And Mitre has now conceded that children stitch Mitre-branded soccer balls.  Metcalf Dec. Ex. 32 at 221-27, 324-25 and its Exs. 16-17.  Whether or not Veena Sharma saw such children is irrelevant.

HBO employee was present when that footage was taken.

The law is clear that the existence of constitutional malice "must be proved with respect to each defendant." *Price v. Viking Penguin, Inc.*, 881 F.2d 1426, 1446 (8th Cir. 1989) (author's reckless disregard could not be imputed onto book publisher because author was an independent contractor), *cert. denied*, 494 U.S. 1013 (1990). "It cannot be imputed from one defendant to another absent an employer-employee relationship," let alone from a non-defendant to a defendant. *Seacord v. Cockburn*, 747 F. Supp. 779, 787 (D.C. Cir. 1990). Thus, for example, *Rolling Stone* magazine could not be held liable for an article it published even though the author of the article, Stephen Glass, later *admitted* the article was fabricated because Glass was an independent contractor—not an employee—of the magazine. *D.A.R.E. Am. v. Rolling Stone Magazine*, 101 F. Supp. 2d 1270, 1278-81 (C.D. Ca. 2000), *aff'd*, 270 F.3d 793 (9th Cir. 2001). *See also McNally v. Yarnall*, 764 F. Supp. 838, 851 (S.D.N.Y. 1991) (a museum cannot be held liable for the statements of its historian, who was not an employee); *McFarlane v. Esquire Magazine*, 74 F.3d 1296 (D.C. Cir. 1996) (finding that *Esquire* magazine is not vicariously liable for alleged fabrication by freelance author). And there is not a shred of evidence showing that *any* HBO employee was aware of any fabrication. To the contrary, the uncontested testimony is that even today the HBO employees primarily responsible for the production of the Segment still believe these children regularly stitched soccer balls, including Mitre-branded soccer balls, and that the footage of them stitching in the Segment is accurate. *See* HBO's Memo at 39-40; Bernstein Dec. ¶ 10, Bradley Dec. ¶ 14, Edelman Dec. ¶ 30, Goldberg Dec. ¶ 27, Greenburg Dec. ¶ 9, Gumbel Dec., Mamdani Dec. ¶¶ 108-10, Perskie Dec. ¶¶ 89-90.

Mitre apparently attempts to avoid this uncontradicted evidence by claiming that HBO "knew that the scenes of Manjeet, Deepu, and Aman had been staged" because "Mamdani

testified that she had seen the entirety of the raw footage filmed for [the Segment] and that she speaks Hindi" (although the interviews are in Punjabi).[8]  Memo at 23.  Mitre then states that "Translations of the raw footage of Manjeet, Deepu, and Aman similarly show the cameraman and an unidentified woman directing the children what to do and what to say." *Id.*[9]  What Mitre is referring to, however, is commonplace direction given to subjects being filmed, not any sort of fabrication.  *See* Perskie Dec. ¶ 54; Edelman Dec. ¶ 24.  Either way, Mitre has not and cannot establish that HBO *subjectively* knew that any scenes were fabricated.  *See Levesque v. Doocy*, 560 F.3d 82, 91 (1st Cir. 2009) ("It is true that a more deliberate consideration of the [source] article should have caused reasonable skepticism about the source and that the defendants were careless in relying on it, but this is an indication of negligence, not actual malice, and [plaintiff] faces the heavy burden of providing evidence that the defendants recognized the carelessness with which they were proceeding.").  What Mitre has based its Motion on is nothing more than a claim that HBO *should* have doubted the truthfulness of the videos of the children stitching Mitre-branded soccer balls.  Mitre has not—and cannot—point to any evidence (much less indisputable evidence) that HBO, in fact, *did* doubt their reliability.  For this reason, Mitre cannot prove as a matter of law by clear and convincing evidence that HBO acted with

---

[8] Mitre makes the claim that Harinder Singh "testified that the filming of Deepu and Aman had been 'fabricated' and 'dramatized,' *i.e.*, 'that that thing was not actually taking place." Memo at 23.  Mr. Singh gave no such testimony.  As is clear from the record, Mr. Singh, who was not proficient in English and was testifying in Punjabi, was confused and used the word "fabricate" in English when he meant "prepare."  Mr. Singh clarified the record to state "Nobody's help was taken in doing fabrication.  They had named fabrication, and fabrication has also not been done, as per my knowledge."  Bolger Dec. Ex. K at 135.  He further testified that "When we reached there at that designated time, stitching was not being done there.  Preparation for stitching was being done.  After that, stitching was done, and it was shooted." *Id.* at 175.

[9] Mitre also references "a scene" about which Ms. Mamdani testified, where someone can be heard in the background "instruct[ing] an adult to show a child how to stitch."  Memo at 23-24.  What Mitre fails to mention is that the footage about which Ms. Mamdani testified was not the same footage that included Manjeet, Deepu, or Aman, and more importantly, did not contain a Mitre-branded ball. *See* Bolger Dec. Ex. L at 264-69.

constitutional malice.[10]

    2.    Mitre Has Also Failed To Demonstrate That HBO Was Grossly Irresponsible

In the alternative, if this Court finds that Mitre is not a public figure, Mitre's Motion still must be denied because the Segment involves a matter of public interest, and Mitre has not demonstrated as a matter of law that HBO acted in a grossly irresponsible manner. In fact, Mitre's Memo barely addresses what a plaintiff must plead and prove to demonstrate gross irresponsibility. *See Chapadeau v. Utica Observer-Dispatch, Inc.*, 38 N.Y.2d 196, 199, 379 N.Y.S.2d 61, 66 (1975); HBO's Memo at 42-45.

As with the constitutional malice standard, gross irresponsibility must be established as to each individual defendant. *See Karaduman v. Newsday, Inc.*, 51 N.Y.2d 531, 542, 435 N.Y.S.2d 556, 561-2 (1980). "If there is to be liability at all on the part of the defendant . . . it must be because [he] himself knowingly engaged or acquiesced in the type of misconduct which may lead to libel damages under the standard articulated in *Chapadeau*." *Id.* Therefore, as the Second Circuit explained, a corporation cannot be held liable for the actions of independent contractors: "To hold that a publisher can be liable for the defamatory statements of an independent contractor without a showing of gross irresponsibility would defeat the purpose of requiring that showing." *Chaiken v. VV Pub. Corp.*, 119 F.3d 1018, 1034 (2d Cir. 1997), *cert. denied*, 522 U.S. 1149 (1998). *See also Nelson v. Globe Int'l, Inc.*, 626 F. Supp. 969 (S.D.N.Y.

---

[10] In its abbreviated discussion of damages, (Memo at 30-31), Mitre appears to argue that it is entitled to presumed damages. In *Gertz v. Robert Welch, Inc.*, the Supreme Court held that in defamation cases involving a matter of public interest, "the States may not permit recovery of presumed or punitive damages, at least when liability is not based on a showing of knowledge of falsity or reckless disregard for the truth [*i.e.*, "constitutional" malice]." 418 U.S. 323, 349 (1974). Consequently, Mitre is not entitled to presumed damages here. *See* HBO's Memo at 45-48.

In addition, Mitre confuses the concept of libel *per se* and proof of injury. The comments by HBO's damages expert cited in the Memo obviously pertained to the general concept of defamation *per se*, not to whether Mitre had actually been damaged as a result of the Segment.

1986) (finding that a magazine is not responsible for author's actions because he was an independent contractor); *Naantaanbuu v. Abernathy*, 816 F. Supp. 218, 226-27 (S.D.N.Y. 1993) (book publisher cannot be held grossly irresponsible when it had no reason to doubt the veracity of author and "safeguards were provided in the editorial process"); *Ortiz v. Valdescastilla*, 102 A.D.2d 513, 519, 478 N.Y.S.2d 895, 899 (1st Dep't 1984).

Mitre claims that HBO acted in a grossly irresponsible manner because (1) HBO "fabricated information;" (2) "manipulated and edited footage;" and (3) according to Mitre's journalism ethics expert, acted in an "unethical" manner. Memo at 29-30. When the undisputed facts behind these conclusory arguments are examined, however, it is clear that Mitre has no evidence that HBO did any of those things, or acted in a grossly irresponsible manner.

The only "fabrication" Mitre claims happened would only have been done by independent contractors—not by HBO. It cannot therefore constitute evidence that *HBO* acted grossly irresponsibly. As for the alleged "manipulation" and editing of footage, Mitre asserts that the manner in which HBO edited certain interview footage of Ponticelli (that did not mention Mitre) was grossly irresponsible. There is nothing in Mitre's Memo, however, that proves that this editing, which did not in any way change the meaning of Ms. Ponticelli's remarks, is a gross departure from the standard of care. "It is common knowledge television programs . . . shoot more [interview] footage than necessary and edit the tape they collect down to a brief piece. [The libel defendant] was entitled to edit the tape it shot to fit into the short time frame allotted to the sludge segment." *Peter Scalamandre & Sons, Inc.*, 113 F.3d at 563. As Bernard Goldberg declared, in his experience which spans four decades, the editing of the interview footage with Ponticelli conformed with standard journalistic practice. Goldberg Dec. ¶ 21.

Finally, Mitre relies heavily on a report from a purported journalism expert in its effort to establish that HBO acted grossly irresponsibly. *See* Memo at 29-30. As set forth more fully in HBO's Motion to Strike the Expert Report of Patricia A. Aufderheide ("HBO's Motion to Strike the Aufderheide Rep."), submitted on April 22, 2011, this report is inadmissible for a number of reasons, including that it is irrelevant to any issue before the Court. The crux of Ms. Aufderheide's opinion is that the Segment "was executed in ways that are unethical." Kapoor Dec. Ex. 43 at 9; *see also* Memo at 29-30. Ms. Aufderheide's assessment of "ethical issues," however, is entirely beside the point. Ms. Aufderheide testified that she did not apply generally accepted journalistic standards (*see Chapadeau*, 38 N.Y.2d at 199, 379 N.Y.S.2d 64) in forming her conclusions, but rather what in her (inexpereienced) view are "best practices." Bolger Dec. Ex. B at 113-14. Her views, therefore, do not in any way bear on a gross irresponsibility analysis.

Mitre's conclusory assertions do not prove that HBO acted with gross irresponsibility. To the contrary, the undisputed evidence is that HBO did not (HBO's Memo at 42-45), and therefore Mitre's Motion must be denied.

**Filed Under Seal**

## CONCLUSION

Even on the distorted record offered in its Memo, Mitre has not demonstrated it is entitled to summary judgment.   Accordingly, HBO respectfully requests that this Court deny Mitre's motion for partial summary judgment and grant HBO such other and further relief as this Court deems appropriate, including an award for costs.

Dated: May 27, 2011

Respectfully submitted,

By: _Slade R. Metcalf_
Slade R. Metcalf
Katherine M. Bolger
Collin Peng-Sue
HOGAN LOVELLS US LLP
875 Third Avenue
New York, NY 10022
Tel: (212) 918-3000

Of Counsel:
Stephanie S. Abrutyn
Home Box Office, Inc.
1100 Avenue of the Americas
New York, NY 10036

*Attorneys for Defendant Home Box Office, Inc.*