UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
MITRE SPORTS INTERNATIONAL LIMITED,    :
                                        :
                    Plaintiff,          :
                                        :
        v.                              :   Case No. 08 CIV 9117 (GBD) (HBP)
                                        :
HOME BOX OFFICE, INC.,                  :
                                        :
                    Defendant.          :
                                        :
------------------------------------------------------------------x

# PLAINTIFF MITRE SPORTS INTERNATIONAL'S OBJECTIONS TO MAGISTRATE JUDGE PITMAN'S DECEMBER 30, 2014, ORDER

## INTRODUCTION

On December 30, 2014—over four years after the issues were briefed in November 2010 and the close of fact discovery on December 15, 2010, Order ¶ 1.a, at 1 (Sep. 23, 2010) (Pitman, M.J., setting close of fact discovery) [Dkt Entry 162], and over three years after summary judgment was argued on December 6, 2011—Magistrate Judge Pitman ordered Plaintiff Mitre Sports International Limited ("Mitre") to produce an additional Rule 30(b)(6) witness on seven topics within 30 days of his order, i.e., by January 29, 2015. Order, at 4-5, 6, 7-8 (Dec. 30, 2014) [Dkt Entry 365]. This is within three months of the commencement of trial in this matter. Judge Pitman did so without any argument from Defendant Home Box Office, Inc. ("HBO") in the last four years that this additional testimony was relevant either to summary judgment or to trial.

Magistrate Judge Pitman's order violates several of the Federal Rules of Civil Procedure, and should be vacated for reasons stated below. Unless the Court vacates Magistrate Judge Pitman's belated and erroneous ruling, Mitre will produce Mr. George Duncan Anderson for the

1

Rule 30(b)(6) deposition on January 22, 2015. Mitre thus respectfully requests the Court rule on this issue prior to January 20, the day that Mr. Anderson is scheduled to travel from the United Kingdom for deposition in New York on January 22.

First, Magistrate Judge Pitman's order violates Federal Rule of Civil Procedure 72(a) because the order was not promptly issued. This was not merely a technical violation of Rule 72(a). Judge Pitman issued the order four years after briefing was completed and fact discovery had closed. In the absence of any expressed need by HBO during the last four years for this additional discovery, the burden on Mitre while preparing for trial is unjustifiable and contrary to Rule 1's dictate of a "just, speedy, and inexpensive determination' of an action." *SEC v. Collins & Aikman Corp.*, 256 F.R.D. 403, 407 n.8 (S.D.N.Y. 2009) ("While an apology from a court is a rare – possibly unprecedented – event, I hereby publically apologize to the parties for the lengthy delay [of 4 months] in resolving these [discovery] disputes. I have no good excuse – other than the usual press of business – but I recognize that a failure to resolve disputes promptly impedes the 'just, speedy, and inexpensive determination' of an action as required by Rule 1."). Judge Pitman's delay of 50 months is 12.5 times the delay that prompted a written apology by the court in the *Collins & Aikman* case.

Second, Magistrate Judge Pitman clearly erred in his ruling, *see* Fed. R. Civ. P. 72(a), because: (a) with respect to the manufacturing of stitched, Mitre-branded soccer balls and the monitoring of that production in India and Pakistan, Mitre had designated 30(b)(6) testimony; and (b) with respect to Mitre-branded products other than stitched soccer balls, Judge Pitman disregarded his own—and this Court's—rejection years ago of the relevance of Mitre rugby balls, futsal balls, training cones, netballs, and other Mitre products to this action.

Third, because Magistrate Judge Pitman has ordered additional fact discovery beyond the fact-discovery deadline he imposed and has done so without good cause, the order also violates Rule 16(b)(4) which allows modification of a scheduling order "only for good cause."

## ARGUMENT

### A. Magistrate Judge Pitman ruled during discovery that Mitre-branded products other than soccer balls do not have "anything to do with the defamation action here."

By letter dated April 7, 2010, HBO requested additional time to depose Mr. George Duncan Anderson, Mitre's Director of Product Development at the time and the same individual who will testify as to the topics identified in Magistrate Judge Pitman's December 30, 2014, Order, concerning the manufacture of Mitre products in India other than soccer balls. HBO argued to Judge Pitman, "Your Honor, if they [Mitre] make rugby balls in India and those rugby balls are made by children under the age of 14 [sic] is very significant because it's a substantially true statement," May 18, 2010, Hr'g Tr. 7:19-22 (Ex. A hereto), referring to the statements in "Children of Industry" ("COI") that "soccer ball makers in India like hiring children instead of their parents" in Jalandhar, India, and that soccer ball makers in Meerut, India, use child slave labor to make soccer balls.

Magistrate Judge Pitman denied HBO's application to reopen the Anderson deposition, correctly reasoning: "There was nothing in the segment about rugby balls, as I recall;" "the issue here is whether or not the segment that was broadcast" about soccer balls was defamatory; and "Whether or not Mitre manufactures balls for a sport called Futsal, I don't know what, I don't know how that bears on whether or not the segment was defamatory." *Id.* 6:24-7:06, 7:23-24; *see also* Transcript of Real Sports, Sep. 16, 2008 (Ex. B hereto). As Judge Pitman had previously reasoned during discovery, "The segment purports to depict the sad state of child laborers in India who work for either pennies a day stitching leather panels together to make

3

soccer balls or who do that work for no compensation in order to pay off debts incurred by their parents or relatives." Opinion and Order, at 1 (Apr. 15, 2010) [Dkt Entry 127]. Judge Pitman found that HBO wasted several hours in the Anderson deposition inquiring about products other than soccer balls, including rugby balls, futsal balls, and orange training cones, reasoning that "none of this really has anything to do with the defamation action here." May 18, 2010, Hr'g Tr. 13:10-20 (Ex. A).

This Court similarly questioned the relevance of Mitre "netballs" to this action on summary judgment, asking, "How is that evidence of anything having to do with a Mitre soccer ball?" Dec. 6, 2011, Hr'g Tr. 43:11-12 (Ex. C hereto). (Netball is a game similar to basketball that is played primarily outside the United States. http://en.wikipedia.org/wiki/Netball.) Magistrate Judge Pitman claims, in a passing reference, that this Court held in 2009 at the beginning of discovery, "that plaintiff's use or refusal to use child labor with respect to products other than soccer balls is relevant." Order, at 4 n.1 (Dec. 30, 2014) (citing Mar. 17, 2009, Hr'g Tr. 72-73). This Court, however, did not hold then or subsequently that products other than soccer balls were relevant to the trial of this matter, which is the issue at this stage of the litigation. As this Court subsequently stated during the summary-judgment hearing, "The question is why are they stitching Mitre soccer balls." Dec. 6, 2011, Hr'g Tr. 31:13-33:08 (Ex. C). In March 2009, this Court held only that discovery need not then be limited to soccer balls under Federal Rule of Civil Procedure 26. *See* Mar. 17, 2009, Hr'g Tr. 72-73 (Ex. D hereto). The extent to which discovery should be constrained, at the beginning of the case, is a different question from whether additional discovery is warranted in light of discovery already obtained and where the party that originally sought the discovery has not sought it for over four years. *See* Fed. R. Civ. P. 26(b)(2)(c) ("court must limit" discovery that is "unreasonably cumulative or

4

duplicative," where "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action," or where "the burden or expense of the proposed discovery outweighs its likely benefit").

### B. In the last four years, HBO did not argue that additional testimony about products other than soccer balls was relevant to summary judgment or trial.

Magistrate Judge Pitman's reasoning during discovery concerning HBO's "substantial truth" defense was sound. HBO did not require discovery concerning Mitre rugby balls, futsal balls, netballs, or training cones because, as HBO itself argued throughout discovery and in support of summary judgment: COI was "substantially true" because it was undisputed that "occasionally" "Mitre-branded soccer balls were sometimes stitched by children in India" "from time to time." HBO Mem. Supp. Summ. Judg. 2, 17-18 (Apr. 15, 2011) [Dkt Entry 230]; Opinion and Order, at 7 (Apr. 15, 2010) (Pitman, M.J.) [Dkt Entry 127] (denying discovery in China because "HBO admits that the depositions recently conducted in India supports [sic] its truthfulness defense").

Discovery concerning products other than soccer balls would have added nothing to HBO's substantial-truth defense. This is why, in the 50 months that HBO's request for additional 30(b)(6) testimony lay pending before Magistrate Judge Pitman and the 37 months from the time HBO moved for summary judgment until this Court decided it, HBO did not request that summary judgment be delayed until HBO received this additional discovery. Nor did HBO make a Rule 56(d) argument in opposing Mitre's motion for summary judgment. [Dkt Entry 268] Nor did HBO argue, when it moved for reconsideration of this Court's May 2014 rulings on summary judgment, that this additional discovery was relevant, let alone necessary. [Dkt Entry 302] Nor did HBO argue that this additional discovery was necessary for trial after this Court denied HBO's motion for reconsideration. HBO merely requested, on October 22,

5

2014, that this Court and Magistrate Judge Pitman decide all of HBO's outstanding motions. [Dkt Entry 343] Because this additional discovery would be "unreasonably cumulative or duplicative," Judge Pitman was obligated to deny it. *See* Fed. R. Civ. P. 26(b)(2)(c).

HBO's substantial-truth defense, even as to children having "occasionally" stitched Mitre-branded soccer balls, is also marginal at best. This Court, rejecting HBO's substantial-truth defense on summary judgment, stated, "If that is critical to your argument, to phrase the issue that way, then you are going to lose because that is not the issue. The issue is not whether children are sewing Mitre balls. . . . So the question is not you just can run around the world and find somebody who stitched the Mitre soccer ball. . . . The question is why are they stitching Mitre soccer balls." Dec. 6, 2011, Hr'g Tr. 31:13-33:08 (Ex. C).

### C. Magistrate Judge Pitman clearly erred in finding that Mitre had not designated 30(b)(6) testimony on the manufacturing of stitched, Mitre-branded soccer balls and the monitoring of that production in India and Pakistan.

Magistrate Judge Pitman's order requires Mitre to produce a Rule 30(b)(6) witness by January 29, 2015, on seven topics. Order, at 4-5, 6, 7-8 (Dec. 30, 2014) [Dkt Entry 365]. Three topics concern products other than soccer balls[1] and are irrelevant to this case which is entirely about the stitching of soccer balls. For the remaining four topics, Mitre had designated 30(b)(6) testimony. Additional 30(b)(6) testimony would be entirely duplicative and a waste of time.

Concerning topic (1)— "efforts to monitor the production of Mitre products in Pakistan, Meerut, and Gurgaon," Order, at 4-5 (Dec. 30, 2014)—Magistrate Judge Pitman clearly erred in finding that Mitre had "belatedly" designated 30(b)(6) testimony in Mitre's letter of November 5,

---

[1] Topics (2) and (4) concern Mitre's "efforts to monitor the manufacture of Mitre products other than soccer balls" and "the manufacture of Mitre products other than soccer balls in India and Pakistan," respectively. Order, at 4-5, 6 (Dec. 30, 2014). With respect to topic (3)—"the steps Mitre has taken to ensure that the manufacturers who produce Mitre products do not utilize child labor," *id.* at 4-5— Magistrate Judge Pitman found that Mitre had designated 30(b)(6) testimony concerning "the steps Mitre takes to ensure that only registered stitchers are used" in India in the manufacture of soccer balls. *Id.* at 4. Thus, topic (3) is also limited to products other than soccer balls (and Pakistan, for which Mitre had designated 30(b)(6) testimony from Ms. Roberts as detailed below).

6

2010, *id.* at 4. To the contrary, Mitre designated the testimony of its former Director of Corporate Responsibility, Lesley Roberts, concerning the monitoring of soccer-ball production in Pakistan on October 19, 2010, as ordered by Judge Pitman on October 12, 2010, Oct. 12, 2010, Hr'g Tr. 21 (Ex. E hereto). *Accord* Letter from K. Bolger, Esq., counsel for HBO, to Hon. H. Pitman, at 2 and Ex. 12 (Oct. 29, 2010) ("HBO Letter (Oct. 29, 2010)") (attaching Mitre's 30(b)(6) testimony on corporate responsibility at Ex. 12). Ms. Roberts' designated 30(b)(6) testimony: explains the timeline leading to the Atlanta Agreement on child-labor monitoring in Pakistan and identifies the parties involved (HBO Letter (Oct. 29, 2010) Ex. 12 (Ex. F hereto) at 15-24); describes the monitoring system put in place by the industry in Pakistan in conjunction with UNICEF and the International Labour Organization (ILO) (*id.* at 25-27, 32-33, 47-48); explains how Mitre contracts only with manufacturers in Pakistan that employ the monitoring program (*id.* at 26); describes the unintended negative consequences of the system in Pakistan (*id.* at 28-29); discusses Ms. Roberts' visits to factories and stitching centers producing Mitre-branded products (*id.* at 30-31); and describes in great detail the training that Pentland employees receive in corporate-responsibility practices and visiting factories concerning many issues, including child labor (*id.* at 54-60). Indeed, counsel for HBO acknowledged, during Ms. Roberts' deposition, that counsel and Ms. Roberts had "talked a lot about the fact that Pentland has policies for minimizing child labor." (*Id.* at 61.) All of this designated 30(b)(6) testimony was timely put before Judge Pitman and erroneously disregarded. Letter from A. Kapoor, Esq., counsel for Mitre, to Hon. H. Pitman, at 4-5 (Nov. 5, 2010) ("Mitre Letter (Nov. 5, 2010)"), discussing HBO Letter (Oct. 29, 2010) at Ex. 12.[2]

---

[2] The only Mitre-branded products manufactured in Meerut during the relevant period were machine-made, extruded-plastic training cones (the orange cones used on soccer fields during practice). Mitre Letter (Nov. 5, 2010), at Ex. E (Hibbert Dep. Tr. 49:25-50:09). And the only Mitre-branded products manufactured in Gurgaon during the relevant period were machine-made, thermally molded soccer balls (Ex. G hereto (Anderson Dep. Tr.) at

7

With respect to topics (5) and (6)—"contracts with manufacturers in India" and "communications with contractors in India and Pakistan," Order, at 6 (Dec. 30, 2014)—Magistrate Judge Pitman again clearly erred in finding that Mitre had not designated 30(b)(6) testimony. On October 19, 2010, Mitre designated Mr. Anderson's testimony concerning Mitre's contract with Soccer International, one of two manufacturers of stitched, Mitre-branded soccer balls in India during the relevant time, pursuant to which Soccer International is contractually obligated "to comply with Mitre Sports International business standards policies." (HBO Letter (Oct. 29, 2010) at Ex. 12 (Ex. F hereto) at 84.) Mitre's designated 30(b)(6) testimony from Mr. Anderson further states that he gave copies of the Pentland Group (which includes Mitre) business-standard policies to Soccer International, that it would be against those policies if any licensed manufacturer of Mitre-branded soccer balls "knew of and did not object to individuals under the age of 14 stitching soccer balls," and that those policies were communicated to the manufacturers' subcontractors "by both the factories and the SGFI" "through extensive programs of education, [trade] shows, leaflets, [and] instructions throughout the Jalandhar area." (*Id.* at 86-87.)

The final topic—"what steps, if any, plaintiff takes with respect to a manufacturer who does not comply with plaintiff's corporate responsibility policies," Order, at 7-8 (Dec. 30, 2014)—has also been addressed by Mitre's designated 30(b)(6) testimony which states that a manufacturer's compliance Mitre's corporate-responsibility policies is a term of the manufacturer's contract with Mitre. *Supra.* A manufacturer violating Mitre's policies would be in breach of its contract with Mitre, giving Mitre the termination rights stated in the contract. (Ex. H hereto (Anderson Dep. Ex. 3) at 12-13.) Beyond that, this topic concerns a hypothetical

---

150) and stitched netballs. None of these products—extruded training cones, thermally molded soccer balls, and netballs—was at issue in HBO's defamatory show about children stitching soccer balls.

8

situation because neither of the two manufacturers of stitched, Mitre-branded soccer balls in India during the relevant period—Soccer International and Mayor & Co.—had failed to comply with Mitre's corporate-responsibility policies with respect to child labor. Soccer International and Mayor & Co. are founding members of the Sports Goods Foundation of India (SGFI) and remained members throughout the relevant period. Soccer International and Mayor & Co., along with other soccer-ball manufacturers in Jalandhar, established the SGFI to register stitchers throughout the Jalandhar area, go house to house looking for instances of adult stitchers giving their children stitching work, stop it, and ensure that the children attended school. (*See* Ex. I hereto (Gupta Dep. Tr.) 42:04-46:02, 47:15-48:10, 49:07-20, 56:25-57:17, 61:22-25, 64:21-65:16, 67:11-14, 67:19-68:12; Ex. J hereto (Mayor Dep. Tr.) 52:15-53:21, 66:23-70:25, 74:12-25; Ex. K hereto (Purewal Dep. Tr.) 34:23-36:06, 72:08-25, 75:17-76:22, 92:21-94:09.) The SGFI continued its work throughout the relevant period, and Soccer International and Mayor & Co. also conducted their own internal monitoring for child labor. (Ex. K (Purewal Dep. Tr.) 34:23-38:06, 44:09-47:12; Ex. I (Gupta Dep. Tr.) 41:06-24, 61:22-25, 62:21-63:02; Ex. J (Mayor Dep. Tr.) 63:19-64:20.) Testimony by Mitre on what it might have done had the SGFI, Soccer International, and Mayor & Co. not complied with Mitre's policies will, by definition, be speculative and inadmissible at trial.

## CONCLUSION

For the foregoing reasons, Magistrate Judge Pitman's Order of December 30, 2014, should be vacated in its entirety.

Dated: January 6, 2015

Respectfully submitted,

CONSTANTINE CANNON LLP

By: /s/ Ankur Kapoor

Lloyd Constantine
Ankur Kapoor
Jean Kim
David Scupp
Matthew Vaccaro
335 Madison Avenue
9th Floor
New York, N.Y. 10017
(212) 350-2700
(212) 350-2701 (fax)

Jason Enzler
1001 Pennsylvania Avenue, N.W.
Suite 1300N
Washington, D.C. 20004
(202) 204-3500
(202) 204-3501 (fax)