UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

MITRE SPORTS INTERNATIONAL          :
LIMITED,
                                    :    08 Civ. 9117 (GBD)(HBP)
                Plaintiff,
                                    :    ORDER
        -against-
                                    :
HOME BOX OFFICE, INC.,
                                    :
                Defendant.
                                    :
----------------------------------X


            PITMAN, United States Magistrate Judge:


            I write to resolve four of the remaining discovery

disputes in this matter.


I.  HBO's Objections to
    the Special Master's
    Decision and Order


            On October 14, 2010, Devin F. Ryan, Esq., the Special

Master in this matter, issued a Decision and Order addressing

certain disputes between the parties concerning matters of

privilege and work product and concluded that each side's motion

to compel should be granted in part and denied in part (Docket

Item 163) (the "Order").  Plaintiff, Mitre Sports International

Limited ("Mitre") has not objected to the Order.  Defendant, Home

Box Office, Inc. ("HBO"), has filed objections to the Order

"insofar as the Order denies HBO's request to compel [Mitre] to produce further deposition testimony from Kam Raghavan and [certain documents]" (Memorandum of Law of Defendant Home Box Office, Inc. in Support of Its Objection to the Special Master's October 14, 2010 Order, dated November 4, 2010 (Docket Item 169) ("HBO's Mem.") at 1).  After reviewing the relevant portions of the Order de novo, see Fed.R.Civ.P. 53(f)(3)-(4), HBO's objections are overruled.

The reader's familiarity with Special Master Ryan's Order and the Opinion and Order of the Honorable George B. Daniels, United States District Judge, resolving the parties' motions for summary judgment, Mitre Sports Int'l Ltd. v. Home Box Office, Inc., 22 F. Supp. 3d 240 (S.D.N.Y. 2014), is assumed. HBO's objections concern Mitre's assertion of the work-product doctrine and the United Kingdom's litigation privilege in response to document requests and deposition questions concerning Mitre's investigation of the subject matter of a segment distributed by HBO which asserted that Mitre used child labor to stitch soccer balls (the "Segment").  HBO does not argue that documents and testimony are not protected by the work-product doctrine, nor does it claim the doctrine should be pierced because it has substantial need for the material.  Rather, HBO argues that Mitre waived work-product protection by (1) permitting James Boocock to

2

testify to certain matters concerning Mitre's investigation and designating that testimony as its 30(b)(6) testimony and (2) by attaching the products of its investigation to its complaint (HBO Mem. at 2). HBO concedes that a decision adverse to it on the issue of waiver renders its other arguments moot (see Reply Memorandum of Law of Defendant Home Box Office, Inc. in Further Support of Its Objection to the Special Master's October 14, 2010 Order, dated November 18, 2010 (Docket Item 171) ("HBO's Reply") at 2 n.3).

Although I reach the same result as the Special Master, I do so by a slightly different (but closely parallel) route.

HBO first argues that Boocock's testimony concerning his investigation of the allegations in the Segment operates as a subject-matter waiver of any privilege that Mitre may have otherwise had with respect to its investigation. For purposes of the discussion herein, I assume that Boocock's testimony concerning the investigative steps he took and the content of the statements made to him in interviews did disclose material protected by the work-product doctrine. See generally GenOn Mid-Atlantic, LLC v. Stone & Webster, Inc., 11 Civ. 1299 (HB)(FM), 2011 WL 5439046 at *6 (S.D.N.Y. Nov. 10, 2011) (Maas, M.J.) ("[T]he work product privilege extends beyond documents prepared by counsel and includes those prepared by a client in

3

the course of preparation for possible litigation."); Sec. &
Exch. Comm'n v. Strauss, 09 Civ. 4150 (RMB)(HBP), 2009 WL 3459204
at *6 (S.D.N.Y. Oct. 28, 2009) (Pitman, M.J.).

Although the Special Master did not rely on it,
Fed.R.Evid. 502(a) addresses the precise issue of when a partial
disclosure of protected information results in a waiver of
undisclosed information.

> The following provisions apply, in the circumstances
> set out, to disclosure of a communication or informa-
> tion covered by the attorney-client privilege or
> work-product protection.
>
> **(a)  Disclosure Made in a Federal Proceeding or to
> a Federal Office or Agency; Scope of a Waiver.**
> When the disclosure is made in a federal proceed-
> ing or to a federal office or agency and waives
> the attorney-client privilege or work-product
> protection, the waiver extends to an undisclosed
> communication or information in a federal or state
> proceeding only if:
>
> > **(1)** the waiver is intentional;
> >
> > **(2)** the disclosed and undisclosed communica-
> > tions or information concern the same subject
> > matter; and
> >
> > **(3)** they ought in fairness to be considered
> > together.[1]

The critical issue here is whether the third element of
Rule 502(a) is present, to wit, whether fairness requires the

---

[1]Rule 502 was enacted on September 19, 2008, approximately
one month before this action was commenced.  See Pub. L. No. 110-
32, § 1, 122 Stat. 3537-38 (2008).

disclosure of additional information.  The Advisory Committee

notes and the extant case law teach that the answer to this

question is "no."

The Advisory Committee notes to Rule 502 provide, in

pertinent part:

> The rule provides that a voluntary disclosure in a
> federal proceeding or to a federal office or agency, if
> a waiver, generally results in a waiver only of the
> communication or information disclosed; <u>a subject
> matter waiver (of either privilege or work product) is
> reserved for those unusual situations in which fairness
> requires a further disclosure of related, protected
> information, in order to prevent a selective and mis-
> leading presentation of evidence to the disadvantage of
> the adversary</u>.  <u>See</u>, <u>e</u>.<u>g</u>., <u>In re United Mine Workers of
> America Employee Benefit Plans Litig</u>., 159 F.R.D. 307,
> 312 (D.D.C. 1994) (waiver of work product limited to
> materials actually disclosed, because the party did not
> deliberately disclose documents in an attempt to gain a
> tactical advantage).  <u>Thus, subject matter waiver is
> limited to situations in which a party intentionally
> puts protected information into the litigation in a
> selective, misleading and unfair manner</u>.  It follows
> that an inadvertent disclosure of protected information
> can never result in a subject matter waiver. See Rule
> 502(b).  The rule rejects the result in <u>In re Sealed
> Case</u>, 877 F.2d 976 (D.C. Cir. 1989), which held that
> inadvertent disclosure of documents during discovery
> automatically constituted a subject matter waiver.

(emphasis added).

As Magistrate Judge Francis explained in <u>Freedman v.

Weatherford Int'l Ltd.</u>, 12 Civ. 2121 (LAK)(JCF), 2014 WL 3767034

at *3 (S.D.N.Y. July 25, 2014):

> Subject matter waiver is reserved for the rare
> case where a party either places privileged information

> affirmatively at issue, or attempts to use privileged
> information as both a sword and a shield in litigation.
> Favors v. Cuomo, 285 F.R.D. 187, 198-99 (E.D.N.Y.
> 2012); Shinnecock Indian Nation v. Kempthorne, 652 F.
> Supp. 2d 345, 365-66 (E.D.N.Y. 2009) (collecting
> cases). Both attorney-client privilege and work prod-
> uct protection may be waived on a subject-matter basis.
> See Favors, 285 F.R.D. at 200. Subject matter waiver
> is justified "when a party uses an assertion of fact to
> influence the decisionmaker while denying its adversary
> access to privileged materials potentially capable of
> rebutting the assertion." In re County of Erie, 546
> F.3d 222, 229 (2d Cir. 2008) (internal quotation marks
> omitted). This is necessary in order to "void preju-
> dice to the adversary party and 'distortion of the
> judicial process' that may result from selective dis-
> closure." Robbins & Myers, Inc. v. J.M. Huber Corp.,
> 274 F.R.D. 63, 94-95 (W.D.N.Y.2011) (quoting In re von
> Bulow, 828 F.2d 94, 101 (2d Cir. 1987)); see also
> United States v. Treacy, No. S208 CR 366, 2009 WL
> 812033, *3 (S.D.N.Y. March 24, 2009) (subject-matter
> waiver of attorney-client privilege necessary "in order
> to prevent a selective and misleading presentation of
> evidence to the disadvantage of the adversary").

(Emphasis added). See also Shinnecock Indian Nation v.

Kempthorne, 652 F. Supp. 2d 345, 365-67 (E.D.N.Y. 2009); Falise

v. Am. Tobacco Co., 193 F.R.D. 73, 85 (E.D.N.Y. 2000) (Weinstein,

D.J., affirming Gold, M.J.).

Boocock's answering HBO's deposition questions did not

put Mitre's investigation in issue for the simple reason that

providing such testimony was not an attempt by Mitre to use

protected information to influence a decision maker. In many

cases, the vast majority of deposition testimony taken in discov-

ery is never put before any decision maker; frequently, only a

small fraction of the deposition testimony taken in a case is cited in connection with a summary judgment motion or offered at trial. Thus, the mere fact that a party makes a partial disclosure of privileged or protected information in a deposition does not result in a subject-matter waiver because there is no use of the testimony by the party holding the privilege. In re Sims, 534 F.3d 117, 141 (2d Cir. 2008) ("Given that Sims cannot introduce any of his own deposition testimony at trial . . . Sim's deposition testimony does not place respondents in a disadvantageous position at trial."); see also Swift Spindrift, Ltd. v. Alvada Ins., Inc., 09 Civ. 9342 (AJN)(FM), 2013 WL 3815970 at *5-*6 (S.D.N.Y. July 24, 2013) (Maas, M.J.) (disclosure of privileged material in discovery, without more, does not result a subject-matter waiver).

The principal cases cited by HBO in support of its waiver argument are either factually distinguishable or rely on a waiver theory that Fed.R.Evid. 502 expressly rejects. For example, in In re Steinhardt Partners L.P., 9 F.3d 230, 235 (2d Cir. 1993), the party asserting work-product protection had produced the material in dispute to the Securities and Exchange Commission in order to persuade it that no violation of the securities laws had occurred. Similarly, in United States v. Nobles, 422 U.S. 225, 239 (1975), the Court found that an inves-

tigator's testimony at trial operated as a waiver of work-product protection.  In contrast, Mitre has not used Boocock's testimony in an effort to influence a decision maker.  <u>Bowne of New York City, Inc. v. AmBase Corp.</u>, 150 F.R.D. 465, 485 (S.D.N.Y. 1993) (Dolinger, M.J.), relied in part on the broad, subject-matter waiver theory that was endorsed in <u>In re Sealed Case</u>, 877 F.2d 976 (D.C. Cir. 1989), and that drafters of Rule 502 rejected.  <u>See</u> <u>Falise v. Am. Tobacco Co.</u>, <u>supra</u>, 193 F.R.D. at 85 ("[S]ince <u>Bowne</u>, courts in this Circuit have addressed claims of subject matter waiver a number of times and have consistently examined the issue in light of . . . fairness concerns . . . .").  Finally, <u>Fullerton v. Prudential Ins. Co.</u>, 194 F.R.D. 100 (S.D.N.Y. 2000) (McMahon, D.J.), predates Rule 502, and its discussion of the scope of a waiver resulting from the partial production of work-product materials appears to be inconsistent with the terms of Rule 502.

HBO's second argument concerning Boocock's testimony -- that Mitre has made affirmative use of the testimony by designating portions as Mitre's 30(b)(6) testimony does not alter this result.  The authorities cited above teach that the critical inquiry is whether protected information has been partially disclosed to a decision maker in an effort to influence a decision.  A party's deposition testimony, whether from an individual

witness or a 30(b)(6) witness, does not constitute such a use. Although HBO argues that Mitre is trying to utilize the work-product doctrine as both a sword and a shield, it has not cited any instance in which Mitre affirmatively used Boocock's testimony and has not, therefore, established Mitre's use of the work-product doctrine as a sword.[2]

Similarly, Mitre's attaching the products of its investigation to its complaint did not put its investigation in issue.

Mitre's investigation is not relevant to any of the issues in this action, and cannot, therefore, be in issue in this action.  Judge Daniels' decision denying HBO's motion for summary judgment identified three issues of fact remaining in this matter:  (1) whether the Segment was subject to defamatory meaning, (2) whether the Segment was substantially true and (3) whether HBO was grossly irresponsible in producing the Segment. Mitre Sports Int'l Ltd. v. Home Box Office, Inc., supra, 22 F. Supp. 3d at 254-56.  Mitre's efforts to investigate the allegations in the Segment does not illuminate any of these issues.

---

[2]I am aware that subsequent to Boocock's deposition, the parties have submitted voluminous materials in connection with their motions for summary judgment.  However, HBO does not cite any instances in which Mitre has made any affirmative use of Boocock's testimony in connection with these motions.

9

Whether Mitre's investigation was performed in a competent or improper manner does not clarify the meaning of the Segment, the truthfulness of the Segment or the nature of the investigation HBO performed before disseminating the Segment.  If, for example, the portions of the Segment suggesting that young children stitched Mitre soccer balls was staged by the Segment's producers, no deficiencies in Mitre's investigation could alter that fact or its impact on the outcome of the case.  Conversely, if the Segment's producers were advised by multiple, reliable sources that young children did stitch Mitre soccer balls and young children were, in fact, stitching Mitre soccer balls, no amount of diligence in Mitre's investigation could result in HBO's liability.  Because the nature of Mitre's investigation is irrelevant to the issues in the case, it would be impossible for Mitre to put the nature of its investigation in issue.

HBO argues that Mitre's investigation is in issue because HBO believes that Mitre will use the fact that it advised HBO of the results of the investigation prior to the distribution of the Segment in an effort to establish actual malice on the part of HBO (HBO's Reply at 1).  Whatever traction this argument may have formerly had was lost after Judge Daniels' decision on the parties' summary judgment motions.  Judge Daniels granted Mitre partial summary judgment, finding that it was not a public

10

figure.  Mitre Sports Int'l Ltd. v. Home Box Office, Inc., supra, 22 F. Supp. 3d at 256.  Because Mitre is not a public figure, actual malice is not an element of its defamation claim.  Nelson v. Globe Int'l, Inc., 626 F. Supp. 969, 980 (S.D.N.Y. 1986) (Goettel, D.J.); see Biro v. Conde Nast, 963 F. Supp. 2d 255, 276 (S.D.N.Y. 2013) (Oetken, D.J.).  Thus, there is no issue of actual malice in this action.

The Special Master correctly observed that there is a distinction between the results of the investigation and the investigation itself and that reliance on the facts learned in the investigation, when offered from a source other than the investigator, does not put the investigation in issue.  See Robinson v. Time Warner, Inc., 187 F.R.D. 144, 146-47 (S.D.N.Y. 1999) (Sweet, D.J.).  The nature of a party's investigation is most frequently in issue in certain employment discrimination actions.  An employer confronted with a claim of a hostile work environment may be able to escape liability if it can show "(a) that the employer exercised reasonable care to prevent and correct promptly any . . . harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."  Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998); accord Faragher v. City of

Boca Raton, 524 U.S. 775, 807 (1998).  When an employer asserts the so-called Faragher/Ellerth defense, the adequacy of its investigation is relevant to the issue of the adequacy of its corrective actions.  In this case, however, the adequacy of plaintiff's investigation simply has no relationship to any of the issues in the case.

In support of that aspect of its waiver argument that is predicated on the complaint, HBO relies on Duran v. Andrew, Misc. No. 09-730 (HHK/AK), 2010 WL 1418344 (D.D.C. Apr. 5, 2010). Duran appears to have little relevance to the facts of this matter.  In Duran, the investigation in issue was performed at the direction of a non-party.  The plaintiff touted the results of the investigation as proof that the allegedly defamatory statements in issue were false, and the court found that defendant had established substantial need for the materials in issue. 2010 WL 1418344 at *6-*7.  In this case, although plaintiff relies on the facts gathered during its investigation as proof for its position, it does not rely on the fact of the investigation as proof of its position.

Although Mitre's attaching the products of its investigation to its complaint seems to have been done more for public

relations reasons than legal reasons,[3] Mitre's pleading does not put the investigation in issue.  The complaint is not evidence, and Mitre cannot offer it as such.  <u>Capital One Nat'l Ass'n v. 48-52 Franklin, LLC</u>, 12 Civ. 3366 (LGS), 2014 WL 1386609 at *9 (S.D.N.Y. Apr. 8, 2014) (Schofield, D.J.); <u>Butler v. Coca-Cola Refreshments USA, Inc.</u>, 12 Civ. 1791 (BMC), 2013 WL 3324995 at *2 n.2 (E.D.N.Y. July 1, 2013); <u>Newton v. City of New York</u>, 640 F. Supp. 2d 426, 448 (S.D.N.Y. 2009) (Scheindlin, D.J.).  Thus, the complaint does not constitute a testimonial use of either the investigation or the products of the investigation and does not put the investigation in issue.

Finally, the individuals whose statements appear in the complaint were deposed by the parties in India (Declaration of Jason Enzler, Esq., dated November 11, 2010, ¶¶ 16, 19).  To the extent these individuals' statements will be used at trial, the source will be the deposition testimony and not the statements annexed to or contained in the complaint.  Thus, it does not

---

[3] "[A] complainant is not required to plead evidence." <u>Schlick v. Penn-Dixie Cement Corp.</u>, 507 F.2d 374, 379 (2d Cir. 1974), <u>overruled</u> <u>on</u> <u>other</u> <u>grounds</u>, <u>Virginia Bankshares, Inc. v. Sandberg</u>, 501 U.S. 1083 (1991); <u>accord</u> <u>In re Sterling Foster & Co. Sec. Litig.</u>, 222 F. Supp. 2d 216, 280 (E.D.N.Y. 2002); <u>In re Blech Sec. Litig.</u>, 928 F. Supp. 1279, 1290 (S.D.N.Y. 1996) (Sweet, D.J.).

appear that either side will be able to make use of the hearsay statements attached to the complaint.

Accordingly, for all the foregoing reasons, HBO's objections to the Special Master's Decision and Order are over-ruled.

## II.   Location of the Continued Raghavan Deposition

HBO appears to move to compel Mitre to produce Kam Raghavan in the District for the continuation of her deposition.[4] The motion arises out of a stipulation between the parties pursuant to which HBO cut short its questioning of Raghavan in order to allow her to take a certain flight back to India in return for Mitre's agreement to produce her in New York if the continuation of her deposition was necessary.

In light of the ruling in the preceding section, it is not clear that HBO still has additional questions it can pose to

---

[4]HBO's letter concerning this issue appears to be inconsistent as to whether HBO is seeking this relief.  At page one, the letter states, "HBO is not making a motion to compel Ms. Raghavan to appear for a deposition in New York.  HBO is, instead, only responding to [Mitre's] statement that it will not live up to its agreement . . . ."  At page two of the same letter, HBO states, "Mitre should be compelled to follow through on its own representation made on December 16, 2009, and bring Ms. Raghavan back to New York to continue her deposition" (Letter from Katherine M. Bolger, Esq. to the undersigned, dated October 20, 2010, at 1, 2).

Raghavan, and, if so, how much time HBO needs to pose those additional questions.  Although I agree that Mitre is bound by its stipulation to produce Raghavan in New York for the continuation of her deposition,[5] common sense teaches that it would be irrational to compel an individual to travel halfway around the world for what may be one half hour of questioning.

I conclude that unless HBO has more than five hours of additional questioning for Raghavan, her deposition should be continued via video link, the cost of which is to be borne by Mitre.  IF HBO has more than five hours of relevant, non-repetitive questions, Mitre is directed to produce her in New York for the continuation of her deposition.

III.  Mitre's Application to
      Compel Further Responses to
      Its Sixth Set of Interrogatories

Mitre seeks to compel further answers to its Sixth Set of Interrogatories.

---

[5]Mitre claims that HBO has failed to negotiate in good faith with respect to the continuation of the Raghavan deposition and that that failure relieves Mitre of its obligation to produce Raghavan in New York.  The only evidence of bad faith cited by Mitre is HBO's alleged insistence that Raghavan's deposition be continued before the Special Master issued his decision.  Given the aggressive positions both sides have taken in discovery, Mitre has not established bad faith on the part of HBO.

Mitre's Sixth Set of Interrogatories consists of two questions and seeks information concerning where, when and how HBO acquired certain soccer balls that were depicted in the Segment and what efforts, if any, HBO took to ensure that the balls were not counterfeit.  HBO objected to the interrogatories on the ground that they violated Local Civil Rule 33.3 and were defective in several other respects.  Nevertheless, HBO provided substantial information in response to the interrogatories.

Local Civil Rule 33.3 provides:

> (a) Unless otherwise ordered by the Court, at the commencement of discovery, interrogatories will be restricted to those seeking names of witnesses with knowledge of information relevant to the subject matter of the action, the computation of each category of damage alleged, and the existence, custodian, location and general description of relevant documents, includ-ing pertinent insurance agreements, and other physical evidence, or information of a similar nature.

> (b) During discovery, interrogatories other than those seeking information described in paragraph (a) above may only be served (1) if they are a more practi-cal method of obtaining the information sought than a request for production or a deposition, or (2) if ordered by the Court.

> (c) At the conclusion of other discovery, and at least 30 days prior to the discovery cut-off date, interrogatories seeking the claims and contentions of the opposing party may be served unless the Court has ordered otherwise.

The interrogatories in issue clearly go beyond the scope of subparagraph (a), and Mitre does not claim they are

contention interrogatories within the meaning of subparagraph (c).  Mitre's only justification for the interrogatories is that they are a more practical method of obtaining the information in issue.

The parties framed the issue with respect to Mitre's Sixth Set of Interrogatories in three letters:  (1) the letter of Ross Fisher, Esq., dated January 7, 2011, (2) the letter of Slade R. Metcalf, Esq., dated January 13, 2011 and (3) the letter of Jean Kim, Esq., dated January 24, 2011.  Mitre's argument that the interrogatories are a more efficient method of obtaining the information was first raised in its reply letter, and is, therefore, not properly asserted.  "This Circuit has made clear it disfavors new issues being raised in reply papers." Rowley v. City of New York, 00 Civ. 1793 (DAB), 2005 WL 2429514 at *5 (S.D.N.Y. Sept. 30, 2005) (Batts, D.J.), citing Keefe v. Shalala, 71 F.3d 1060, 1066 n.2 (2d Cir. 1995), Knipe v. Skinner, 999 F.2d 708, 711 (2d Cir. 1993), Nat'l Labor Relations Bd. v. Star Color Plate Serv., 843 F.2d 1507, 1510 n.3 (2d Cir. 1988), United States v. Letscher, 83 F. Supp. 2d 367, 377 (S.D.N.Y. 1999) (Koeltl, D.J.), Domino Media, Inc. v. Kranis, 9 F. Supp. 2d 374, 387 (S.D.N.Y. 1998) (Kaplan, D.J.) and Playboy Enters., Inc. v. Dumas, 960 F. Supp. 710, 720 (S.D.N.Y. 1997) (Kaplan, D.J.).

Moreover, HBO did not merely object to the interrogatories; rather, it provided substantial information concerning where the balls were purchased and the steps taken to ensure that the balls were not counterfeit.  Although the information given in the interrogatory answers was not specific as to each of the 27 balls HBO purchased, the interrogatory answers did refer, by serial number, to 106 documents and two DVDs produced by HBO which purport to contain relevant information.  Mitre does not address whether those documents contain the information it now seeks.

In addition, Mitre has not demonstrated that interrogatories are a more practical method of obtaining the information. Interrogatories are frequently found to be a more practical discovery device when the inquiring party seeks information about numerous, specific transactions that do not require narrative answers.  For example, in In re Weatherford Int'l Sec. Litig., 11 Civ. 1646 (LAK)(JCF), 2013 WL 5788680 (S.D.N.Y. Oct. 28, 2013) (Francis, M.J.), interrogatories were found to be a more practical discovery tool where the inquiring party sought, for a five-year period, (1) the dates of numerous original accounting entries and adjustments, (2) the names of the persons who were involved in or reviewed the original entries and adjustments, (3) the amount of each original entry and adjustment and (4) the

18

effect of each adjustment on the corporation's tax expenses.
2013 WL 5788680 at *3.  In that case, Magistrate Judge Francis
found that interrogatories were a more practical vehicle with
respect to the first three categories of information because (1)
the interrogatories could be answered with short simple responses
and did not require long, narrative explanations and (2) it was
unlikely that a witness could reliably retain information con-
cerning the details of a large number of financial transactions
occurring over five years.  2013 WL 5788680 at *3; see also
E*Trade Fin. Corp. v. Deutsche Bank, AG, 05 Civ. 902 (RWS), 2006
WL 3267267 at *1 (S.D.N.Y. Nov. 13, 2006) (Sweet, D.J.) (inter-
rogatories are more practical where information can be provided
by short, simple responses and the interrogatories do not require
long narrative responses).

  Although the transactions in issue here -- a maximum of
27[6] -- is not de minimis, it is not so large that a witness
cannot reliably recall the detains of the transactions.  In
addition, inquiry into the steps taken by HBO to ensure that the
balls it purchased were not counterfeit does require narrative
answers.  Thus, Mitre has not shown that interrogatories are a
more practical method of obtaining the information in issue.

---

  [6]If HBO purchased multiple balls in a single transaction,
there would be fewer than 27 transactions.

IV.   HBO's Application to
      Preclude HBO from Using
      the Cottingham Declaration

        Mitre also moves to preclude HBO from using the decla-
ration of Martin Cottingham and the exhibits annexed thereto.  To
the extent this relief is sought pursuant to Fed.R.Civ.P.
37(c)(1), the motion is denied.  This does not, of course,
constitute a ruling that the Cottingham declaration is admissi-
ble.

        At the outset, I note that it is not clear that this
dispute is still a live controversy.  The Cottingham declaration
deals exclusively with facts occurring in or before 1997 and
appears to be relevant only to the issue of whether Mitre is a
public figure.  Because Judge Daniels has granted summary judg-
ment in favor of Mitre on this issue and has held that Mitre is
not a public figure,[7] it's not clear whether the Cottingham
declaration relates to any factual matter that is still in issue.
Nevertheless, I shall address the merits of the dispute on the
assumption that HBO will attempt to use the Cottingham declara-
tion for some other purpose.

_____

        [7]Judge Daniels' decision does not rely on or even cite the
Cottingham declaration.

20

According to his declaration, Cottingham is a writer who formerly worked for an entity named Christian Aid.  As part of his duties for Christian Aid, Cottingham investigated the use of child labor in the manufacture of sporting goods in India and Pakistan and authored an article on the subject in 1997; the article mentions Mitre and other manufacturers of sporting goods. Cottingham also participated in the production of two videos for Christian Aid dealing with the same subjects.  Cottingham's declaration indicates that his most recent involvement with the subject of child labor occurred in 1997 -- nine years before the Segment was broadcast.

Mitre seeks to bar the use of the Cottingham declaration pursuant to Fed.R.Civ.P. 37(c)(1) on the ground that HBO did not disclose Cottingham as a potential witness in its disclosures pursuant to Fed.R.Civ.P. 26(a)(1).  There is no dispute that HBO did not list Cottingham in its 26(a)(1) disclosures or in any formal supplementation of its 26(a)(1) disclosure.  Relying on Fed.R.Civ.P. 26(e)(1)(A),[8] HBO argues that its identification of

---

[8] Rule 26(e)(1)(A) provides:

> (e) **Supplementing Disclosures and Responses.**
>
> > **(1) In General.**  A party who has made a disclosure under Rule 26(a) -- or who has responded to an interrogatory, request for production, or request
> > (continued...)

Cottingham as a potential witness in discovery obviated the need for a more formal supplementation.  Specifically, HBO notes that Cottingham was identified in a Request for International Judicial Assistance Pursuant to the Hague Convention that was served and submitted to Judge Daniels in August 2009 (the "Hague Request"). The Hague Request contains an Appendix entitled "List of Individuals to Be Examined and the Subject Matter of the Information to be Provided."  The Appendix lists Cottingham, provides his address and telephone numbers and contains the following description of the subject matter of his proposed testimony:

> Mr. Cottingham will provide information regarding the Christian Aid report published in or about 1997, authored by Mr. Cottingham, that exposed the use of child labor by Mayor and Company.  Mr. Cottingham will also provide information on his interview with AP Television News in 1997 regarding the use of child labor to stitch soccer balls in which he stated "Christian Aid believes that companies like Umbro and Mitre and Adidas are big enough to be able to pay decent wages and offer security of employment to adults in India so that fewer parents are pressurized into putting their children to work."

---

[8](...continued)

> for admission -- must supplement or correct its disclosure or response:
>
>> **(A)** in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . .

(Letter to from R. Brian Black, Esq. to the undersigned, dated
March 18, 2011, Ex. 1, app. A at 1).  Despite Judge Daniels'
signing the Hague Request, Cottingham's deposition was never
taken.  HBO also relies on its having submitted Cottingham's
report as an exhibit in support of a motion HBO filed for partial
summary judgment in August 2009 as eliminating the need for
formal supplementation of its 26(a)(1) disclosures (Declaration
of Katherine M. Bolger, Esq., dated August 28, 2009 (Docket Item
47) ("Bolger Declaration"), Ex. X).

     In reply, Mitre argues that the reference to Cottingham
in the Hague request was insufficient supplementation.

     I conclude that HBO should not be precluded from using
Cottingham's declaration based on its failure to identify him in
a formal Rule 26(a)(1) disclosure.  Although the Court of Appeals
has not identified the nature of the informal supplementation
that is sufficient to satisfy Rule 26(a)(1) and (e)(1)(A), it has
unequivocally held that preclusion as a result of a Rule 26(a)
violation is not automatic, Design Strategy, Inc. v. Davis, 469
F.3d 284, 297-98 (2d Cir. 2006), and that preclusion is a "harsh
remed[y] [that] should be imposed only in rare situations,"
Update Art, Inc. v. Modiin Pub., Ltd., 843 F.2d 67, 71 (2d Cir.
1988).  I conclude that Cottingham was sufficiently disclosed in
the Hague Request and the Bolger Declaration that there was no

need for HBO to serve a formal supplement to its Rule 26(a)(1)
disclosures.  Although the Hague Request was not denominated as a
supplement to HBO's Rule 26(a)(1) disclosures, it literally
provided all the information required by Rule 26(a)(1)(A)(i).[9]
The fact that this information was disclosed in a Hague Request
submitted by HBO and the additional fact that HBO had submitted
Cottingham's article in support of its motion for summary judg-
ment were clear indications that HBO had an interest in calling
Cottingham as a witness.  To require more comes close to exalting
form over substance.

　　　The case on which Mitre places its principal reliance
-- Fleming v. Verizon New York Inc., 03 Civ. 5639 (WHP), 2006 WL
2709766 at *8-*9 (S.D.N.Y. Sept. 22, 2006) (Pauley, D.J.) -- is
factually distinguishable.  The issue in Fleming was whether the
affidavits of four witnesses who had not been identified in
plaintiff's 26(a)(1) disclosures could be considered in connec-
tion with defendant's motion for summary judgment.  It appears
that two of the witnesses had never been identified in any manner
and that the remaining two were merely mentioned at a deposi-

---

[9]Rule 26(a)(1)(A)(i) requires disclosure off "the name and,
if known, the address and telephone number of each individual
likely to have discoverable information -- along with the
subjects of that information -- that the disclosing party may use
to support its claims or defenses, unless the use would be solely
for impeachment . . . ."

tion.[10]  As noted above, the Hague Request provided far more
information about Cottingham than the plaintiff provided about
the witnesses in Fleming; the Hague Request in this case provided
everything that Rule 26(a)(1) requires.

Finally, in the eight years since Fleming was decided,
a number of judges and commentators have held that identification
of potential witnesses through deposition testimony obviates the
need for a formal supplementation to Rule 26(a)(1) disclosures.
White v. City of Middletown, 3:11-CV-00747 (CSH), 2014 WL 4437721
at *8 (D. Conn. Sept. 9, 2014) (Haight, D.J.); BanxCorp v. Costco
Wholesale Corp., 978 F. Supp. 2d 280, 323 (S.D.N.Y. 2013) (Karas,
D.J.); Lujan v. Cabana Mgmt., Inc., 284 F.R.D. 50, 73 (E.D.N.Y.
2012); Marvel Worldwide, Inc. v. Kirby, 777 F. Supp. 2d 720, 727
(S.D.N.Y. 2011) (McMahon, D.J.), aff'd in part, vacated in part

---

[10]It appears that very little information was provided
concerning these two witnesses at plaintiff's deposition:

> Similarly, this Court finds unpersuasive Fleming's
> argument that, because the declarants were all Verizon
> employees and she mentioned two of their names at her
> deposition, Defendant could have deposed them at any
> time.  Verizon is a large corporation with thousands of
> employees, and Fleming admits that several of the
> declarants did not even work directly with her. (Mar. 1
> Tr., at 6.)  Absent the disclosure of the declarants'
> identities under Rule 26(a), it would be unreasonable
> to expect Verizon to depose them.

1006 WL 2709766 at *9.

on other grounds, 726 F.3d 119 (2d Cir. 2013), cert. dismissed, 135 S. Ct. 42 (2014); 8A Charles A. Wright, Arthur R. Miller, Richard L. Marcus, Federal Practice & Procedure § 2049.1 at 313 (3rd ed. 2010).  Thus, Fleming may be limited to its specific facts.

Although I conclude that HBO is not precluded by Rule 37(c)(1) from using the Cottingham declaration, I am not ruling on its admissibility.  In addition to a serious question concerning its relevance, it is hearsay and appears to contain hearsay within hearsay.  I express no opinion whether the declaration or the attachments thereto will be admissible at trial.

V.  Summary

Accordingly, for all the foregoing reasons, (1) HBO's objections to the Special Master's Decision and Order are overruled; (2) HBO's application to compel Mitre to produced Kam Raghavan in the District for the continuation of her deposition is denied unless HBO has more than five hours of questioning for Raghavan; if HBO has less than five hours of questions for Raghavan Mitre is to make her available for deposition via video link at Mitre's expense; (3) Mitre's application to compel further response to it Sixth Set of Interrogatories is denied and

(4) Mitre's application to preclude HBO from using the Cottingham

declaration is denied.

Dated:   New York, New York
         January 13, 2015

                              SO ORDERED

                              _____
                              HENRY PITMAN
                              United States Magistrate Judge

Copies transmitted to:

Lloyd E. Constantine, Esq.
Jean Kim, Esq.
Ankur Kapoor, Esq.
Samuel H. Rikkers, Esq.
David A. Scupp, Esq,
Constantine Cannon, LLP
9th Floor
335 Madison Avenue
New York, New York   10017

Jason J. Enzler, Esq.
Constantine Cannon, LLP
10th Floor
1627 Eye Street, N.W.
Washington, D.C.   20006

Namita Chadha, Esq.
Chadha & Company
S-237, Greater Kailasha II
New Delhi, India   110 048
India

Adam J. Podoll, Esq.
Allison B. Jones, Esq.
Dane H. Butswinkas, Esq.
Kevin T. Baine, Esq.
Nicholas G. Ganse, Esq.
Masha Hansford, Esq.
Thomas G. Hentoff, Esq.
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005

Stephanie S. Abrutyn, Esq.
Home Box Office, Inc.
Litigation Department
9th Floor
1100 Avenue of the Americas
New York, New York  10036

Robert L. Begleiter, Esq.
Schlam Stone & Dolan LLP
26 Broadway
New York, New York  10004

Katherine M. Bolger, Esq.
Levine Sullivan Koch & Schulz, LLP
Suite 1000
321 West 44th Street
New York, New York  10036