UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MITRE SPORTS INTERNATIONAL LIMITED,<br><br>        Plaintiff,<br><br>  v.<br><br>HOME BOX OFFICE, INC.,<br><br>        Defendant. | **Case No. 08-cv-9117 (GBD)(HBP)**<br><br>ECF Case |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO QUASH TRIAL SUBPOENA OF HBO CHAIRMAN AND CEO RICHARD PLEPLER**

Kevin T. Baine
Dane H. Butswinkas
Thomas G. Hentoff
Allison B. Jones
A. Joshua Podoll
Nicholas G. Gamse
Masha G. Hansford
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC  20005
Tel: (202) 434-5000
Fax: (202) 434-5029
kbaine@wc.com

Of Counsel:
Stephanie S. Abrutyn
Home Box Office, Inc.
1100 Avenue of the Americas
New York, NY  10036
Tel: (212) 512-5610

*Attorneys for Defendant,*
*Home Box Office, Inc.*

Plaintiff, Mitre Sports International Limited ("Mitre"), has served Defendant, Home Box Office, Inc. ("HBO"), with a subpoena for the trial testimony of Richard Plepler.  Pursuant to Rule 45(d)(3) of the Federal Rules of Civil Procedure, HBO respectfully submits this memorandum of law in support of its motion to quash the subpoena.

Mr. Plepler is the Chairman and Chief Executive Officer of HBO.  In 2008, when the "Children of Industry" report was produced and distributed, he was the co-president of HBO.  Mr. Plepler has no unique personal knowledge of any facts relevant to the trial of this case.  Mitre neither took Mr. Plepler's deposition during discovery nor sought to take it.  In response to HBO's inquiries, Mitre has failed to identify any relevant issue as to which Mr. Plepler has any unique personal knowledge.

Courts commonly quash subpoenas directed to high-level executives who lack any unique personal knowledge relevant to a lawsuit's claims or defenses.  Requiring Mr. Plepler to testify would subject him and HBO to an undue burden and would serve no purpose other than harassment.  Mitre's subpoena of Mr. Plepler should be quashed.

## BACKGROUND

Mitre alleges that it was defamed by statements in "Children of Industry," a report that was part of an episode of *Real Sports with Bryant Gumbel* that premiered on September 16, 2008 ("the Report").  At the time the Report was produced and distributed, Mr. Plepler was one of three co-presidents of HBO.  As co-president, Mr. Plepler was the executive ultimately in charge of all of HBO's programming, with responsibilities including oversight of the development of all of HBO's original dramas and comedy series, original films, and special event programming.  *See* Ex. A (Declaration of Richard Plepler) ¶ 3.  Michael Lombardo, President, Programming Group & West Coast Operations, reported to Mr. Plepler, and Ross Greenburg, President of

HBO Sports, reported to Mr. Lombardo.  Ex. B (Greenburg Dep. Tr. 44:7-45:24).  Mr. Plepler's duties at the time also included overseeing the Media Relations and Corporate Communications departments at HBO.  *See* Ex. A ¶ 4.

Mr. Plepler had no responsibility for, or involvement in, the production of the Report or HBO's response to Mitre's complaints about the Report prior to the filing of this lawsuit.  *See* Ex. A ¶ 3.

In 2008, responsibility for the production of segments of *Real Sports with Bryant Gumbel* primarily rested with Senior Producer Kirby Bradley, who reported to HBO senior vice president and executive producer of HBO Sports, Richard Bernstein, and the president of HBO Sports, Ross Greenburg.  *See* Ex. C (4/8/11 Declaration of Richard Bernstein ¶¶ 3-5).  The individuals primarily responsible for the research for and production of "Children of Industry" were producer Joseph Perskie, correspondent Bernard Goldberg, and associate producer Zehra Mamdani.  *See* Ex. D (4/13/11 Declaration of Joseph Perskie ¶¶ 6, 9-12, 19, 63).

HBO employees involved in the response to Mitre's September 16, 2008 complaints about the Report included President of Film Programming and Executive Vice President of Business Affairs Bruce Grivetti, Deputy General Counsel and Senior Vice President Eve Konstan, and Vice President and Senior Counsel Stephanie Abrutyn.  *See* Ex. E (4/8/11 Declaration of Bruce Grivetti ¶¶ 7-9); Ex. F (Abrutyn Dep. Tr. 32:23-34:9).

Mitre deposed all nine of these individuals during discovery, and a number of other HBO employees, and none of them indicated that Mr. Plepler had any responsibility for or involvement in these events, let alone any unique personal knowledge about them or any other issue in the case.  Mr. Plepler's name did not appear in Mitre's discovery requests or in HBO's initial disclosures, and Mitre made no effort to depose him.

2

The only specific reference to Mr. Plepler in the voluminous discovery record involves an email that Mr. Plepler sent on September 17, 2008, a day after the Report premiered, about which Mr. Plepler today has no specific recollection. Ex. A ¶ 4. Mr. Plepler sent the email to Ross Greenburg, who was then the co-president of HBO Sports, and Raymond Stallone, HBO Vice President of Media Relations. Ex. G (PX0322).[1] The email states, in its entirety: "I'd get that segment to [T]om [F]riedman, [N]ic[k] [K]ristoff, Samantha [P]ower[], and discuss with [S]teve Rubenstein who else. This should get real traction. It's important work." *Id.*

Mr. Greenburg testified in his deposition that Mr. Plepler sent the email "direct[ing] his [public relations] staff to strengthen the PR" for the Report because he thought it was "newsworthy." Ex. H (Greenburg Dep. Tr. at 34:4-37:14, 269:6-272:14). HBO is unaware of any evidence that any of the writers that the email mentioned either wrote about "Children of Industry" or were mentioned in any article about "Children of Industry." *See* Declaration of Allison Jones ("Jones Decl.") ¶ 2.

Based solely on the email and Mr. Greenburg's testimony, Mitre listed Mr. Plepler as a witness it intends to call during its case-in-chief at trial. Ex. I.

HBO counsel asked Mitre to reconsider calling Mr. Plepler as a witness. The parties met and conferred about the issue on phone calls on February 3 and 4, 2015. Mitre declined HBO's request. The parties continued meeting and conferring in follow-up letters. In a February 10 letter, HBO explained that efforts to publicize the Report to the individuals mentioned in Mr. Plepler's email were not relevant to any issue in the case and, even if they were, Mr. Plepler clearly had no unique personal knowledge of such efforts because he was asking others to carry them out. Ex. J at 1-2. In a February 17 response letter, Mitre disagreed, asserting that the email

---

[1] The date and time of the email is listed as 2:51 a.m., September 18, 2008 Greenwich Mean Time, which would have been September 17 in the United States.

was relevant to harm to Mitre's reputation, and Mr. Plepler's state of mind was relevant to his email request that publicity be given to the Report. Ex. K at 1.

HBO counsel accepted service of the subpoena on March 5, 2015. Ex. L.

In fulfilling his duties as HBO Chairman and CEO, Mr. Plepler has significant commitments in the second half of April 2015, including multiple out-of-state trips. *See* Ex. A ¶ 6.

## ARGUMENT

Under Federal Rule of Civil Procedure 45(d)(3)(A)(iv), a court "must quash or modify a subpoena that . . . subjects a person to undue burden." Applying this rule, courts routinely block attempts to take testimony from high-level corporate executives who lack unique personal knowledge about disputed issues in a case, because "permitting unlimited access to corporate executives could disrupt their businesses and create a tool for harassment." *Treppel v. Biovail Corp.*, 2006 WL 468314, at *3 (S.D.N.Y. 2006). Testimony should be taken from senior executives "only if they possess *unique personal knowledge* related to the relevant issues in the case." *Diesel Props S.r.L. v. Greystone Business Credit II LLC*, 2008 WL 5099957, at *1 (S.D.N.Y. 2008) (emphasis added); *see also Retail Brand Alliance, Inc. v. Factory Mut. Ins. Co.*, 2008 WL 622810, at *6 (S.D.N.Y. 2008) (an affidavit from an executive "stat[ing] that he has no 'unique personal knowledge'" justifies limiting discovery).

This principle applies to both deposition and trial subpoenas. *See Plew v. Limited Brands, Inc.*, 2012 WL 379933, at *3 (S.D.N.Y. 2012). In *Plew*, the plaintiff attempted to subpoena trial testimony from the defendants' CEO, who had not been deposed but had been mentioned in other depositions as "part of the division responsible for commercializing" the product at issue in the litigation. *Id.* The court granted a motion to prevent the plaintiff from

4

calling the CEO at trial because there was "insufficient evidence . . . that [she] possesse[d] unique information relevant to" the litigation.  *Id.*

The subpoena for Mr. Plepler's testimony at trial should similarly be quashed because he has no unique personal knowledge relevant to any issue in the case.

Mitre contends that Mr. Plepler's email to Mr. Greenburg and Mr. Stallone suggesting that they contact certain writers about the Report is relevant to two issues: (1) damage to Mitre's reputation and (2) whether Mr. Plepler "lack[ed] knowledge of [the Report's] truth" when he made the request that the Report be publicized.  Ex. K at 1.  Neither contention is remotely sufficient to demonstrate that Mr. Plepler has unique personal knowledge relevant to any issue in this case.

First, Mitre already has information about the extent of the Report's authorized distribution, to which testimony about the email adds nothing of consequence.  The parties have stipulated to the schedule of telecasts and on-demand availability reflected in DX782, and Mitre has long been in possession of documents reflecting audience ratings information for the Report, *see* Bernstein Dep. Tr. 218:17-219:4.

Second, even if testimony about Mr. Plepler's email added anything to this comprehensive information produced by HBO in discovery about the Report's distribution, Mitre cites to no evidence, and HBO is aware of none, that any of the individuals that Mr. Stallone and Mr. Greenburg were asked to contact played any role in any further distribution of the Report.  *See* Jones Decl. ¶ 2.  Thus, the fact that Mr. Plepler was interested in their being contacted is irrelevant to any claimed harm to Mitre's reputation.

Third, Mr. Plepler plainly has no unique personal knowledge of the results of any efforts to publicize the Report because, as the email shows, he asked others to carry out those efforts.

5

Because Mr. Plepler has no "unique personal knowledge" relating to this issue, he should not be required to testify about it. *Diesel Props S.r.L.*, 2007 WL5099957, at *1; *see Plew*, 2012 WL 379933, at *3.

Fourth, Mr. Plepler in any event has no recollection of writing the September 2008 email or whether or not he received any response. Ex. A ¶ 3. Subpoenaing his testimony would therefore be a waste of time.

Mitre's contention that Mr. Plepler "lack[ed] knowledge of [the Report's] truth" when he requested that Mr. Greenburg and Mr. Stallone publicize the Report, Ex. K at 1, also is irrelevant. To begin with, as demonstrated above, there is nothing to indicate that Mr. Plepler's email actually led to any further distribution of the Report, or even to any news stories about the Report.

Moreover, under New York law, given Mr. Plepler's lack of involvement in the Report's production, Mr. Plepler's knowledge, or lack of knowledge, about the Report is wholly irrelevant. Under New York law, only knowledge by "persons having responsibility for the preparation and dissemination of the [publication]" is relevant to whether a defendant has acted with gross irresponsibility. *Rust Commcn's Grp. v. 70 State St. Travel Serv.*, 122 A.D.2d 584, 585 (4th Dept. 1986); 1 *Sack on Defamation* § 6:4 (4th ed. 2014) (gross irresponsibility inquiry looks to "the behavior of the persons responsible for publication," not employees "unconnected with the publication").

Because of Mr. Plepler's lack of any unique personal knowledge about any issue relevant to the case, requiring him to testify at trial would impose an unwarranted burden on Mr. Plepler and HBO. It would divert him from his duties as CEO and Chairman, including preexisting business and travel obligations during the time of the trial, Ex. A ¶ 6, thus causing "disruption to

6

business affairs." *Plew*, 2012 WL 379933, at *3.  The case law makes plain that Mitre is not entitled to compel his testimony under these circumstances.

## CONCLUSION

For the reasons stated, the subpoena for Mr. Plepler's trial testimony should be quashed.

Dated: March 27, 2015　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　/s/ Kevin T. Baine
　　　　　　　　　　　　　　　　　　　　Kevin T. Baine
　　　　　　　　　　　　　　　　　　　　Dane H. Butswinkas
　　　　　　　　　　　　　　　　　　　　Thomas G. Hentoff
　　　　　　　　　　　　　　　　　　　　Allison B. Jones
　　　　　　　　　　　　　　　　　　　　A. Joshua Podoll
　　　　　　　　　　　　　　　　　　　　Nicholas G. Gamse
　　　　　　　　　　　　　　　　　　　　Masha G. Hansford
　　　　　　　　　　　　　　　　　　　　WILLIAMS & CONNOLLY LLP
　　　　　　　　　　　　　　　　　　　　725 Twelfth Street, NW
　　　　　　　　　　　　　　　　　　　　Washington, DC  20005
　　　　　　　　　　　　　　　　　　　　Tel: (202) 434-5000
　　　　　　　　　　　　　　　　　　　　Fax: (202) 434-5029
　　　　　　　　　　　　　　　　　　　　kbaine@wc.com

　　　　　　　　　　　　　　　　　　　　Of Counsel:
　　　　　　　　　　　　　　　　　　　　Stephanie Abrutyn, Home Box Office, Inc.

　　　　　　　　　　　　　　　　　　　　*Attorneys for Defendant*
　　　　　　　　　　　　　　　　　　　　*Home Box Office, Inc.*