UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
MITRE SPORTS INTERNATIONAL LIMITED,   :
                                      :
              Plaintiff,              :   No. 08-CIV-9117 (GBD)(HBP)
                                      :
                                      :
         v.                           :
                                      :
HOME BOX OFFICE, INC.,                :
                                      :
              Defendant.              :
---------------------------------------------------------------x

## MITRE SPORTS INTERNATIONAL LIMITED'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO QUASH THE SUBPOENA ISSUED TO RICHARD PLEPLER

**CONSTANTINE CANNON LLP**
Lloyd Constantine
Robert L. Begleiter
Ankur Kapoor
Jean Kim
David A. Scupp
Matthew Vaccaro
335 Madison Avenue - 9th Floor
New York, NY 10017
(212) 350-2700
(212) 350-2701 (fax)

Jason J. Enzler
1001 Pennsylvania Avenue, NW
Suite 1300 N
Washington, DC 20004
(202) 204-3500
(202) 204-3501 (fax)

*Attorneys for Plaintiff*
*Mitre Sports International Limited*

Plaintiff Mitre Sports International Limited ("Mitre") respectfully submits this memorandum of law, and the accompanying Declaration of Ankur Kapoor ("Kapoor Dec."),[1] in opposition to Defendant Home Box Office Inc.'s ("HBO") motion to quash the subpoena issued to Richard Plepler (ECF No. 393).

## PRELIMINARY STATEMENT

"The essence of the tort of libel is the *publication* of a statement about an individual that is both false and defamatory." *Brian v. Richardson*, 87 N.Y.2d 46, 51 (1995) (emphasis added). The record shows that Richard Plepler, who in September 2008 was HBO's Co-President, personally took the extraordinary action of instructing HBO executives to "strengthen the PR" for Children of Industry ("COI"),[2] and publicize the libel beyond HBO's scheduled telecasts. Mr. Plepler directed the President of HBO Sports and a member of HBO's public relations department to publish COI to Steven Rubenstein, head of one of the foremost public relations firms in the country, Pulitzer Prize winning New York Times columnists Thomas Friedman and Nicholas Kristof, and Samantha Power, who in September 2008 was a Pulitzer Prize winning author who had recently left Barack Obama's presidential campaign as foreign policy advisor, and is currently the United States Ambassador to the United Nations. The publication of COI to such prominent individuals is relevant, and indeed necessary, to ascertain the damage to Mitre's reputation caused by HBO.

The Court should deny HBO's motion to quash the subpoena for Mr. Plepler's trial testimony. Mitre seeks to examine Mr. Plepler regarding his own actions and awareness concerning the publication of COI, to which no one else can testify.

---

[1] Exhibits to the Kapoor Dec. are cited herein as "Ex. __."
[2] *See* Ex. 1 at 36:8-37:14.

Mr. Plepler will suffer no undue burden by testifying at trial. Mr. Plepler works in Manhattan, and Mitre expects its examination will take less than an hour. Although HBO waited until March 27, 2015 (ten business days before trial) to bring its motion to quash, HBO has known since December 22, 2014 that Mitre intended to call Mr. Plepler as a witness, and HBO has known the trial date since it was set on October 8, 2014. Mr. Plepler has had ample time to clear a few hours from his calendar to appear at trial.

## FACTS

Richard Plepler is the Chairman and CEO of HBO. *See* HBO Mem. at 1. In 2008, Mr. Plepler was the Co-President of HBO. *Id.* He has "ultimate responsibility for Media Relations and Corporate Communications." *See* Plepler Dec. (ECF No. 395-1) ¶ 4.

On September 17, 2008, Mr. Plepler sent an email to Ross Greenburg – the President of HBO Sports – and Raymond Stallone – an individual in HBO's public relations department[3] – instructing them to "get that segment" (i.e., COI) to "tom [sic] Friedman,nic [sic] Kristoff [sic], Samantha powers [sic], and discuss with steve Rubenstein who else." Ex. 2. Thomas Friedman has been the foreign affairs Op-Ed columnist for The New York Times since 1995, and has won the Pulitzer Prize twice for international reporting, and once for commentary.[4] Nicholas Kristof has been a columnist for The New York Times since 2001, and has won two Pulitzer Prizes for his coverage of human rights abuses in Asia and Africa.[5] Samantha Power, in September 2008, was a Pulitzer Prize winning author and former foreign policy advisor to Barack Obama's presidential campaign. She is currently the United States Ambassador to the United Nations, and

---

[3] *See* Ex. 1 at 38:17-39:5.

[4] *See* http://www.nytimes.com/column/thomas-l-friedman

[5] *See* http://www.nytimes.com/column/nicholas-kristof

has been a prominent figure in the field of human rights.[6]  Steven Rubenstein, along with his father Howard Rubenstein, heads Rubenstein Communications, one of the leading (if not *the* leading) strategic communications and media relations companies in America.[7]

Mr. Plepler gave this instruction one day after HBO was informed by Mitre that COI was false, and the very day HBO revised its grossly irresponsible stringer policy so that HBO permanent staff must accompany stringers when shooting footage for *Real Sports*.[8]  He stated COI "should get real traction.  It's important work."  Ex. 2.  Mr. Plepler also directed HBO's public relations staff "to strengthen the PR for" COI because Mr. Plepler "thought it was a powerful piece" and "newsworthy."  Ex. 1 at 36:8-37:14.  Mr. Plepler's actions were extraordinary.[9]

HBO has known since December 22, 2014, when the parties exchanged witness lists, that Mitre would call Mr. Plepler at trial.  Ex 3.  On February 2, 2015, HBO's counsel asked Mitre to meet and confer regarding Mr. Plepler's appearance at trial.  Ex. 4.  During the parties' meet and confer on February 4, 2015, Mitre asked HBO if its counsel would accept service on Mr. Plepler's behalf for a trial subpoena.  Kapoor Dec. ¶ 2.  On February 17, 2015, having received no answer from HBO, Mitre again inquired whether HBO would accept service   Ex. 5.  On February 19, 2015, Mitre asked again.  Ex. 6.  On February 26, 2015, HBO agreed to accept service on Mr. Plepler's behalf.  Ex. 7.  On March 5, 2015, Mitre served a subpoena for Mr. Plepler's attendance at trial on April 22, 2015, at 10:00 AM.  *See* HBO Mem. at 4.  HBO waited

---

[6]  *See* http://usun.state.gov/leadership/c58902.htm

[7]  *See* http://www.rubenstein.com/bio_sr.html

[8]  *See* Ex. 8 at 215:15-216:09, 282:09-284:02.

[9]  HBO Vice President Kirby Bradley testified that it was not a practice at Real Sports to send HBO's publicity department announcements regarding programming that is to air on Real Sports for dissemination to the publicity department's news contacts.  *See* Ex. 8 at 352:19-24

3

22 days to file its motion to quash the subpoena, and Mitre submits its response ten days in advance of the deadline to oppose.

## ARGUMENT

**I.  Mr. Plepler possesses unique personal knowledge of relevant facts.**

Where a corporate executive possesses unique, personal knowledge of relevant facts, the party seeking a protective order "must carry a heavy burden to demonstrate good cause." *CBS, Inc. v. Ahern*, 102 F.R.D. 820, 822 (S.D.N.Y. 1984); *see also Six W. Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp.*, 203 F.R.D. 98, 102-07 (S.D.N.Y. 2001) (compelling testimony of three high-level executives); *Speadmark, Inc. v. Federated Dep't Stores, Inc.*, 176 F.R.D. 116, 117-18 (S.D.N.Y. 1997) (denying motion to preclude testimony of Chairman and CEO); *Wertheim Schroder & Co. v. Avon Prods., Inc.*, 1995 WL 6259, at *4-5 (S.D.N.Y. Jan. 9, 1995) (compelling testimony of Chairman and CEO).[10]

Mr. Plepler has unique personal knowledge of relevant facts concerning his efforts to publicize COI and concerning his knowledge of the truth—or lack thereof—of COI at that time. HBO concedes this issue's relevance by failing to object on the basis of relevance (or any other basis) to Mr. Plepler's email, designated as PX0322 (*see* Ex. 9), or to Mr. Greenburg's testimony on the subject (*see* Ex. 1 at 36:8-37:14).[11]  The extent to which COI was publicized not only to HBO viewers, but also to prominent individuals in fields such as foreign affairs, human rights,

---

[10]  The cases cited by HBO are inapposite because they concern executives that had no unique knowledge of any relevant facts.  *See Treppel v. Biovail Corp.*, 2006 WL 468314, at *3 (S.D.N.Y. Feb. 28, 2006) (Executives had no "personal" or "unique" knowledge "of the underlying events."); *Diesel Props S.r.L. v. Greysteone Bus. Credit II LLC*, 2008 WL 5099957, at *2 (S.D.N.Y. Dec. 3, 2008) (Executive had "no unique personal knowledge that is germane to the case."); *Retail Brand Alliance, Inc. v. Factory Mut. Ins. Co.*, 2008 WL 622810, at *6 (S.D.N.Y. March 7, 2008) (Executive's personal knowledge "does not appear to be relevant to any issue in the case."); *Plew v. Limited Brands, Inc.*, 2012 WL 379933, at *3 (S.D.N.Y. Feb. 6, 2012) (Executive did not posses "unique information relevant to this case.").

[11]  The fact that Mitre did not take Mr. Plepler's deposition has no bearing on the relevance or importance of Mr. Plepler's trial testimony.  Taking an individual's deposition is not a prerequisite for calling that individual as a witness at trial.  And, sitting for one hour of examination at trial would be far less burdensome than sitting for a seven-hour deposition.

and public relations, is relevant and necessary to ascertain the damage to Mitre's reputation, which is a category of damages separate from economic damages. *See Metropolitan Opera Ass'n v. Local 100*, 2005 WL 1712241, at **4-5 (S.D.N.Y. July 19, 2005). Mr. Plepler's testimony will go to this critical issue.

Mitre will examine Mr. Plepler regarding his personal actions and personal knowledge on topics such as:

- his instruction to publish COI to Mr. Friedman, Mr. Kristof, Ms. Powers, and Mr. Rubenstein;

- Mr. Plepler's knowledge of the falsities portrayed in COI on September 17, 2008 (the day after Mitre informed HBO that COI was false and the day that HBO revised its grossly irresponsible stringer policy), when he instructed this publication;

- actions Mr. Plepler *himself* took to publish COI to those four individuals, and any other prominent figures in areas such as foreign relations, human rights, public relations, media, sports, and business;

- Mr. Plepler's knowledge of the falsities portrayed in COI at the time he himself published COI to any such prominent individuals;

- Mr. Plepler's instructions to HBO's public relations staff "to strengthen the PR for" COI because he "thought it was a powerful piece" and "newsworthy" (*see* Ex. 1 at 36:8-37:14); and

- Mr. Plepler's knowledge of the falsities portrayed in COI at the time he instructed HBO's public relations staff to "strengthen the PR" for COI.

5

## II. Mr. Plepler's declaration fails to show he lacks unique, personal knowledge of relevant facts.

Mr. Plepler's tactically worded declaration fails to show he lacks unique, personal knowledge of relevant facts. He asserts he "had no direct oversight over the production" of COI (Plepler Dec. ¶ 3), but he does not deny having knowledge regarding COI's publication.[12] Mr. Plepler admits he sent an email to Mr. Greenburg and Mr. Stallone instructing them to publish COI to Thomas Friedman, Nicholas Kristof, Samantha Power, and Steven Rubenstein, but claims he does not remember "whether or not I received any response to it." Plepler Dec. ¶ 4. Even if the President of HBO was not told what was done after he gave explicit instructions to publish COI to these four prominent individuals, Mr. Plepler carefully avoids denying that *he himself* took actions to publish COI. Mr. Plepler did not pick these four names out of the blue. He has personal connections with, at least, Mr. Kristof,[13] Mr. Rubenstein,[14] and Ms. Power.[15] The New York Times writes that Mr. Plepler "is a large presence among political, media and entertainment cliques in New York." *See* Ex. 13. Mr. Plepler does not deny that he personally publicized COI, including to New York's political and social elite.

## III. Requiring Mr. Plepler to testify at trial will not impose an undue burden.

"[T]he fact that the witness has a busy schedule is simply not a basis for foreclosing" his testimony. *Ahern*, 102 F.R.D. at 822. This trial is being held in Manhattan, where Mr. Plepler

---

[12] There are six elements that Mitre must establish to prove defamation: (1) COI was defamatory, (2) COI referred to Mitre, (3) HBO published COI, (4) COI is false, (5) HBO acted in a grossly irresponsible manner, and (6) COI proximately caused actual harm to Mitre. *See New York Pattern Jury Instr. - Civil* 3:34A , Complete Charge – Intentional Torts – Defamation – Libel – Private Person and Speech of Public Concern (Dec. 2014).

[13] *See* Ex. 10 (Invitation to the 2009 Asia Society Annual Dinner, listing Mr. Plepler as a trustee and Mr. Kristof as an honoree).

[14] *See* Ex. 11 (photograph of Mr. Plepler and Mr. Rubenstein at the July 19, 2009 'Entourage' premiere screening at the Grand Havana Room in New York).

[15] *See* Ex. 12 (photograph of Samantha Power addressing an audience at the United Nations on June 19, 2009, for the screening of the HBO documentary 'Sergio,' which Mr. Plepler attended).

works.[16]  Mitre expects its examination of Mr. Plepler will take less than an hour.  Although Mr. Plepler might frequently travel – as do many corporate executives – HBO has known the trial date since October 8, 2014 (*see* ECF No. 341), and has known since December 22, 2014 that Mitre would call Mr. Plepler as a witness.  HBO has known the precise date and time of Mr. Plepler's testimony since March 5, 2015, and would have known weeks earlier had HBO not delayed for three weeks in responding to Mitre's request that HBO's counsel accept service of the subpoena on Mr. Plepler's behalf.  And HBO has not offered a date or time that would be more convenient to Mr. Plepler.  Mr. Plepler has had ample time to clear his schedule to spend a part of one morning testifying at a courthouse in the city in which he works.  It is inconceivable that the launch of HBO NOW would be disrupted, as HBO claims (*see* Plepler Dec. ¶ 6), by requiring Mr. Plepler to testify for one hour at trial.

---

[16]  HBO's headquarters are located at 1100 Avenue of the Americas, New York, NY 10036.

## CONCLUSION

For all the foregoing reasons, Mitre respectfully requests that the Court deny HBO's motion to quash the subpoena issued to Richard Plepler.

Dated: April 3, 2015

                                                    Respectfully submitted,

                                                    **CONSTANTINE CANNON LLP**

                                                    By:        /s/ Lloyd Constantine
                                                        Lloyd Constantine
                                                        Robert L. Begleiter
                                                        Ankur Kapoor
                                                        Jean Kim
                                                        David A. Scupp
                                                        Matthew Vaccaro
                                                        335 Madison Avenue - 9th Floor
                                                        New York, NY 10017
                                                        (212) 350-2700
                                                        (212) 350-2701 (fax)

                                                        Jason J. Enzler
                                                        1001 Pennsylvania Avenue, NW
                                                        Suite 1300 N
                                                        Washington, DC 20004
                                                        (202) 204-3500
                                                        (202) 204-3501 (fax)

311976.3