**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MITRE SPORTS INTERNATIONAL
LIMITED,

                                        Plaintiff,

                v.

HOME BOX OFFICE, INC.,

                                        Defendant.

**Case No. 08-cv-9117 (GBD)(HBP)**

ECF Case

**MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANT,**
**HOME BOX OFFICE, INC., FOR JUDGMENT AS A MATTER OF LAW**

Kevin T. Baine
Dane H. Butswinkas
Thomas G. Hentoff
Allison B. Jones
A. Joshua Podoll
Nicholas G. Gamse
Masha G. Hansford
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC  20005
Tel: (202) 434-5000
Fax: (202) 434-5029
kbaine@wc.com

Of Counsel:
Stephanie S. Abrutyn
Home Box Office, Inc.
1100 Avenue of the Americas
New York, NY  10036
Tel: (212) 512-5610

*Attorneys for Defendant,*
*Home Box Office, Inc.*

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1
ARGUMENT ........................................................................................................................2
I.     THERE IS NO EVIDENCE TO SUPPORT MITRE'S LIBEL CLAIM AGAINST
       HBO .........................................................................................................................2
       A.     The HBO Report Did Not Convey the Alleged Defamatory Meanings. ...............2
              1)     The Report Does Not Imply that Mitre Used Child Slave Labor in
                     Meerut. .........................................................................................................3
              2)     The Report Did Not Imply that Mitre Employed or Ignored the Use
                     of Child Labor and Did Nothing To Stop it in Jalandhar. ..........................5
       B.     There Is No Evidence That HBO Acted with Gross Irresponsibility. ...................6
              1)     There Is No Evidence that HBO Was Grossly Irresponsible in
                     Conveying any Implication that Mitre Employed Slave Labor in
                     Meerut. .........................................................................................................7
              2)     There Is No Evidence that HBO Was Grossly Irresponsible in
                     Conveying any Implication that Mitre Was Employing Child Labor
                     in Jalandhar or Ignoring it and Doing Nothing to Stop It. ..........................8
              3)     HBO Was Not Grossly Irresponsible in Any Other Relevant
                     Respect. ........................................................................................................8
       C.     There Is No Evidence That Any Statement about Mitre Was False and
              Defamatory. ..........................................................................................................13
       D.     There Is No Evidence Supporting Other Elements of Mitre's Libel Claim .........14
              1)     No "Group Libel" Claim .............................................................................14
              2)     No Claims Based on Questions or Opinions ...............................................15
              3)     No Libel by Omission Claims .....................................................................16
              4)     The Single-Publication Rule Makes Irrelevant Any Standard of
                     Care Evidence Following the September 16, 2008 Premiere of
                     "Children of Industry." ...............................................................................17
II.    THERE IS NO EVIDENCE TO SUPPORT MITRE'S DAMAGES CLAIM
       AGAINST HBO......................................................................................................19
       A.     There Is No Evidence That Any Alleged Harm Was Caused by the
              Alleged Implications. ...........................................................................................19
              1)     There Is No Evidence of Actual Harm Caused by the Alleged
                     Meerut Child Slave Labor Implications Claimed by Mitre. ......................19
              2)     There Is No Evidence of Actual Harm Caused by the Alleged
                     Jalandhar Attitude Toward Child Labor Implications. ..............................20
              3)     There Is No Evidence of Causation for the $16,971 Walmart Ball
                     Return............................................................................................................20
       B.     As a Corporation, Mitre May Recover for Only Economic Damages..................21
CONCLUSION.....................................................................................................................21

## **TABLE OF AUTHORITIES**

### FEDERAL CASES

*Abbas v. Foreign Policy Group, LLC*, __ F.3d __, 2015 WL 1873140 (C.A.D.C.) (Apr. 24, 2015)..................................................................................................15, 16

*Art Metal-U.S.A., Inc. v. United States*, 753 F.2d 1151 (D.C. Cir. 1985)....................................21

*Biro v. Conde Nast*, 883 F. Supp. 2d 441 (S.D.N.Y. 2012)........................................................17

*Chaiken v. VV Publ'g Corp.*, 119 F.3d 1018 (2d Cir. 1997) ....................................................9, 10

*Chaiken v. VV Publ'g Corp.*, 907 F. Supp. 689 (S.D.N.Y. 1995), *aff'd*, 119 F.3d 1018 (2d Cir. 1997)....................................................................................................7

*Chandok v. Klessig,* 632 F.3d 803 (2d Cir. 2011)........................................................................1

*Chapin v. Knight–Ridder, Inc.,* 993 F.2d 1087 (4th Cir.1993) ....................................................3

*Chau v. Lewis*, 771 F.3d 118 (2d Cir. 2014)..........................................................................14, 15

*Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92 (2d Cir. 2000) (Sack, J.)..............................9

*Lehman v. Discovery Commc'ns, Inc.*, 332 F. Supp. 2d 534 (E.D.N.Y. 2004) .............................18

*Mitre Sports Int'l Ltd. v. Home Box Office, Inc.*, 22 F. Supp. 3d 240 (S.D.N.Y. 2014) ..................................................................................................................1

*Nelson v. Globe Int'l, Inc.*, 626 F. Supp. 969 (S.D.N.Y. 1986)...................................................10

*Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610 (7th Cir. 2013), *cert. denied* 134 S. Ct. 2829 (2014)..........................................................................................17

*Stern v. Cosby*, 645 F. Supp. 2d 258 (S.D.N.Y. 2009) ....................................................................9

*Stern v. News Corp.*, 2010 WL 5158635 (S.D.N.Y. 2010)..........................................................13

*White v. Fraternal Order of Police,* 909 F.2d 512 (D.C. Cir. 1990) ..............................................3

*Zoll v. Jordache Enterprises, Inc.*, 2002 WL 31873461 (S.D.N.Y. 2002) ....................................18

### STATE CASES

*Bynog v. Cipriani Grp., Inc.*, 802 N.E.2d 1090 (N.Y. 2003)....................................................9, 10

*Chapadeau v Utica Observer-Dispatch*, 38 N.Y.2d 196 (1975) ....................................................6

*Firth v. State*, 775 N.E.2d 463 (N.Y. 2002)................................................................................19

*Firth v. State*, 98 N.Y.2d 365 (N.Y. 2002) ..................................................................18

*Hernandez v. Chefs Diet Delivery, LLC*, 81 A.D.3d 596 (2d Dep't 2011)...................................11

*Immuno AG v. Moor-Jankowski*, 77 N.Y.2d. 235 (1991) ............................................21

*Martin v. Daily News L.P.*, 990 N.Y.S.2d 473 (1st Dept.), *leave to appeal denied*
   997 N.Y.S.2d 117 (2014)......................................................................18

*Sandals Resorts Int'l Ltd. v. Google, Inc.*, 925 N.Y.S.2d 407 (1st Dep't 2011)...........................16

*Sprecher v. Dow Jones & Co., Inc.*, 450 N.Y.S.2d 330 (1st Dep't 1982), aff'd, 58
   N.Y.2d 862 (1983) ......................................................................16, 17

*Stepanov v. Dow Jones & Co.*, 987 N.Y.S.2d 37 (1st Dept. 2014)........................................2, 3, 6

*Von Gerichten v. Long Island Advance*, 609 N.Y.S. 2d 246 (1994)........................................6, 13

## RULES

Fed. R. Civ. P. 50 ......................................................................................1

## OTHER AUTHORITIES

1 Robert D. Sack, *Sack on Defamation* (2014)............................................2, 17, 18, 19

Lazer, *et al.*, New York Pattern Jury Instructions-Civil, Instr. PJI 3:28A (2014) ...................6, 13

The defendant, Home Box Office, Inc. ("HBO"), respectfully requests that judgment be entered in its favor as a matter of law as to all claims of the plaintiff, Mitre Sports International Limited ("Mitre"), because "a reasonable jury would not have a legally sufficient evidentiary basis to find for" Mitre.  *See* Fed. R. Civ. P. 50(a)(1)(B).  HBO hereby supplements the motion for judgment as a matter of law made orally on Friday, April 24, 2015.  *See* Tr. 1057:4-7.  HBO also incorporates by reference its letter brief in support of its motion for judgment as a matter of law as to Mitre's punitive damages claim (Dkt. 484 (5/5/15).[1]

## INTRODUCTION

Under New York law in a case like this that involves a matter of public concern, a plaintiff must establish that the defendant published a materially false (i.e. not substantially true) and defamatory fact about the plaintiff and that the false and defamatory statement was published in a grossly irresponsible manner.  The plaintiff also must establish that it suffered actual harm caused by the false and defamatory statement.  *See Mitre Sports Int'l Ltd. v. Home Box Office, Inc.*, 22 F. Supp. 3d 240, 252, 254 (S.D.N.Y. 2014); *Chandok v. Klessig,* 632 F.3d 803, 814 (2d Cir. 2011).

Mitre claims that HBO's "Children of Industry" report ("the Report"), which premiered on September 16, 2008, defamed it as follows: (1) "by portraying Mitre as using child slave labor in Meerut, India, to manufacture Mitre-branded soccer balls," and (2) "by portraying Mitre as employing child labor, or ignoring the use of child labor and doing nothing to stop it, to manufacture Mitre-branded soccer balls in Jalandhar, India."  Mitre's Proposed Jury Instructions on Liability & Damages (Dkt. 401, 3/30/15) at 2 ("Mitre's Proposed Jury Instructions").  Of

---

[1] In the alternative, pursuant to Fed. R. Civ. P. 50(a)(1)(A), HBO seeks rulings against Mitre on issues as to which there is insufficient evidentiary basis to find for Mitre, including the status of the Indian stringers who worked with HBO as independent contractors whose conduct cannot be imputed to HBO, *see* Part I.B.3, *infra*.

course, the HBO report did not state either of these things explicitly.  Rather, Mitre claims that HBO implied these defamatory meanings.

Mitre's liability and damages claims fail as a matter of law for a number of separate and independently sufficient reasons, including: no evidence that the Report conveyed the defamatory meanings claimed by Mitre; no evidence that HBO acted with gross irresponsibility; no evidence that any statement about Mitre was false and defamatory; and no evidence that any allegedly false and defamatory statement in the Report caused any actual harm to Mitre.

**ARGUMENT**

I.    **THERE IS NO EVIDENCE TO SUPPORT MITRE'S LIBEL CLAIM AGAINST HBO**

A.    **The HBO Report Did Not Convey the Alleged Defamatory Meanings.**

The first element of a libel claim is a publication that conveyed a defamatory meaning. "'The meaning of a communication is that which the recipient correctly, or mistakenly but reasonably, understands that it *was intended to express*.'"  1 Robert D. Sack, *Sack on Defamation* § 2.4.2, at 2-21 (2014) (quoting *Restatement (Second) of Torts* § 563 ("Meaning of the Communication")) (emphasis added).

Thus, the law of libel does not hold the defendant responsible for any and all conclusions that readers or viewers might reach on their own based upon the facts in the defendant's publication.  Rather, the defendant is responsible only for the meanings that viewers "correctly, or mistakenly but reasonably," conclude that the publication "was intended to convey."  *Id.*

In addition, when the factual statements that allegedly give rise to the defamatory implication are themselves true, the standard for defamation by implication is even more strict. In such a case, to survive dismissal as a matter of law, "the plaintiff must make a rigorous showing that the language of the communication as a whole can be reasonably read both to

2

impart a defamatory inference and to affirmatively suggest that the author intended or endorsed that inference." *Stepanov v. Dow Jones & Co.*, 987 N.Y.S.2d 37, 44 (1st Dept. 2014) (adopting rule set forth in cases such as (*White v. Fraternal Order of Police,* 909 F.2d 512, 520 (D.C. Cir. 1990) and *Chapin v. Knight–Ridder, Inc.,* 993 F.2d 1087, 1093 (4th Cir.1993)).

In this case, there is no evidence that viewers correctly or reasonably concluded that HBO intended to convey the alleged implications, much less affirmative evidence on the face of the report, that HBO intended or endorsed the implication.[2]

### 1) The Report Does Not Imply that Mitre Used Child Slave Labor in Meerut.

Examination of "Children of Industry" shows that the Report is devoid of any suggestion that HBO in fact intended to imply that Mitre used child slave labor in the manufacture of Mitre-branded soccer balls in Meerut. Nor is there any evidence that anyone could "reasonably" conclude that HBO intended to imply that fact. The evidence is clear and uncontradicted that every time "Children of Industry" referred to Mitre balls being stitched by children, the Report made clear that the children were stitching in Jalandhar. It would obviously be a mistaken, and unreasonable, conclusion to think that HBO intended to say those balls were being stitched in Meerut.

There are four references in "Children of Industry" to children stitching Mitre soccer balls:

---

[2] As explained in Part I.C, *infra*, the explicit factual statements that allegedly give rise to the defamatory implications in this case are true: Mitre has conceded that children were found stitching Mitre balls in Jalandhar during the time period covered by HBO's Report—indeed, the monitoring organization upon which it relies, SGFI, found a child stitching a Mitre ball on the very day that the HBO report first aired. *See, e.g.*, Tr. 461. Mitre also acknowledges that children can be found stitching other brands under conditions of debt bondage in Meerut. Because those underlying facts, upon which the defamatory implications are based, were true, Mitre bears the heavier burden of pointing to affirmative evidence on the face of the report that HBO intended or endorsed those purported defamatory meanings.

1.      Immediately after setting the scene as "Jalandhar, India, a city built on the soccer trade," the report introduces "Manj[i]t . . . an orphan who lives with her grandparents" and "is making a ball for Mitre."  DX2 at 5.  The Report also makes clear that Manjit is being paid: "and how much does she earned for her work?  About a nickel an hour.  It'll take her three hours to finish this ball, so Manj[i]t will make fifteen cents for a ball that might sell for fifteen dollars." *Id.*  No one could reasonably conclude that Manjit was working in debt bondage, or slave labor, in Meerut:  Meerut and the concept of debt bondage had not even been mentioned at this point in the Report.

2.      The Report states that "[w]e met dozens of kids making Mitre balls in Jalandhar, like the brothers Deepu and Aman."  DX2 at 8.  Again, Jalandhar is specified, and Meerut has not yet been mentioned.

3.      The Report states: "It may, in fact, be very hard.  But Real Sports was able to walk right into a stitching center in Jalandhar, where four kids not much older than ten were working for pennies a day."  DX2 at 15-16.  At this point in the Report, Meerut and the concept of debt bondage had been introduced.  But in this reference, Jalandhar was specified, and the report specified that the children were paid.

4.      In the crosstalk portion of the Report, correspondent Bernard Goldberg states: "Are we, are we supposed to believe that Mitre, for instance, which is just one of many companies that, that are involved in this—are we supposed to believe that Mitre, an international company based in London is going to know what's happening on a side street in Jalandhar, India? It's hard. It's very hard."  DX2 at 24.  Again, the Report expressly places children stitching Mitre-branded balls squarely in Jalandhar.

Given these repeated and explicit statements that the children stitching Mitre balls were

stitching *for pay* in *Jalandhar*, no reasonable viewer and no reasonable jury could conclude that that HBO intended to imply that Mitre balls were being stitched by children in *debt bondage* in *Meerut*.  HBO is, therefore, entitled to judgment as a matter of law on this claim of libel by implication.

### 2) The Report Did Not Imply that Mitre Employed or Ignored the Use of Child Labor and Did Nothing To Stop it in Jalandhar.

Mitre also claims that HBO falsely portrayed Mitre "as employing child labor, or ignoring the use of child labor and doing nothing to stop it," in Jalandhar.  Mitre's Proposed Jury Instructions at 2.  The claim is not simply that HBO reported that Mitre soccer balls were being stitched by children in Jalandhar, but rather that it implied Mitre directly employed child labor or ignored its use and did nothing to stop it.  To be sure, a viewer of the HBO report might come away thinking that Mitre and its manufacturers *could have done more* to stop child labor—and an observer of this trial also could certainly reach that conclusion.  But no one could interpret "Children of Industry" to mean that Mitre was "ignoring the use of child labor and *doing nothing to stop it*" (emphasis added), as Mitre has alleged.

To the contrary, the Report states the following:

- that "Mitre is an industry leader" in the effort to stop child labor in the soccer ball industry, DX2 at 7-8;

- that Mitre has a "code[] of conduct . . . requiring that child labor is not used by any of the suppliers that make Mitre balls," *id.* at 8;

- that Mitre "regularly monitor [its] overseas suppliers to make sure that child labor is not being used, and that [it] wouldn't tolerate any lapses," but that "[i]t's very hard" for Mitre "to know what's happening on a side street in Jalandhar, India," *id.* at 17, 24;

- that the correspondent on the piece, Bernie Goldberg, "honestly believe[s] that Mitre. . . would like this to be wiped out once and for all," but that "the subcontractors are a different story altogether," *id.* at 24, 25.

HBO obviously did not intend to imply that Mitre directly employed child labor.  Only by

ignoring all of these statements could anyone conclude that Mitre was "ignoring the problem and doing nothing to stop it."  The law of libel requires that a report be taken "as a whole," *Stepanov*, 987 N.Y.S.2d at 4, but it does not allow a report to be construed to mean the opposite of what it says.

For these reasons alone, HBO is entitled to judgment as a matter of law on Mitre's two claims of libel by implication.

**B.      There Is No Evidence That HBO Acted with Gross Irresponsibility.**

Even if viewers could reasonably conclude that the Report could be understood as intending to convey either of the two alleged defamatory meanings, there is no evidence upon which a reasonable jury could conclude that HBO was grossly irresponsible in conveying those meanings.  To establish that HBO acted in a grossly irresponsible manner, Mitre must prove that HBO "disregarded a risk" that it was publishing a false and defamatory statement or implication, and that its disregard was "a substantial departure from accepted standards and practices for information gathering and a verification ordinarily followed by responsible [broadcasters]." *Lazer, et al.*, New York Pattern Jury Instructions—Civil, Instr. PJI 3:28A (updated 2014); *Chapadeau v Utica Observer-Dispatch*, 38 N.Y.2d 196, 199 (1975); *Von Gerichten v. Long Island Advance*, 609 N.Y.S.2d 246, 247 (1994)**.**

In this case, therefore, Mitre must prove that HBO acted in a grossly irresponsible manner in disregarding the risk that its Report would be interpreted to convey the allegedly false implications, and that its disregard of that risk was a substantial departure from accepted journalistic standards.  For all of the reasons identified above, there is no evidence to support such a finding.

**1)   There Is No Evidence that HBO Was Grossly Irresponsible in Conveying any Implication that Mitre Employed Slave Labor in Meerut.**

The producer of "Children of Industry," Joe Perskie, explained in his testimony how he organized the Report.  In the first part, which discussed the issue of child labor in India, he divided the discussion into two subsections—the first dealing with child labor for little pay in Jalandhar, and the second dealing with debt bondage child labor in Meerut.  There were two references to children stitching soccer balls in Jalandhar in the first of those subsections, each one specifying that the children were in Jalandhar.  Tr. 1834.

Mr. Perskie explained that the second part of the Report addressed the connection of child labor to the United States.  To illustrate that connection, "Children of Industry" reported that the same model Mitre ball that was seen being stitched by children in Jalandhar was available for purchase at Walmart in the United States.  In noting that connection, the Report specified not only that the type of Mitre balls traced to the U.S. were being stitched in "a stitching center in Jalandhar," DX2 at 15-16, but also that the children were being paid—in other words, that they were not working in debt bondage or slave labor.  Tr. 1835-36.

There is no evidence that Mr. Perskie acted in a grossly irresponsible manner in organizing or presenting the Report in this fashion.  The uncontradicted evidence is that he was careful to specify that the Mitre balls were being stitched *for pay* in *Jalandhar* and thereby to avoid any misimpression that Mitre balls were being stitched in *Meerut* in *debt bondage*.  Even if Mitre could argue that he was not entirely successful in guarding against viewers' misinterpreting the Report in this regard, there is no evidence that he was grossly irresponsible in his effort.  *See Chaiken v. VV Publ'g Corp.*, 907 F. Supp. 689, 698 (S.D.N.Y. 1995), *aff'd* , 119 F.3d 1018 (2d Cir. 1997).

7

### 2) There Is No Evidence that HBO Was Grossly Irresponsible in Conveying any Implication that Mitre Was Employing Child Labor in Jalandhar or Ignoring it and Doing Nothing to Stop It.

Again, it bears emphasis that Mitre's claim is not simply that HBO defamed it by stating that Mitre soccer balls were being stitched by children in Jalandhar.  The claim is that HBO implied that Mitre directly employed child labor in Jalandhar or was ignoring child labor in Jalandhar and doing nothing to stop it.  There is no evidence that HBO was grossly irresponsible in failing to guard against such an implication.

As noted above, HBO guarded against any implication that Mitre itself employed child labor by noting that its code of conduct and monitoring were directed at "its overseas suppliers"—"the suppliers that make Mitre balls."  DX2 at 8, 17.  It further guarded against any such implication by emphasizing how "very hard" it was for Mitre "to know what's happening on a side street in Jalandhar, India," *id.* at 24, and by emphasizing that "the subcontractors" were the ones who hired the children, *id.* at 25.

HBO also guarded against any implication that Mitre ignored the problem of child labor and did nothing to stop it.  It did so by reporting that Mitre was "an industry leader" in the effort to stop child labor in the soccer ball industry, DX2 at 7-8; that it had a code of conduct prohibiting child labor, *id.* at 8; that it monitored its overseas suppliers and would not tolerate any lapses, *id.* at 17; and that it "would like this to be wiped out once and for all," *id.* at 24. Plaintiff has failed to adduce any evidence that HBO was grossly irresponsible in not saying more to emphasize that Mitre was not ignoring the problem.

### 3) HBO Was Not Grossly Irresponsible in Any Other Relevant Respect.

Much of the plaintiff's case has centered on the contention that HBO's independent contractors in India fabricated some of the scenes of children stitching Mitre soccer balls in Jalandhar.  That evidence fails to support any finding of gross irresponsibility for at least two

8

reasons:  (1) there is no claim that any employee of HBO participated in or was aware of any

such fabrication, nor is there any evidence that HBO's employees were grossly irresponsible in

the manner in which they oversaw the independent contractors who are alleged to have

participated in the alleged fabrication; and (2) whether any of the particular children in these

scenes were stitchers does not detract from the uncontested fact that children could be found

stitching Mitre soccer balls, nor is it relevant to the claim that the segment implied that Mitre was

ignoring the problem.

  1.  The Second Circuit, interpreting New York law, has held that principals are *not*

liable for independent contractors' alleged conduct "under general agency principles."  *Chaiken*

*v. VV Publ'g Corp.*, 119 F.3d 1018, 1034 (2d Cir. 1997).  Instead, it has held, making a publisher

"liable for the defamatory statements of an independent contractor without a showing of [its

own] gross irresponsibility would defeat the purpose of requiring that showing . . . [and] impose

on publishers all of the burdens that the 'gross irresponsibility standard' seeks to lift."  *Id.*; *see*

*also Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 99 (2d Cir. 2000) (Sack, J.) (holding

that company was not liable for false statement in third-party report commissioned by company

unless company itself was grossly irresponsible).[3]

  Thus, under basic principles of *respondeat superior*, HBO is responsible for only the

actions of its employees or servants.  It is not legally responsible for the actions of its

independent contractors.

  "[T]he critical inquiry in determining whether an employment relationship exists pertains

to the degree of control exercised by the purported employer over the results produced or the

---

[3] The result is the same when the standard of care is actual malice rather than gross
irresponsibility:  "The actual malice of an author cannot be imputed to the publisher unless the
author is an employee of the publisher."  *Stern v. Cosby*, 645 F. Supp. 2d 258, 285 n.17
(S.D.N.Y. 2009).

means used to achieve the results." *Bynog v. Cipriani Grp., Inc.*, 802 N.E.2d 1090, 1092-93 (N.Y. 2003). Factors relevant to that inquiry include whether the worker "(1) worked at his own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll and (5) was on a fixed schedule." *Id.* at 1093. The fact finder may also consider whether the employer withheld taxes or social security; who supplied the equipment; and how the parties conceived of their relationship. *Chaiken v. VV Publ'g Corp.*, 119 F.3d 1018, 1032 (2d Cir. 1997) (collecting cases); *Nelson v. Globe Int'l, Inc.*, 626 F. Supp. 969, 978 (S.D.N.Y. 1986).

Based on the evidence in the record, the only reasonable conclusion is that HBO's stringers were independent contractors. HBO retained the stringers for specific tasks. *See, e.g.*, Tr. 1542:13-15 (Bedi) ("Q. And did you have any role at all contributing to that production? A. Yes. I was the freelance cameraman for that."). The stringers brought their own equipment, Tr. 1245:21-22 (Mamdani) ("Q. Did you provide Mr. Bedi's camera equipment? A. No."), were free to engage in other employment, *see, e.g.*, Tr. 507 (H. Singh Dep. Tr. 69:1-10) (noting that work for HBO was in addition to other employment with television station); Tr. 1548:15 – 1549:22 (Bedi) (discussing freelance assignments for other news agencies), were not on HBO's payroll, *see, e.g.*, Tr. 1244:3-13 (Mamdani) (noting that Ms. Mamdani paid Manpreet Kaur out of her own pocket, then was reimbursed), and did not see themselves as employees, *see, e.g.*, Tr. 1543:2-5 (Bedi) ("Q: And are you an employee of HBO? A. No, I am not. Q. Have you ever been an employee of HBO? A. No."); Tr. 1244:1-2 (Mamdani) (explaining that Manpreet Kaur was not an HBO employee). Indeed, Plaintiffs' counsel has repeatedly underscored the stringers' status as independent contractors, emphasizing that no "HBO employee was present when the footage . . . [at issue] was shot." Tr. 1490:19-21; *see also* Tr. 71:2-4 (Mitre opening

statement); 1490:24 – 1491:13 (Mamdani Cross Examination).[4]  All of the evidence, in short, indicates that the stringers in question were independent contractors.  Their actions are not attributable to HBO.[5]

Nor is there legally sufficient evidence to support a finding that HBO's employees were grossly irresponsible in failing to oversee these independent contractors.  The uncontroverted evidence is that the stringers in question had appropriate journalistic backgrounds and credentials, and that they had proved themselves to be reliable and professional over the course of the two week period during which they were directly overseen by HBO's employees, Zehra Mamdani and Ezra Edelman.  Harinder Singh was the bureau chief of a local television station; Vijay Bedi was an experienced freelance cameraman who had worked with major international news organizations; and Manpreet Kaur was an experienced journalist who was recommended by Yatish Yadav, himself an experienced television journalist who had proven himself reliable on a scouting trip a year before the disputed footage was shot.  Zehra Mamdani testified without contradiction or challenge that on her trip to India in May 2008 she was able to confirm that all of the information provided by Manpreet Kaur based on her advance scouting was accurate.  She also testified without contradiction or challenge that Vijay, Manpreet and Harinder had proved

---

[4] Mitre cannot credibly argue that, because Ms. Mamdani gave the stringers some instructions and guidance, the stringers qualify as HBO employees.  The critical factor is control over the means of performance—which all of HBO's stringers had.  "[M]inimal or incidental control over an employee's work product without the employer's direct supervision or input over the means used to complete the work is insufficient to establish a traditional employment relationship." *Hernandez v. Chefs Diet Delivery, LLC*, 81 A.D.3d 596, 598 (2d Dep't 2011) (internal quotation marks and alterations omitted).

[5] Even if the Court were to reserve ruling on HBO's motion as to liability, it should resolve the issue of the Indian stringers' status in HBO's favor as a matter of law pursuant to Fed. R. Civ. P. 50(a)(1)(A).  This would relieve the jury of having to apply a test to determine who was and was not an HBO employee, and would preclude Mitre counsel from contending to the jury that the Indian stringers are HBO employees.

themselves to be reliable and professional over the course of the two weeks that she oversaw their work in person.  There is simply no evidence in the record that anyone at HBO had any reason to suspect that any of these independent contractors would perpetrate a hoax on HBO by fabricating scenes of children stitching.

Thus, even if—contrary to the overwhelming weight of the evidence—a jury were to conclude that some of these scenes of children stitching were fabricated, there is no legally sufficient basis upon which to conclude that HBO was grossly irresponsible in guarding against the risk of fabrication.  Unless one were to conclude that the mere act of retaining stringers to film scenes halfway around the world is itself grossly irresponsible, there is no basis upon which to conclude that HBO was grossly irresponsible in this case.  And there is no basis in the record for a jury to conclude that retaining stringers in foreign countries where U.S. employees would stand out is by itself grossly irresponsible.

2.      Even if a jury could conclude that HBO was grossly irresponsible in retaining or failing to oversee these independent contractors in the shooting of the disputed footage, that would not be a sufficient basis upon which to impose liability in this case.  The libel claim here is not that Mitre was defamed by the report that Mitre balls had been stitched by children, much less by any particular footage of specific children stitching Mitre balls.  Mitre concedes that children have been found stitching its soccer balls.  *See, e.g.,* Tr. 461.  The claim that has been presented is that Mitre was defamed by the implication that it directly employed, or ignored and did nothing to stop, child labor in Jalandhar.  The disputed footage does not imply that Mitre directly employed or ignored and did nothing to stop child labor, and for this reason as well, evidence pertaining to the shooting of the disputed footage is insufficient to establish that HBO was grossly irresponsible in conveying that broader implication.

12

In sum, whatever the jury were to conclude about the particular stitching scenes shot by HBO's stringers, there is insufficient evidence to support a finding that HBO was grossly irresponsible in publishing the alleged libel in this case, particularly in the absence of any evidence of "a substantial departure from accepted standards and practices for information gathering and a verification ordinarily followed by responsible [broadcasters]."  Lazer, *et al.*, New York Pattern Jury Instructions—Civil, Instr. PJI 3:28A; *see also Von Gerichten*, 609 N.Y.S. 2d at 247.

  **C. There Is No Evidence That Any Statement about Mitre Was False and Defamatory.**

  Mitre has devoted a substantial part of its case to attacking elements of the Report that have nothing to do with Mitre.  These attacks do not support any claim against HBO for two reasons: (1) they do not themselves give rise to the defamatory meanings that are the basis of Mire's claims; and (2) they are not about Mitre at all.  One of the threshold elements of a libel claim is that the challenged statements be "of and concerning" the plaintiff.  For a plaintiff to prove the "of and concerning" element, it must show that "the libel designates the plaintiff in such a way as to let those who knew [it]understand that [it] was the person meant."  *Stern v. News Corp.*, 2010 WL 5158635, at *5 (S.D.N.Y. 2010) (quotation omitted).  Statements about the size of Gurmeet Kumar's family debt or the bonded status of Sonia and Soonam in Meerut, or any of the experiences of the debt-bonded children in Meerut are not "of and concerning" Mitre.

  Most of what "Children of Industry" said *about Mitre* is not defamatory at all:

  HBO reported that Mitre is an industry leader in the fight against child labor.  DX2 at 7-8.  Although Mitre quibbles over whether it, as opposed to its parent company Pentland or Pentland's chairman, is an industry leader, it was certainly not defamatory to say that Mitre was.

Nor, given the substantial connection between Mitre and Pentland, was it materially false to say that Mitre was an industry leader.

HBO reported that Mitre has a policy prohibiting its suppliers from using child labor. DX2 at 8. That is true.

HBO reported that Mitre monitors its overseas suppliers to make sure that there is no child labor, and that it would not tolerate any abuses. DX2 at 17. That is not defamatory, nor does Mitre claim that it was false.

HBO's correspondent said that it is hard for Mitre to know what is happening on a side street in Jalandhar. DX2 at 24. That is neither defamatory nor false.

HBO's correspondent said that he honestly believed Mitre would like child labor to be wiped out one once and for all. DX2 at 24. That is not challenged as false or defamatory.

The Report does depict seven children stitching Mitre soccer balls, and Mitre has claimed that those children are not stitchers. But a report need not be correct in every detail. "In New York, a statement need not be *completely* true, but can be *substantially* true, as when the overall 'gist or substance of the challenged statement' is true." *Chau v. Lewis*, 771 F.3d 118, 129-30 (2d Cir. 2014) (emphasis in original). Substantial truth is thus measured by whether "the gist or substance" of the report is true. The gist of the Report concerning children stitching Mitre soccer balls is substantially true. Mitre has conceded that children were found stitching Mitre balls in Jalandhar during the time period covered by HBO's Report.

### D.     There Is No Evidence Supporting Other Elements of Mitre's Libel Claim.

#### 1)   No "Group Libel" Claim.

Mitre has complained about the statement in the introduction to "Children of Industry" that "[n]ow, given the game's global popularity, the balls are big business, which is why governments, manufacturers and retailers all say they abhor the practice of child labor. Yet,

clearly, they are all letting it happen."  DX2 at 2.

"In New York," however, "a plaintiff cannot sustain a libel claim if the allegedly defamatory statement is not 'of and concerning plaintiff' but rather only speaks about a group of which the plaintiff is a member."  *Chau*, 771 F.3d at 129.  In *Chau*, the Second Circuit affirmed summary judgment on this ground even though the plaintiff had been mentioned by name in the publication.  Because the statements complained of were about a group of which plaintiff was a member—in that case, CDO managers—"[t]hough Chau is described in the book as a CDO manager, these statements are *solely* about the group" and therefore not actionable.  *Id.* (emphasis in original).  Similarly, here, the introduction discusses large swaths of the soccer ball industry—namely, "governments, manufacturers and retailers"—and cannot possibly be "of and concerning" Mitre or any other individual industry participant.  For this reason, this claim fails as a matter of law.

### 2) No Claims Based on Questions or Opinions.

Mitre has claimed as libelous certain questions posed by Bryant Gumbel in the cross-talk portion of "Children of Industry," which in some cases Mitre characterizes as statements, and certain statements contained in Mr. Gumbel's introduction to the Report.  *See, e.g.* DX2 at 23 ("There, there are clearly lots of guilty parties here, but, but where do we, where do we assign most of the blame?").  As a matter of law, both claims fail.

First, a question is not a statement of fact.  The news media has the right to pose questions, even pointed questions.  And a question is not actionable merely because it might indicate that the questioner holds a particular opinion.  A question, like a statement of opinion, is actionable only if it can reasonably be understood as conveying a false and defamatory assertion of fact.  As the D.C. Circuit Court of Appeals recently explained, rejecting categorically a claim of defamation by question: the theory of "defamation by implication . . . based on mere

15

questions" would "necessarily ensnare a substantial amount of speech that is essential to the marketplace of ideas and would dramatically chill the freedom of speech." *Abbas v. Foreign Policy Group, LLC* , __ F.3d __, 2015 WL 1873140, at *8 (C.A.D.C.) (Apr. 24, 2015).  Here, the questions posed by Mr. Gumbel squarely fall in that category and as a matter of law cannot support Mitre's libel claim.

Second, for similar reasons, a statement of opinion, as opposed to a statement of fact, cannot give rise to potential liability.  Courts distinguish a protected opinion from a potentially applicable statement of fact by determining (1) whether the statement has a precise and readily understood meaning; (2) whether the statement is susceptible of being proved false; and (3) whether the context of the statement signals to the viewer that it is more likely to be an expression of opinion rather than fact.  *See, e.g., Sandals Resorts Int'l Ltd. v. Google, Inc.*, 925 N.Y.S.2d 407, 412 (1st Dep't 2011).  Application of this standard compels the conclusion that the statements made by Mr. Gumbel that Mitre challenges are protected opinion from which liability cannot arise.

### 3)  No Libel by Omission Claims.

Mitre claims as libelous the fact that "Children of Industry" did not include discussion of two matters: first, the Sports Goods Foundation of India ("SGFI") and its monitoring and social programs; second, more information about the circumstances of parents' involvement in children stitching soccer balls in India.  Both of these libel by omission claims should be rejected as a matter of law.

Courts strongly disfavor libel by omission claims because of the palpable danger of courts and juries intruding on the protected judgment of the news media by second-guessing what information a defendant should have included or explored in more detail:

> To hold that a possible omission . . . by a reporter may be deemed

16

> defamatory would place upon the press the onerous and
> unreasonable burden of having to ascertain, whenever a news story
> is published, if something might conceivably have been left out
> which could be subject to misconception . . . . Whether or not a
> particular article constitutes unbalanced reporting is essentially a
> matter involving editorial judgment and is not actionable.

*Sprecher v. Dow Jones & Co., Inc.*, 450 N.Y.S.2d 330, 332 (1st Dep't 1982), *aff'd*, 58 N.Y.2d

862 (1983).  Thus, New York courts have "been hesitant to find defamation based on the

omission of facts, unless the omitted facts would materially change the meaning of the

statements that are expressed."  *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 466 (S.D.N.Y. 2012).

As demonstrated above, the statements about Mitre that the Report actually made are all

either concededly true or not defamatory.  Here, had HBO added to the length of the "Children

of Industry" report or otherwise edited it to include discussion these two issues, that would in no

respect have "materially change[d] the meaning," *id.*, of those statements about Mitre.

### 4) The Single-Publication Rule Makes Irrelevant Any Standard of Care Evidence Following the September 16, 2008 Premiere of "Children of Industry."

Pursuant to Fed. R. Civ. P. 50(a)(1)(A), Mitre has no evidence of any actions taken by

any HBO employees following the September 16, 2008 premiere of "Children of Industry" that

could constitute any alleged violation of any applicable standard of care.

Any previously scheduled showing of the *Real Sports with Bryant Gumbel* episode

including "Children of Industry" by HBO in September and early October 2008, and any

previously scheduled on-demand availability of the episode in September and October 2008,

does not constitute a republication such that HBO's standard of care as to those showings and

on-demand availability is itself relevant.  *See Pippen v. NBCUniversal Media, LLC*, 734 F.3d

610, 614 (7th Cir. 2013), *cert. denied* 134 S. Ct. 2829 (2014).  "Multiple publications of the

identical work . . . are usually treated as a single publication under the 'single publication rule.'"

17

1 *Sack on Defamation* § 2.5.1.  An exception to this rule applies where "an item is published initially, but is then republished, not merely as a belated release of the original publication, but as a republication."  *Zoll v. Jordache Enterprises, Inc.*, 2002 WL 31873461, at *8 (S.D.N.Y. 2002).  Republication "occurs upon a separate aggregate publication from the original, on a different occasion, which is not merely a delayed circulation of the original edition."  *Firth v. State*, 98 N.Y.2d 365, 371 (N.Y. 2002) (citation and internal quotation marks omitted).  In the context of right of privacy claims, "New York courts applying the single publication rule to television broadcasts . . . have not treated each individual broadcast as a republication."  *Zoll*, 2002 WL 31873461, at *10.

Courts consider a "number of factors" in determining whether a subsequent publication constitutes a republication.  *See id.* at *2; *see also Martin v. Daily News L.P.*, 990 N.Y.S.2d 473 (1st Dept.), *leave to appeal denied* 997 N.Y.S.2d 117 (2014).  The key factors are whether there was "modification or alteration of the original" and whether "a subsequent publication is the product of a conscious decision to republish by the publisher."  *Zoll*, 2002 WL 31873461, at *11; *see also* 1 *Sack on Defamation* § 7:2.1 (explaining that the key factor is whether the defendant's decision to publish was "a conscious independent one").  While some rebroadcasts of a television program have been considered republications, *see Lehman v. Discovery Commc'ns, Inc.*, 332 F. Supp. 2d 534, 538 (E.D.N.Y. 2004), the Report was distributed in identical form between September 16 and early October pursuant to a pre-set schedule that, after the first broadcast, involved no conscious decision at all.  Accordingly, the additional broadcasts are "delayed circulation[s] of the original" that are not independently actionable.  *See Martin*, 990 N.Y.S.2d 473.

The availability of the Report on demand until later in October, 2008, does not constitute

a republication.  For electronic postings, the single publication rule applies despite "continued

public availability" of the material.  *See* Sack § 7:2.2; *see also Firth v. State*, 775 N.E.2d 463,

466 (N.Y. 2002) (holding that material continuously available from a website is not republished

even where the publisher makes unrelated modifications to the website).

## II.     THERE IS NO EVIDENCE TO SUPPORT MITRE'S DAMAGES CLAIM AGAINST HBO

### A.     There Is No Evidence That Any Alleged Harm Was Caused by the Alleged Implications.

The burden is on the plaintiff to establish a causal link between its claimed damages and

a false and defamatory statement in the challenged publication.  As the Sack treatise emphasizes:

"Plainly, the causation that a plaintiff must establish is between the false and defamatory

statement made with the requisite degree of fault and the injury.  If truthful information in a

statement causes some or all of the harm, there can be no recovery for that portion of the injury."

1 *Sack on Defamation*  § 10:5:3, at 10-50.  Here, Mitre has failed completely to establish that any

alleged false and defamatory implication in "Children of Industry" caused any harm, as opposed

to the concededly true fact that children were found in Mitre's supply chain.  In addition, it

would violate the First Amendment and the free speech protections of the New York

Constitution to permit a plaintiff any recovery for statements in a publication that are not false,

defamatory, and published in violation of the applicable standard of care.  For these reasons, as a

matter of law Mitre cannot establish the actual harm element of its libel claim and its libel claim

should therefore be rejected.

#### 1)     There Is No Evidence of Actual Harm Caused by the Alleged Meerut Child Slave Labor Implications Claimed by Mitre.

At trial, Mitre presented evidence of alleged economic damages purportedly caused by

the distribution of "Children of Industry," which premiered on September 16, 2008.  Although

Mitre witnesses testified that Mitre Cobra balls were returned and economic damages suffered because of reports of child stitching in Mitre's supply chain (which Mitre now concedes is true), there was no testimony or evidence from anyone that any of these alleged economic damages had any relation to any claimed implication about Meerut.  Accordingly, Mitre has failed to establish any damages of any kind caused by the alleged Meerut implication.

      **2)  There Is No Evidence of Actual Harm Caused by the Alleged Jalandhar Attitude Toward Child Labor Implications.**

Likewise, the only damages of any kind as to which Mitre even attempted to make a causal connection with "Children of Industry" relate solely to the discovery of child stitching in Mitre's supply chain, which, as noted above, is now conceded by Mitre to be true.  Mitre failed to establish that any if its claimed implications in the Jalandhar portion of "Children of Industry" (such as that Mitre supposedly was portrayed as turning a blind eye to child labor in the manufacture of Mitre-branded soccer balls) was the cause of any harm to it over and above the conceded truth of child labor in its supply chain.

      **3)  There Is No Evidence of Causation for the $16,971 Walmart Ball Return.**

In addition, one of the two components of Mitre's damages expert's testimony should be rejected as a matter of law because of an additional Mitre failure to prove causation.  Mitre damages expert Laura Stamm testified that Mitre suffered a total of $56,586 in economic damages in the United States that she could quantify.  Tr. 603.  She also testified that one component of that figure, $16,971, stemmed solely from the long term consequences of Walmart's return of balls to Mitre licensee Regent.  (Because Mitre earned its royalty income when its U.S. licensee Regent *purchased* the balls from Mitre, not when Regent *sold* the balls to retailers, Mitre had already been fully paid before the ball returns that Mitre's witnesses testified to, and the ball returns themselves therefore directly caused Mitre no economic harm at all.)

Mitre's expert witness testified that the Walmart ball return occurred *before* "Children of Industry" premiered.  "Children of Industry" could not, as a matter of law, have been the cause of a ball return that occurred before it was even published.  Tr. 605.  For that reason, there is no evidence of causation, and the $16,971 portion of the damages claim is without legal basis.

### B.  As a Corporation, Mitre May Recover for Only Economic Damages.

Mitre's claim for any type of damages other than economic damages should be rejected as a matter of law.  Under the U.S. Constitution, a corporation cannot recover damages without showing economic injury.  *See Art Metal-U.S.A., Inc. v. United States*, 753 F.2d 1151, 1156 (D.C. Cir. 1985) ("[A] corporation suing for defamation . . . may only recover actual damages in the form of lost profits").  Because "[t]he protection afforded by the guarantees of free press and speech in the New York Constitution is often broader than the minimum required by the Federal Constitution," *Immuno AG v. Moor-Jankowski*, 77 N.Y.2d. 235, 249 (1991), New York courts would apply the same rule here.

### CONCLUSION

For the reasons stated, judgment as a matter of law should be entered for HBO as to all of Mitre's claims.

Dated:  May 6, 2015                         Respectfully submitted,

                                            /s/ Kevin T. Baine
                                            Kevin T. Baine
                                            Dane H. Butswinkas
                                            Thomas G. Hentoff
                                            Allison B. Jones
                                            A. Joshua Podoll
                                            Nicholas G. Gamse
                                            Masha G. Hansford
                                            WILLIAMS & CONNOLLY LLP
                                            725 Twelfth Street, NW
                                            Washington, DC  20005
                                            Tel: (202) 434-5000
                                            Fax: (202) 434-5029

kbaine@wc.com

<u>Of Counsel</u>:
Stephanie Abrutyn, Home Box Office, Inc.

*Attorneys for Defendant,*
*Home Box Office, Inc.*